**Exhibit A**

## MEMORANDUM OF AMENDED AND RESTATED
## TRANSPORTATION SERVICES AGREEMENT

| | | |
|---|---|---|
| THE STATE OF COLORADO | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF WELD | § | |

This Memorandum of Amended and Restated Transportation Services Agreement (this "Memorandum") is entered into by and between GRAND MESA PIPELINE, LLC, a Delaware limited liability company ("GMP"), and BAYSWATER EXPLORATION & PRODUCTION, LLC, a Colorado limited liability company ("Bayswater" or "Shipper"). GMP and Bayswater collectively referred to herein as the "Parties."

This Memorandum is being executed in connection with that certain Amended and Restated Transportation Services Agreement by and between GMP and Bayswater, dated June 21, 2016 (the "Agreement"). The Agreement, among other things, sets forth the terms and conditions governing the respective rights of the Parties with respect to the transportation by Bayswater of certain volumes of crude petroleum through GMP's pipeline system originating at certain stations in Weld County, Colorado, and terminating at the NGL Energy Partners LP terminal in Cushing, Oklahoma (as more particularly described in the Agreement, the "Pipeline System"). The Agreement provides, among other things, as follows:

1.    As assurance for Bayswater's performance under the Agreement (including but not limited to the obligations of Bayswater to ship or pay for the Fixed Monthly Payment as set forth in Section 8.1 of the Agreement and the Total Financial Commitment as set forth in Section 8.2 of the Agreement), and subject to the terms and conditions of the Agreement and Shipper's Reservations (as defined in the Agreement), Bayswater has dedicated and committed to the performance of the Agreement, all of its right, title and interest in and to: (i) the Subject Leases; (ii) the Wells; (iii) the Dedicated Reserves; and (iv) Shipper's Crude Petroleum (collectively, the "Dedicated Interests"), all to the extent located within, or produced from the Dedication Area covering the lands described in Exhibit A (the "Dedication Area"), for and during the Term of the Agreement, for the purpose of exclusively dedicating and committing the Dedicated Interests to GMP for the performance of the Agreement.

As used herein and in the Agreement: (A) "Subject Leases" means the oil, gas, and mineral leases (including any extensions or renewals of such leases and any new leases taken in replacement thereof prior to or within six (6) months after the expiration of any such lease), deeds, conveyances, and other instruments described in Exhibit B, as such exhibit may be amended from time to time, but only to the extent that such leases are located within the Dedication Area; (B) "Wells" means a horizontal well for the production of hydrocarbons located on the Subject Leases or on lands otherwise pooled, communitized or unitized therewith, in which Shipper owns an interest, that is either producing or intended to produce Dedicated Reserves, but expressly excluding vertical wells and further expressly excluding the wells described on Exhibit C; (C) "Dedicated Reserves" means all of the right, title and interest of Shipper in and to all Crude Petroleum reserves in and under the Subject Leases and the Wells Owned or Controlled by Shipper, whether now owned or hereafter acquired by Shipper; (D)

"Shipper's Crude Petroleum" means all Crude Petroleum Owned or Controlled by Shipper, including, without limitation, Crude Petroleum produced from the Subject Leases and the Wells, whether now owned or hereafter acquired by Shipper; and, for the purposes hereof, Crude Petroleum is "Owned or Controlled" by Shipper if Shipper has title to such Crude Petroleum, whether by virtue of its ownership of a Subject Lease or otherwise, or, if Shipper does not have title to such Crude Petroleum, Shipper has the right, under any joint operating agreement, unit operating agreement, or other contractual arrangement or arising by operation of Applicable Laws, to commit and dedicate such Crude Petroleum to the performance of this Agreement; and (F) "Applicable Laws" means all federal, state or local laws, rules, orders or regulations applicable to the Parties, the Pipeline System, this Agreement, and the transactions contemplated hereby.

2. The dedication by Bayswater described in the preceding paragraph for the performance of the Agreement constitutes a covenant running with the land (and for clarity, shall also apply to any Dedicated Interests acquired by Bayswater subsequent to the Effective Date), shall be deemed to touch and concern all of Bayswater's oil and gas leasehold interests in the lands within the Dedication Area, and shall be binding upon all of Bayswater's permitted successors and assigns.

3. The Dedicated Interests do not include any of Shipper's Crude Petroleum that has already been dedicated prior to the Date of the Agreement as set forth on Exhibit D (or in the case of subsequently acquired interests, prior to the date of such acquisition) (a "Prior Dedication"). Bayswater shall not extend marketing or transportation agreements governing Shipper's Crude Petroleum subject to a Prior Dedication(s) beyond the end of the longest primary contract term associated with the transportation and/or marketing of that particular Shipper's Crude Petroleum. Upon termination of such agreements, all Shipper's Crude Petroleum subject to the Prior Dedication(s) shall be deemed part of Bayswater's dedication under the Agreement for the remaining Term of the Agreement.

4. If Bayswater transfers any right, title, or interest in the Dedicated Interests, such transfer shall be made subject to the Agreement and any such transfer shall not impair the dedication under the Agreement to GMP. Any such transfer or Bayswater's failure to notify GMP thereof shall not impair GMP's rights under the Agreement as against Bayswater. If Bayswater transfers any right, title, or interest in some, but not all of the Dedicated Interests in addition to the requirements of the foregoing sentence, any right, title, or interest retained by Bayswater shall remain subject to the Agreement and the dedication therein.

This Memorandum is being executed to provide notice, without limiting or expanding the provisions of the Agreement, of the rights of the Parties with respect to the Dedicated Interests.

In addition, the Parties further provide notice they intend that GMP's interests in the Dedicated Interests shall be subject to and burdened by the Agreement, the terms thereof shall be deemed incorporated by reference in its entirety herein and be appurtenant to and run with the land comprising the Dedicated Interests and the Dedication Area, and further, that the Agreement shall be binding and enforceable upon the successors and assigns of the Parties or of any interest in the Property.

More information regarding the terms of the Agreement can be obtained from GMP at the following address:

>Grand Mesa Pipeline, LLC
>6120 S. Yale Ave., Suite 805
>Tulsa, Oklahoma 74136
>Attn: Kurston P. McMurray, VP Legal
>Telephone: 918.477-0500
>Facsimile: 918.481-5896
>Email: Kurston.McMurray@nglep.com

This Memorandum is not a complete summary of the Agreement, nor shall any provisions of this Memorandum be used in interpreting the provisions of the Agreement. In the event of any conflict between this Memorandum and the Agreement, the Agreement shall control.

This Memorandum is executed, acknowledged and delivered by GMP and Bayswater for the sole purpose of evidencing of record the existence of the Agreement and shall not alter, affect, amend or change any terms or provisions of the Agreement.

A counterpart original of this Memorandum may be recorded for notice purposes in any jurisdiction in which any of the Property is located. Counterparts so recorded may have different titles or captions, may substitute signature pages and acknowledgments in form required by applicable recording statutes, and may include modified versions of Exhibit A and Exhibit B describing only those portions of the Dedicated Interests against which they are to be indexed.

This Memorandum may be executed in multiple counterparts, each of which shall constitute an original, and all of which, when taken together, shall constitute one instrument.

*[Signature Pages Follow]*

4826-4312-8115.1

3

EXECUTED as of the date of the parties' acknowledgments below but EFFECTIVE as of the 21st day of June, 2016.

**GRAND MESA PIPELINE, LLC**

By: *H. Michael Krimbill*
Name: H. Michael Krimbill
Title: CEO

THE STATE OF Oklahoma §
§
COUNTY OF Tulsa §

This instrument was acknowledged before me on June 23, 2016 by H. Michael Krimbill, the CEO of Grand Mesa Pipeline, LLC, a Delaware limited liability company, on behalf of said limited liability company.



*Debra L Sparks*
Notary's Signature

Debra L. Sparks
(Name typed or printed)

Commission Expires: 5/13/18

**After recording, return to:**

McGrath North Mullin & Kratz, PC LLO
Attn: Jeffrey S. Penne, Esq.
1601 Dodge Street, Suite 3700
Omaha, Nebraska 68102

4826-4312-8115.1

*Signature Page to GMP Memorandum*

EXECUTED as of the date of the parties' acknowledgments below but EFFECTIVE as of the 21st day of June, 2016.

**BAYSWATER EXPLORATION & PRODUCTION, LLC**

By: _____
Name: _____
Title: _____

THE STATE OF _____ §
§
COUNTY OF _____ §

This instrument was acknowledged before me on June ___, 2016 by _____, the _____ of Bayswater Exploration & Production, LLC, a Colorado limited liability company, on behalf of said limited liability company.

_____
Notary's Signature

_____
(Name typed or printed)

Commission Expires: _____

4826-4312-8115.1

*Signature Page to GMP Memorandum*

## AMENDED AND SUPPLEMENTAL MEMORANDUM OF AMENDED AND RESTATED TRANSPORTATION SERVICES AGREEMENT

| | | |
|---|---|---|
| THE STATE OF COLORADO | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF WELD | § | |

This Amended and Supplemental Memorandum of Amended and Restated Transportation Services Agreement (this "Memorandum") is entered into by and between GRAND MESA PIPELINE, LLC, a Delaware limited liability company ("GMP"), MERCURIA ENERGY TRADING, INC., a Delaware corporation ("METI"), and EXTRACTION OIL & GAS, INC. (successor by conversion to Extraction Oil & Gas, LLC), a Delaware corporation ("XOG"). GMP, METI, and XOG are sometimes hereinafter referred to individually as a "Party" or collectively as the "Parties.").

On June 23, 2016, GMP and Bayswater Exploration & Production, LLC, a Colorado limited liability company ("Bayswater"), executed a Memorandum of Amended and Restated Transportation Services Agreement (the "Bayswater Memorandum"), which was recorded on June 23,2016, in the Office of the Clerk and Recorder of Weld County, Colorado, at document number 4213891. The Bayswater Memorandum was executed and recorded in connection with that certain Amended and Restated Transportation Services Agreement dated as of June 21, 2016, by and between GMP and Bayswater (the "GMP/Bayswater TSA"). The GMP/Bayswater TSA, among other things, sets forth the terms and conditions governing the respective rights of GMP and Bayswater with respect to the transportation by Bayswater of certain volumes of crude petroleum through GMP's pipeline system originating at certain stations in Weld County, Colorado, and terminating at the NGL Energy Partners LP terminal in Cushing, Oklahoma (as more particularly described in the GMP/Bayswater TSA, the "Pipeline System").

GMP and XOG previously entered into that certain Amended and Restated Transportation Services Agreement dated as of February 19, 2016, (the "GMP/XOG TSA", and together with the GMP/Bayswater TSA, the "TSAs", and, each of the TSAs, individually, being referred to herein as a "TSA"), and that certain Facility Unloading Agreement dated as of April 8, 2016 (the "FUA" and, together with the GMP/XOG TSA, the "GMP/XOG Agreements", and the GMP/XOG Agreements, together with the GMP/Bayswater TSA, the "Assigned Agreements"). The GMP/XOG Agreements, among other things, set forth the terms and conditions governing the respective rights of GMP and XOG with respect to the transportation by XOG of certain volumes of crude petroleum through the Pipeline System.

Pursuant to that certain Commodity Marketing Agreement dated September 7, 2016, by and among XOG, 8 North, LLC ("8 North") and METI (the "Original CMA"), XOG assigned all of its rights, and delegated all of its obligations, under the GMP/XOG Agreements to METI, subject to the potential reversion thereof to XOG (as more particularly described below) (the "First Assignment"). GMP and XOG entered into that certain Agreement and Consent to Assignment dated September 7, 2016 (the "Original Consent"), pursuant to which GMP consented to such assignment, delegation, and potential reversion. METI and GMP entered into that certain Agreement and Acknowledgement dated September 7, 2016 (the "Original

1

Agreement and Acknowledgement"), regarding such assignment, delegation, and potential reversion.

Pursuant to an Assignment, Bill of Sale and Conveyance dated October 3, 2016, and effective July 1, 2016 (the "Bayswater Assignment"), (a) Bayswater assigned all of its right, title, and interest under the GMP/Bayswater TSA to XOG and (b) XOG assumed all of Bayswater's obligations under the GMP/Bayswater TSA. Pursuant to the Bayswater Assignment, Bayswater also assigned all of its right, title, and interest in and to the Dedicated Interests (as defined in the Bayswater Memorandum) to XOG. Pursuant to a letter dated August 12, 2016, GMP consented to the Bayswater Assignment.

XOG, 8 North and METI entered into that certain First Amended and Restated Commodity Marketing Agreement dated January 5, 2017 (the "First Amended and Restated CMA" and, together with the Original CMA, as amended and restated by the First Amended and Restated CMA, the "CMA"), pursuant to which XOG assigned all of its rights, and delegated all of its obligations, under the GMP/Bayswater TSA to METI, subject to the potential reversion thereof to XOG (as more particularly described below) (the "Second Assignment" and, together with the First Assignment, the "Assignments"). GMP and XOG entered into that certain First Amended and Restated Agreement and Consent to Assignment dated as of January 5, 2017 (the "First Amended and Restated Consent"), pursuant to which GMP consented to such assignment, delegation, and potential reversion. METI and GMP entered into that certain First Amended and Restated Agreement and Acknowledgement dated as of January 5, 2017 (the "First Amended and Restated Agreement"), regarding such assignment, delegation, and potential reversion.

This Memorandum is being executed simultaneously with the execution of the First Amended and Restated Consent, the First Amended and Restated Agreement, and the First Amended and Restated CMA (and the Second Assignment contemplated therein), and is intended to amend and supplement the Bayswater Memorandum. The Parties hereby agree as follows:

1. As assurance for Bayswater's performance under the GMP/Bayswater TSA, Bayswater dedicated the Dedicated Interests exclusively to the performance of the GMP/Bayswater TSA. The dedication by Bayswater described in the GMP/Bayswater TSA for the performance thereof constitutes a covenant running with the land (and for clarity, shall also apply to any Dedicated Interests acquired by XOG subsequent to July 1, 2016), shall be deemed to touch and concern all of XOG's oil and gas leasehold interests in the lands within the Dedication Area acquired from Bayswater or acquired after July 1, 2016, and shall be binding upon XOG and all of XOG's permitted successors and assigns.

2. Pursuant to the Bayswater Assignment, (a) XOG was assigned all of Bayswater's rights and assumed all of Bayswater's obligations under the GMP/Bayswater TSA, and (b) XOG was assigned all right, title, and interest of Bayswater in and to the Dedicated Interests. Pursuant to the Assignments, METI was assigned all of XOG's rights and assumed all of XOG's obligations under the Assigned Agreements including the GMP/Bayswater TSA, subject to the potential reversion thereof to XOG as set forth below.

3. XOG represents and warrants that it has not transferred the Dedicated Interests to METI or otherwise (other than Shipper's Crude Petroleum (as defined in the Bayswater

2

Memorandum) produced therefrom) and that the Dedicated Interests remain dedicated exclusively to the performance of the GMP/Bayswater TSA. METI acknowledges that the Dedicated Interests remain dedicated exclusively to the performance of the GMP/Bayswater TSA.

    4.    The First Amended and Restated Agreement provides as follows:

    "3.    **Term and Termination**.

    (a)    On the Assignment Termination Date (as defined below), this First Amended and Restated Agreement and the Assignments shall automatically terminate and all of the rights and obligations of the Shipper under each TSA and the Unloading Party under the FUA arising in respect of the period from and after the Assignment Termination Date (as defined below), but not the METI Obligations, shall automatically revert and be deemed reassigned to, and assumed by, XOG (without any further action by METI, XOG or GMP), free and clear of any liens, security interests or encumbrances created by through or under METI. GMP hereby releases METI from all obligations arising under the Assigned Agreements in respect of the period from and after the Assignment Termination Date. Notwithstanding such automatic termination, reversion and deemed reassignment and assumption, METI shall retain all obligations under unsatisfied METI Obligations. GMP hereby consents and agrees to such automatic termination, reversion, deemed reassignment, assumption and release of the rights and obligations of the Shipper under each TSA and Unloading Party under the FUA, other than the METI Obligations, notwithstanding any change in the financial condition of XOG after the date of this Agreement. "METI Obligations" means all obligations of the Shipper under each TSA and the Unloading Party under the FUA arising in respect of the CMA Term (as hereinafter defined), but in no event shall METI Obligations include any liability or obligation under the Assigned Agreements arising in respect of any period other than the CMA Term (whether by reason of termination, acceleration or otherwise), including for the failure to pay any amount payable for, or representing damages relating to, the period before or after the CMA Term.

    (b)    For the purposes of this First Amended and Restated Agreement, the "Assignment Termination Date" means the earliest of (i) the Scheduled Termination Date (as hereinafter defined), (ii) the CMA Default Early Termination Date (as hereinafter defined), (iii) the GMP Assignment Termination Date (as hereinafter defined) and (iv) the XOG Optional Early Termination Date (as hereinafter defined). Under the terms of the CMA, the term of the CMA (the "CMA Term") shall commence as of the Commencement Date (as defined in each TSA) and shall continue until the one year anniversary thereof; *provided, however*, that such term may be extended for successive annual periods (each, an "Extended Period") upon the mutual written consent (a "Term Extension Consent") of XOG, 8 North and METI. The above notwithstanding, if GMP does not receive a fully-executed Term Extension Consent within one hundred seventy (170) days prior to the scheduled end of the CMA Term, the CMA Term will automatically terminate at the end of such annual term (such termination date being the "Scheduled Termination Date"), unless any CMA Default Early Termination Date or GMP Assignment Termination Date occurs sooner. Under the terms of the CMA, the

CMA Term is subject to early termination (a "CMA Default Early Termination") by XOG, 8 North or METI for certain events of default. If a CMA Default Early Termination occurs, METI shall (and XOG or 8 North may) provide GMP prompt written notice thereof (a "Notice of CMA Default Early Termination") specifying the date that the CMA Default Early Termination occurred (the date so specified being the "CMA Default Early Termination Date"). Under the terms of the CMA, the CMA Term is subject to early termination (an "XOG Optional Early Termination") by XOG at its option. If XOG elects an XOG Optional Early Termination, METI shall (and XOG or 8 North may) provide GMP prompt written notice thereof specifying the date that the XOG Optional Early Termination will occur (a "Notice of XOG Optional Early Termination" and the date so specified being the "XOG Optional Early Termination Date"). A Notice of Scheduled Termination, Notice of CMA Default Early Termination or Notice of XOG Optional Early Termination given by any of XOG, 8 North or METI and the earliest related Assignment Termination Date established pursuant thereto shall be fully binding and effective for the purposes of causing the automatic termination, reversion, deemed reassignment and assumption described above, notwithstanding any dispute by or among XOG, 8 North or METI regarding whether such notice was rightfully given.

(c) After the execution and delivery of this First Amended and Restated Agreement, METI shall provide linefill as required by the TSAs. GMP acknowledges that METI will be the record owner of the Crude Petroleum provided as linefill provided pursuant to the TSAs. GMP hereby acknowledges that it shall have no lien (statutory or otherwise) on such linefill, other than with respect to the METI Obligations. Upon termination of this First Amended and Restated Agreement, and notwithstanding any termination of the Assigned Agreements, whether by reason of default or otherwise, METI shall have the right to remove such Crude Petroleum provided as linefill in accordance with the terms of the Tariff, free and clear of any lien with respect to any obligations under the Assigned Agreements (other than the METI Obligations), and XOG will be obligated to GMP to replace such linefill."

"6. **METI or XOG Defaults**. If an Event of Default, as defined in either TSA or the FUA, occurs, and METI is the defaulting party, GMP shall be entitled to terminate the Assignments under the same terms that it would have been able to terminate the TSAs and/or the FUA, and to exercise all rights and remedies available to it against METI under the TSAs or FUA to collect the METI Obligations that are payment obligations, but GMP shall not exercise any right to terminate the TSAs or FUA as a result thereof. METI also acknowledges and agrees that GMP may terminate the Assignments if XOG defaults under Section 9 of the First Amended and Restated Consent [(Section 5 of this Memorandum below)]. GMP shall notify METI and XOG of any such termination of the Assignments and of the effective date of such termination (the "GMP Assignment Termination Date"). If GMP terminates the Assignments in accordance with the terms of this Section, all of the rights and obligations of the Shipper under each TSA and the Unloading Party under the FUA arising after the effective date of such termination, but not the METI Obligations, shall automatically revert to and be deemed reassigned to, and assumed by, XOG (without any further action by METI, XOG or GMP), free and clear of any liens, security interests and encumbrances created by, through or under METI.

4

7. **Bayswater Acreage Dedication**.  Pursuant to the terms of the GMP/Bayswater TSA, Bayswater dedicated the Dedicated Interests (as defined therein) exclusively to the performance of the GMP/Bayswater TSA.  In connection with the acquisition by XOG of the GMP/Bayswater TSA from Bayswater, XOG also acquired all of the Dedicated Interests.  METI represents that XOG has not transferred to METI the Dedicated Interests XOG acquired from Bayswater.  METI acknowledges that the Dedicated Interests acquired by XOG are dedicated exclusively to the performance of the GMP/Bayswater TSA.  METI agrees that until the earlier of (a) the termination of the GMP/Bayswater TSA or (b) the Assignment Termination Date, and subject to the terms and conditions of the GMP/Bayswater TSA, (i) METI will deliver to GMP all Crude Petroleum (as defined in the GMP/Bayswater TSA) produced from the Dedicated Interests acquired by XOG in accordance with the terms of the GMP/Bayswater TSA and (ii) METI will continue to deliver such Crude Petroleum under the GMP/Bayswater TSA even if the Fixed Monthly Payment Volumes (as defined therein) have been delivered or otherwise satisfied.  It is specifically understood and agreed that unless the quantity of Crude Oil produced from the Dedicated Interests are rejected under the GMP/Bayswater TSA: (i) no Crude Petroleum from the Dedicated Interests may be shipped under the XOG TSA; (ii) all volumes of Crude Petroleum delivered by truck and nominated to be shipped under the GMP/Bayswater TSA will be shipped only under the GMP/Bayswater TSA; and (iii) the FUA shall in no event be utilized to deliver volumes of Crude Petroleum to be shipped under the GMP/Bayswater TSA.  GMP shall have the right to audit METI's compliance with its obligations under this Section at intervals not less than six (6) months apart and otherwise in accordance with, and subject to, the terms of Section 15.18 of the GMP/Bayswater TSA.  METI and GMP will, together with XOG and simultaneously with the execution of this First Amended and Restated Agreement, execute an amended and supplemental recording memorandum which (A) evidences this First Amended and Restated Agreement and the Assignments, and (B) acknowledges the dedication of the Dedicated Interests pursuant to the GMP/Bayswater TSA and that such dedication continues to be a covenant running with the land."

5. The First Amended and Restated Consent provides as follows:

"9. <u>Additional Assurance of Performance by XOG</u>.  During the CMA Term, XOG will not be a party to the TSAs and will not (except for its obligations under Section 10) have any liability for any obligations arising under the TSAs; however, the potential exists that the CMA Term may end at any time and that all of the obligations thereafter arising under the TSAs would automatically revert to and be assumed by XOG.  Accordingly, even though XOG will not be a party to the TSAs during the CMA Term, XOG agrees that at any time during the CMA Term upon request by GMP to XOG made in accordance with GMP's customary requirements based upon XOG's and its guarantor's creditworthiness at such time, XOG will provide GMP adequate assurance of performance to the same extent and in the same manner as would be required under Section 12.2 of each TSA if XOG were the Shipper thereunder.  Any such adequate assurance of performance by XOG provided under a TSA shall only be drawable to pay for unpaid obligations of XOG under such TSA arising after the Assignment Termination Date, and in no event shall any request for adequate assurance be made of XOG based on the credit or perceived inadequacy of the credit of METI or its guarantor.  Any failure by

XOG to provide such credit assurance, or a breach by XOG under Section 7(a) or Section 10, shall constitute a default by XOG under this First Amended and Restated Consent entitling GMP to terminate the Assignments, and upon such termination shall constitute a default by XOG under the TSAs entitling GMP to exercise its rights and remedies for breach of the TSAs against XOG. Any failure by XOG to provide such credit assurance shall not, however, prevent the automatic termination (as provided in the First Amended and Restated Agreement and Acknowledgement) of the obligations of METI under the Assigned Agreements, other than the METI Obligations, and automatic reversion, reassignment and assumption of the rights and obligations of the Shipper under the TSAs and Unloading Party under the FUA, other than the METI Obligations, to XOG and shall not create any liability for METI. Notwithstanding the foregoing, during the CMA Term, in no event will the amount of any letter of credit or other credit support required of METI under the GMP/XOG TSA, exceed twelve (12) months of Fixed Monthly Payments (as defined in the GMP/XOG TSA) thereunder or under the GMP/Bayswater TSA exceed eight (8) months of Fixed Monthly Payments (as defined in the GMP/Bayswater TSA) thereunder.

10. <u>Bayswater Acreage Dedication</u>.  Pursuant to the terms of the GMP/Bayswater TSA, Bayswater dedicated the Dedicated Interests (as defined therein) exclusively to the performance of the GMP/Bayswater TSA. XOG represents and warrants that in connection with the acquisition by XOG of the GMP/Bayswater TSA from Bayswater: (a) XOG assumed all of Bayswater's obligations under the GMP/Bayswater TSA; (b) XOG acquired all of the Dedicated Interests; (c) XOG has not transferred to METI the Dedicated Interests (other than Crude Petroleum produced therefrom) that XOG acquired from Bayswater; and (d) the Dedicated Interests acquired by XOG are dedicated exclusively to the performance of the GMP/Bayswater TSA. XOG agrees that until the earlier of (a) termination of the GMP/Bayswater TSA or (b) the Assignment Termination Date, and subject to the terms and conditions of the GMP/Bayswater TSA, XOG will (x) not transfer the Dedicated Interests except as permitted by the terms of the TSA and (y) deliver to METI all Crude Petroleum (as defined in the GMP/Bayswater TSA) produced from the Dedicated Interests for delivery by METI to GMP in accordance with and solely for the purpose of fulfilling the terms of the GMP/Bayswater TSA. As long as the GMP/Bayswater TSA remains in effect, XOG shall continue to deliver such Crude Petroleum to METI for delivery by METI to GMP under the GMP/Bayswater TSA even if the Fixed Monthly Payment Volumes (as defined therein) have been delivered or otherwise satisfied. It is specifically understood and agreed that unless the quantity of Crude Oil produced from the Dedicated Interests is rejected pursuant to the GMP/Bayswater TSA: (i) no Crude Petroleum produced from the Dedicated Interests may be shipped under the XOG TSA; (ii) all volumes of Crude Petroleum delivered by truck and nominated to be shipped under the GMP/Bayswater TSA will be shipped only under the GMP/Bayswater TSA and delivered to the appropriate bay(s) assigned by GMP; and (iii) the FUA shall in no event be utilized to deliver volumes of Crude Petroleum to be shipped under the GMP/Bayswater TSA. GMP shall have the right to audit XOG's compliance with its obligations under this Section 10 at intervals not less than six (6) months apart and otherwise in accordance with, and subject to, the terms of Section 15.18 of the GMP/Bayswater TSA. XOG and GMP will, together with METI and simultaneously with the execution of this First

6

Amended and Restated Consent, execute an amended or supplemental recording memorandum which (A) evidences this First Amended and Restated Consent and the Assignments, and (B) acknowledges the dedication of the Dedicated Interests pursuant to the GMP/Bayswater TSA and that such dedication continues to be a covenant running with the land."

6.     XOG agrees that until the earlier of (a) the termination of the GMP/Bayswater TSA or (b) the Assignment Termination Date, and subject to the terms and conditions of the GMP/Bayswater TSA, XOG will (x) not transfer the Dedicated Interests except as permitted by the terms of the GMP/Bayswater TSA and (y) deliver to METI all Shipper's Crude Petroleum produced from the Dedicated Interests for delivery by METI to GMP in accordance with and solely for the purpose of fulfilling the terms of the GMP/Bayswater TSA.

7.     As long as the GMP/Bayswater TSA remains in effect, XOG shall continue to deliver Shipper's Crude Petroleum to METI for delivery by METI to GMP under the GMP/Bayswater TSA even if the Fixed Monthly Payment Volumes (as defined in the GMP/Bayswater TSA) have been delivered or otherwise satisfied. It is specifically understood and agreed that unless the quantity of Crude Oil (as defined in the GMP/Bayswater TSA) produced from the Dedicated Interests is rejected under the GMP/Bayswater TSA: (i) no Crude Petroleum produced from the Dedicated Interests may be shipped under the XOG TSA; (ii) all volumes of Crude Petroleum delivered by truck and nominated to be shipped under the GMP/Bayswater TSA will be shipped only under the GMP/Bayswater TSA and delivered to the appropriate bay(s) assigned by GMP; and (iii) the FUA shall in no event be utilized to deliver volumes of Crude Petroleum to be shipped under the GMP/Bayswater TSA.

8.     If XOG transfers any right, title, or interest in the Dedicated Interests, such transfer shall be made subject to the GMP/Bayswater TSA and any such transfer shall not impair the dedication under the GMP/Bayswater TSA to GMP. Any such transfer or XOG's failure to notify GMP thereof shall not impair GMP's rights under the GMP/Bayswater TSA as against XOG. If XOG transfers any right, title, or interest in some, but not all of the Dedicated Interests in addition to the requirements of the foregoing sentence, any right, title, or interest retained by XOG shall remain subject to the GMP/Bayswater TSA and the dedication therein.

This Memorandum is being executed to provide notice, without limiting or expanding the provisions of the GMP/Bayswater TSA, of the rights of the Parties with respect to the Dedicated Interests.

In addition, the Parties further provide notice they intend that GMP's interests in the Dedicated Interests shall be subject to and burdened by the GMP/Bayswater TSA, the First Amended and Restated Agreement, the First Amended and Restated Consent, and the Assignments, the terms thereof shall be deemed incorporated by reference in its entirety herein and be appurtenant to and run with the land comprising the Dedicated Interests and the Dedication Area, and further, that the GMP/Bayswater TSA, the First Amended and Restated Agreement, the First Amended and Restated Consent and the Assignments shall be binding and enforceable upon the successors and assigns of the Parties or of any interest in the Property.

More information regarding the terms of the GMP/Bayswater TSA, First Amended and Restated Agreement, First Amended and Restated Consent, and Assignments can be obtained from GMP at the following address:

> Grand Mesa Pipeline, LLC
> 6120 S. Yale Ave., Suite 805
> Tulsa, Oklahoma 74136
> Attn: Kurston P. McMurray, VP Legal
> Telephone: 918.477-0500
> Facsimile: 918.481-5896
> Email: Kurston.McMurray@nglep.com

This Memorandum is not a complete summary of the GMP/Bayswater TSA, First Amended and Restated Agreement, First Amended and Restated Consent or the Assignments, nor shall any provisions of this Memorandum be used in interpreting the provisions thereof. In the event of any conflict between this Memorandum and any of the GMP/Bayswater TSA, First Amended and Restated Consent, First Amended and Restated Agreement or the Assignments, the GMP/Bayswater TSA, First Amended and Restated Consent, First Amended and Restated Agreement, and Assignments shall control.

This Memorandum is executed, acknowledged and delivered by GMP, METI, and XOG for the sole purpose of evidencing of record the existence of the dedication of the Dedicated Interests pursuant to the GMP/Bayswater TSA and shall not alter, affect, amend or change any terms or provisions of the GMP/Bayswater TSA.

A counterpart original of this Memorandum may be recorded for notice purposes in any jurisdiction in which any of the Property is located. Counterparts so recorded may have different titles or captions, may substitute signature pages and acknowledgments in form required by applicable recording statutes, and may include modified versions of Exhibit A and Exhibit B (as said Exhibits are described in the Bayswater Memorandum) describing only those portions of the Dedicated Interests against which they are to be indexed.

This Memorandum may be executed in multiple counterparts, each of which shall constitute an original, and all of which, when taken together, shall constitute one instrument.

[*Signature Pages Follow*]

EXECUTED as of the date of the parties' acknowledgments below but EFFECTIVE as of the 5th day of January, 2017.

**GRAND MESA PIPELINE, LLC**

By: _____
Name: Don Robinson
Title: EVP

THE STATE OF Texas §
§
COUNTY OF Harris §

MONICA V. RAMIREZ
MY COMMISSION EXPIRES
JANUARY 31, 2017

This instrument was acknowledged before me on January 16, 2017 by Don Robinson, the Exec. Vice President of Grand Mesa Pipeline, LLC, a Delaware limited liability company, on behalf of said limited liability company.

_____
Notary's Signature

Monica V. Ramirez
(Name typed or printed)

Commission Expires: January 31, 2017

**After recording, return to:**

McGrath North Mullin & Kratz, PC LLO
Attn: Jeffrey S. Penne, Esq.
1601 Dodge Street, Suite 3700
Omaha, Nebraska 68102

*Signature Page to GMP Memorandum*

EXECUTED as of the date of the parties' acknowledgments below but EFFECTIVE as of the 5th day of January, 2017.

MERCURIA ENERGY TRADING, INC.

By: _____
Name: Daniel J House
Title: President - METI

THE STATE OF Texas §
§
COUNTY OF Harris §

This instrument was acknowledged before me on January 17, 2017 by Daniel House, the President of Mercuria Energy Trading, Inc., a Delaware corporation, on behalf of said corporation.

[Notary Seal: CHARMIN W DUHE, Notary Public, State of Texas, Comm. Expires 08-19-2018, Notary ID 12992418-0]

_Charmin W. Duhe_
Notary's Signature

Charmin W. Duhe
(Name typed or printed)

Commission Expires: 8-19-2018

*Signature Page to GMP Memorandum*

EXECUTED as of the date of the parties' acknowledgments below but EFFECTIVE as of the 5th day of January, 2017.

EXTRACTION OIL & GAS, INC.

By: _____
Name: Mark Erickson
Title: CEO

THE STATE OF Colorado §
§
COUNTY OF Denver §

This instrument was acknowledged before me on January 5th, 2017 by Mark Erickson, the CEO of Extraction Oil & Gas, ~~LLC~~ (Inc.), a Delaware corporation, on behalf of said corporation.

JESSE NICOLE SCHMIDT
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20144002537
MY COMMISSION EXPIRES JANUARY 21, 2018

_____
Notary's Signature

Jesse Schmidt
(Name typed or printed)

Commission Expires: 1/21/18

*Signature Page to GMP Memorandum*

# EXHIBIT A
## Dedication Area

The following described lands located within Weld County, Colorado:

<u>Township 5 North, Range 65 West, 6th P.M.</u>

Section 4:    W/2NW/4, NE/4NW/4, SW/4

Section 9:    W/2NW/4, S/2

Section 10:   S/2

Section 15:   N/2

Section 16:   NE/4, E/2NW/4

<u>Township 6 North, Range 65 West, 6th P.M.</u>

Section 29:   All