# **Exhibit B**

Recording requested by, and
when recorded return to:
Extraction Oil & Gas, LLC
370 17th Street, Suite 5300
Denver, CO 80202

## ASSIGNMENT, BILL OF SALE AND CONVEYANCE

This ASSIGNMENT, BILL OF SALE AND CONVEYANCE (this "Assignment"), dated effective as of July 1, 2016 at 7:00 a.m. Denver, Colorado time (the "Effective Time"), is from **Bayswater Exploration & Production, LLC**, a Colorado limited liability company, **Bayswater Blenheim Holdings LLC**, a Delaware limited liability company and **Bayswater Blenheim Holdings II, LLC**, a Delaware limited liability company (each an "Assignor" and collectively the "Assignors"), with an address of 730 17th Street, suite 610, Denver, Colorado 80202, and **Extraction Oil & Gas, LLC**, a Delaware limited liability company ("Assignee"), with an address of 370 17th Street, Suite 5300 Denver, CO 80202. Assignor and Assignee are sometimes collectively referred to as the "Parties" and each referred to individually as a "Party."

For $100.00 and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignors hereby sell, assign, transfer, grant, bargain and convey the Assets to Assignee.

"Assets" means all of Assignors' right, title and interest in and to the following real and personal property interests, excluding the Excluded Assets:

    (a)    The oil and gas leases, oil, gas and mineral leases, subleases and other leasehold interests in all oil, gas, casinghead gas, coalbed methane, condensate, natural gas liquids and other hydrocarbons, or any combination thereof, and products produced in association therewith ("Hydrocarbons") described on Exhibit A, Part I, insofar and only insofar as such interests cover the lands described on Exhibit A, Part II (the "Lands"), (the "Leases"), and all other leasehold interests, royalty interests, overriding royalties, mineral fee interests, carried working interests, operating interests, reversionary rights and contractual rights to production attributable to the Leases or Land, and other interests in the Lands.

    (b)    All rights that are derived under or from the Leases in existing and effective unitization, voluntary pooling and communitization agreements, pooling declarations and pooling orders covering any of the Lands.

(c)     All oil and gas wells, injection wells, disposal wells and other wells now or hereafter located on the Lands, or on lands pooled or unitized therewith as of the Effective Time and or the Execution Date, including the oil and gas wells specifically described on Exhibit B, whether producing or non-producing (the "Wells"); all Hydrocarbons that may be produced from the Wells after the Effective Time; and all Hydrocarbons produced from the Wells prior to the Effective Time, and, at the Effective Time, are in storage, for which an adjustment to the Purchase Price (as defined in the Purchase Agreement) is made pursuant to Section 3.2(a)(ii) of the Purchase Agreement.

(d)     To the extent transferable, (i) all Hydrocarbon sales, purchase, gathering, compression, treating, transportation, storage and processing agreements listed in Exhibit C, insofar and only insofar as they cover or relate to the interests described in clauses (a), (b) or (c) above, and (ii) all other contracts, operating agreements, balancing agreements, joint venture agreements, partnership agreements, farmout agreements, and other contracts, agreements and instruments insofar and only insofar as they cover or relate to the interests described in clauses (a), (b) or (c) above (including the agreements described on Exhibit C, (the "Material Agreements")), excluding any insurance contracts.

(e)     To the extent transferable all permits, licenses, authorizations, approvals, servitudes, rights-of-way, easements, surface use agreements, and other surface rights, that are used or held primarily for use in connection with the operation of the Wells or Lands (or lands pooled, communitized or unitized therewith as of the Effective Time or the Execution Date).

(f)     To the extent transferable all personal property, equipment, machinery, fixtures and improvements, operational or nonoperational, known or unknown, located on the Lands (or lands pooled, communitized or unitized therewith as of the Effective Time or the Execution Date) or used, or held for use in connection with the operation of the interests described in clauses (a), (b) or (c) above, including pipelines, gathering systems (including the pipelines and gathering systems described in Exhibit D-1), manifolds, well equipment, casing, tubing, pumps, motors, compression equipment, flow lines, processing and separation facilities, pads, and structures that, in each case, as of the Effective Time or as added before the Execution Date, are located on the Lands (or lands pooled, communitized or unitized therewith as of the Effective Time or the Execution Date) and are used or held for use primarily in connection with the operation of the Wells or Lands (or lands pooled, communitized or unitized therewith as of the Effective Time or the Execution Date), or with the production, injection, treatment, sale or disposal of hydrocarbons and all other substances produced therefrom or attributable thereto, including the well pad described in Exhibit D-2 (the "Joint Use Asset").

(g)     The fee surface property, and the surface leases, described in Exhibit E, covering the lands described in Exhibit E, used for Assignors' yards for operation of the interests described in clauses (a), (b) or (c) above.

(h)     All pipes, tubulars, fittings, and other materials used or specifically held for use as operating inventory in connection with the operation of the Wells.

(i)     All logs, well files, production data and seismic data relating to the interests described in clauses (a), (b) or (c) above, but excluding all data and information that is (i) subject to unaffiliated third party contractual restrictions on disclosure or transfer, and for which no waiver of such restrictions has been received, (ii) subject to a transfer fee, unless Assignee agrees in writing to pay such transfer fee and execute associated master service or other agreements required for transfer, and (iii) interpretative data.

(j)     Copies (which, at Assignors' election, may be in either paper or electronic form or a combination thereof except where original documents in Assignors' possession may be required in connection with any Assumed Liabilities (as defined in the Purchase Agreement) of the files, records, land surveys, data and information relating to the items described in clauses (a) through (h) maintained by or in the possession or control of Assignors (such copies are herein called the "Records"), including accounting files, lease files, land contract files, well files, Hydrocarbon sales contract files, gas gathering, compression, treating, transportation, storage and processing files, division order files, abstracts, and title opinions.

(k)     To the extent transferable, all rights and interest of the Assignors under any indemnity (including, without limitation, any rights, claims or causes of action of the Assignors against third parties under any indemnities or hold harmless agreements and any indemnities received in connection with the Assignors' prior acquisition of any of the Assets) to the extent such rights and interests relate to the ownership and operation of the Assets and are attributable to any Assumed Liabilities (as defined in the Purchase Agreement).

**EXCEPTING AND RESERVING TO ASSIGNOR** the following (the "Excluded Assets):

(i)     the leases described in Exhibit A, insofar and only insofar as the Leases cover lands other than the Lands;

(ii)    any accounts receivable accruing or attributable to the period before the Effective Time;

(iii)   except for all Hydrocarbons produced from the Wells prior to the Effective Time for which an adjustment to the Purchase Price (as defined in the Purchase Agreement) is made pursuant to Section 3.2(a)(ii) of the Purchase Agreement, all production of Hydrocarbons from or attributable to the Assets with respect to all periods prior to the Effective Time and all proceeds attributable thereto;

(iv)    any refund of, or loss carry forwards or credits with respect to, costs, taxes or expenses borne by Assignor or Assignors' predecessors in title and that are attributable to the period ending prior to the Effective Time;

(v)     any and all proceeds from the settlements of contract disputes with purchasers of Hydrocarbons from the Assets, including settlement of disputes, insofar as said proceeds are attributable to periods of time prior to the Effective Time;

(vi) the right to exercise any audit rights under operating agreements or other agreements or state law with respect to periods prior to the Effective Time (and Assignee will cooperate with Assignor to facilitate Assignors' exercise of such rights);

(vii) any claims against third parties related to matters for which Assignor indemnifies Assignee under Section 15.2(a) of the Purchase Agreement;

(viii) all titled vehicles and other rolling stock;

(ix) all communications and work-product covered by the attorney-client or attorney work-product privileges (other than title opinions, title abstracts or other chain-of-title materials);

(x) all seismic, geophysical, geochemical, and interpretative data and information, except for the seismic data described in clause (i) above of that will be transferred to Assignee;

(xi) (1) all corporate, financial, tax and legal data and records of Assignor that relate to Assignors' business generally, (2) any data and records to the extent disclosure or transfer is prohibited or subjected to payment of a fee or other consideration by any license agreement or other agreement with a Person other than Affiliates of Assignor, or by applicable law, and for which no consent to transfer has been received or for which Assignee has not agreed in writing to pay the fee or other consideration, as applicable, (3) any data and records relating to the sale of the Assets, including bids received from, and records relating to Assignors' negotiations with, Assignee or with Persons other than Assignee, (4) any data and records constituting or relating to the Excluded Assets and (5) employee information, internal valuation data, business plans, business studies, transaction proposals and related correspondence, and similar records and information;

(xii) Assignors' intellectual property used in determining whether to participate in the development or operation of the Assets, including proprietary computer software, computer software licensed from third parties, patents, pending patent applications, trade secrets, copyrights, names, marks and logos;

(xiii) Assignors' right, title and interest in easements, rights-of-way, licenses, permits, servitudes, surface leases, surface use agreements, and similar rights, obligations and interests, to the extent they are attributable and allocable to rights and interests retained by Assignors;

(xiv) all deposits, cash, checks in process of collection, cash equivalents, accounts and notes receivable and other funds attributable to any periods before the Effective Time, and security or other deposits made with third parties prior to the Effective Time;

(xv) all swap, futures, or derivative contracts backed by or related to Hydrocarbons produced from the Assets;

(xvi) any equipment, materials, spare parts, tools and other personal property that may have been previously used on the Leases, but that have been stored or warehoused at an Assignors' or third party site not located on the Assets since the Effective Time; and

(xvii) all reserve reports prepared by Assignors or their consultants, and all reserve reporting and classification information and supporting materials with respect to Assignors' determination or reporting of their reserves, other than the information furnished to Assignee as part of the sale package materials or presentations by Assignors.

"Affiliate" of any designated Person means any Person which, directly or indirectly, controls, or is controlled by or is under common control with, such designated Person; for purposes of this definition, "control" (including, with correlative meanings, the terms "controlled by" and "under common control with"), as used with respect to any Person, shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract or otherwise; provided that the Affiliates of Bayswater Blenheim Holdings LLC shall be limited to Blenheim Natural Resources Fund, LLC and the Affiliates of Bayswater Blenheim Holdings II, LLC shall be limited to Blenheim Elgin Natural Resources Fund II, LLC.

"Person" shall mean any natural person, corporation, company, limited liability company, partnership, joint venture, trust, proprietorship or other entity, organization or association of any kind and shall include all governmental authorities.

TO HAVE AND TO HOLD the Assets unto Assignee and its successors and assigns forever.

This Assignment is made and accepted expressly subject to the following terms and conditions:

A. *Special Title Warranty; Disclaimers.* Each Assignor hereby warrants and forever agrees to defend Defensible Title (as defined in the Purchase Agreement) as to itself (but not as to any other Assignor) and as to that portion of the Assets owned by it, unto Assignee, its successors and assigns against every Person whomsoever lawfully claiming or to claim the same or any part thereof by, through, or under such Assignor, but not otherwise, except for the Permitted Encumbrances (as defined in the Purchase Agreement), and with full substitution and subrogation in and to all of the rights and actions of title warranty that Assignor may have against its predecessors in title. **EXCEPT AS EXPRESSLY SET FORTH IN THE PRECEDING SENTENCE, IN THE SELLERS CERTIFICATE DELIVERED PURSUANT TO SECTION 12.1(L) OF THE PURCHASE AGREEMENT, OR IN THE PURCHASE AGREEMENT, THIS ASSIGNMENT IS MADE WITHOUT WARRANTY OR REPRESENTATION OF ANY KIND, EITHER EXPRESS, IMPLIED OR STATUTORY AND ASSIGNORS EXPRESSLY DISCLAIM ANY WARRANTY OR REPRESENTATION, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, RELATING TO (I) TITLE TO THE ASSETS, THE CONDITION, QUANTITY, QUALITY, FITNESS FOR A PARTICULAR PURPOSE, CONFORMITY TO THE MODELS**

OR SAMPLES OF MATERIALS OR MERCHANTABILITY OF ANY EQUIPMENT OR ITS FITNESS FOR ANY PURPOSE, (II) THE ACCURACY OR COMPLETENESS OF ANY DATA, REPORTS, RECORDS, PROJECTIONS, INFORMATION OR MATERIALS NOW, HERETOFORE OR HEREAFTER FURNISHED OR MADE AVAILABLE TO ASSIGNEE IN CONNECTION WITH THIS ASSIGNMENT OR THE PURCHASE AGREEMENT, (III) PRICING ASSUMPTIONS, OR QUALITY OR QUANTITY OF HYDROCARBON RESERVES (IF ANY) ATTRIBUTABLE TO THE ASSETS OR THE ABILITY OR POTENTIAL OF THE ASSETS TO PRODUCE HYDROCARBONS, (IV) THE ENVIRONMENTAL CONDITION OF THE ASSETS, BOTH SURFACE AND SUBSURFACE, (V) ANY IMPLIED OR EXPRESS WARRANTY OF NON-INFRINGEMENT, OR (VI) ANY OTHER MATTERS CONTAINED IN ANY MATERIALS FURNISHED OR MADE AVAILABLE TO ASSIGNEE BY ASSIGNORS OR BY ASSIGNORS' AGENTS OR REPRESENTATIVES, OR (B) ANY OTHER EXPRESS, IMPLIED, STATUTORY OR OTHER WARRANTY OR REPRESENTATION WHATSOEVER. ASSIGNEE HAS INSPECTED, OR WAIVED (AND SHALL BE DEEMED TO HAVE WAIVED) ITS RIGHT TO INSPECT, THE ASSETS FOR ALL PURPOSES AND SATISFIED ITSELF AS TO THEIR PHYSICAL AND ENVIRONMENTAL CONDITION, BOTH SURFACE AND SUBSURFACE, INCLUDING BUT NOT LIMITED TO CONDITIONS SPECIFICALLY RELATED TO THE PRESENCE, RELEASE OR DISPOSAL OF HAZARDOUS SUBSTANCES, SOLID WASTES, ASBESTOS AND OTHER MAN MADE FIBERS, OR NORM. ASSIGNEE IS RELYING SOLELY UPON THE TERMS OF THIS ASSIGNMENT AND THE PURCHASE AGREEMENT AND ITS OWN INSPECTION OF THE ASSETS, AND ASSIGNEE ACCEPTS ALL OF THE SAME IN THEIR "AS IS, WHERE IS" CONDITION.

THE PARTIES AGREE THAT, TO THE EXTENT REQUIRED BY APPLICABLE LAW TO BE OPERATIVE, THE DISCLAIMERS OF WARRANTIES CONTAINED IN THIS PARAGRAPH A ARE "CONSPICUOUS" DISCLAIMERS FOR THE PURPOSES OF ANY APPLICABLE LAW, RULE OR ORDER.

B. *Purchase Agreement*. This Assignment is made subject to that certain Purchase and Sale Agreement dated July 22, 2016, by and between Assignors and Assignee (the "Purchase Agreement"). The Purchase Agreement contains certain representations, warranties, indemnities, assumptions and agreements between the Parties, some of which survive the delivery of this Assignment, as provided for therein and shall not be merged into this Assignment or be otherwise negated by the execution or delivery of this Assignment. This Assignment shall not be construed to amend the Purchase Agreement or vary the rights or obligations of either Assignor or Assignee from those set forth in the Purchase Agreement. In the event of any conflict between this Assignment and the Purchase Agreement, the terms of the Purchase Agreement shall control.

C. *Governmental Assignment Forms*. The Parties shall execute and deliver such other assignments and assumptions, bills of sale, or deeds necessary to transfer the Assets to

Assignee, including any conveyances on official forms and related documentation necessary to transfer the Assets to Assignee in accordance with requirements of state and federal governmental regulations. Those assignments shall be deemed to contain all of the terms hereof. The interests conveyed by such separate assignments are the same, and not in addition to, the interests conveyed herein.

D. *Successors and Assigns.* The terms, covenants and conditions contained in this Assignment are binding upon and inure to the benefit of Assignor and Assignee and their respective successors and assigns, and such terms, covenants and conditions are covenants running with the land and with each subsequent transfer or assignment of the Assets or any part thereof.

E. *Counterparts.* This Assignment may be executed in any number of counterparts, each of which shall be deemed to be an original instrument, but all of which together shall constitute but one instrument.

F. *Governing Law.* This Assignment shall be governed by and construed in accordance with the laws of the State of Colorado, without regard to its conflict of law rules.

[Signature Pages Follow]

EXECUTED this 3rd day of October, 2016 (the "Execution Date"), to be effective for all purposes as of the Effective Time.

ASSIGNORS:

Bayswater Exploration & Production, LLC

By: _____
Name:    Stephen M. Struna
Title:    President


Bayswater Blenheim Holdings LLC

By: _____
Name:    Guy J. Castranova
Title:    Managing Director

Bayswater Blenheim Holdings II, LLC

By: _____
Name:    Guy J. Castranova
Title:    Managing Director


ASSIGNEE:

Extraction Oil & Gas, LLC

By: _____
Name:    Matt Owens
Title:    President

STATE OF COLORADO           )
                            ) ss.
CITY AND COUNTY OF DENVER   )

    The foregoing instrument was acknowledged before me this 3rd day of October, 2016, by Stephen M. Struna as President of **Bayswater Exploration & Production, LLC**, a Colorado limited liability company, on behalf of such company.

    Witness my hand and official seal.

    My Commission expires:  8 20 17

*Corella R. Green*
Notary Public

STATE OF _New Jersey_      )
                           ) ss.
COUNTY OF _Union_          )

    The foregoing instrument was acknowledged before me this 29th day of September, 2016, by Guy J. Castranova, as Managing Director of **Bayswater Blenheim Holdings LLC**, a Delaware limited liability company, on behalf of such company.

    Witness my hand and official seal.

    My Commission expires:

*Agar E. Espada*
Notary Public

AGAR E. ESPADA
Notary Public of New Jersey
No. 2370789
My Commission Expires 03/10/2018

STATE OF _____ )
                       ) ss.
COUNTY OF _____ )

The foregoing instrument was acknowledged before me this ___ day of _____, 2016, by Guy J. Castranova as Managing Director of **Bayswater Blenheim Holdings II, LLC**, a Delaware limited liability company, on behalf of such company.

Witness my hand and official seal.

My Commission expires:

_____
Notary Public

AGAR E. ESPADA
Notary Public of New Jersey
No. 2370789
My Commission Expires 03/10/2018

STATE OF COLORADO          )
                           ) ss.
CITY AND COUNTY OF DENVER  )

The foregoing instrument was acknowledged before me this 3rd day of October, 2016, by Matt Owens, as President of Extraction Oil & Gas, LLC, a Delaware limited liability company, on behalf of such company.

Witness my hand and official seal.

My Commission expires: 1/21/18

_____
Notary Public

JESSE N COLE SCHMIDT
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20144302537
MY COMMISSION EXPIRES JANUARY 21 2018

Page 10