# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| EXTRACTION OIL & GAS, INC., *et al.*,[1] | ) Case No. 20-11548 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| EXTRACTION OIL & GAS, INC., | ) |
| | ) |
| Plaintiff, | ) Adversary Proceeding |
| | ) |
| v. | ) |
| | ) Adv. Proc. No. 20-_____ (CSS) |
| PLATTE RIVER MIDSTREAM, LLC AND DJ SOUTH GATHERING, LLC, | ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Extraction Oil & Gas, Inc. ("Extraction") files this Complaint for Declaratory Judgment against Platte River Midstream, LLC ("Platte River") and DJ South Gathering, LLC (individually "DJ South," and with Platte River, the "Defendants"). As the basis for its complaint, Extraction states the following:

### Nature of the Action

1. On June 14, 2020, the Debtors filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). The Debtors are operating their businesses and managing their properties as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Extraction Oil & Gas, Inc. (3923); 7N, LLC (4912); 8 North, LLC (0904); Axis Exploration, LLC (8170); Extraction Finance Corp. (7117); Mountaintop Minerals, LLC (7256); Northwest Corridor Holdings, LLC (9353); Table Mountain Resources, LLC (5070); XOG Services, LLC (6915); and XTR Midstream, LLC (5624). The location of the Debtors' principal place of business is 370 17th Street, Suite 5300, Denver, Colorado 80202.

2. On August 11, 2020, the Debtors filed the *Debtors' Second Omnibus Motion for Entry of an Order (I) Authorizing Rejection of Unexpired Leases of Nonresidential Real Property and Executory Contracts Effective as of the Dates Specified Herein and (II) Granting Related Relief* [Docket No. 412] (the "Motion to Reject"), which seeks to reject, *inter alia*, the First Amended and Restated Transportation Services Agreement entered into with Platte River (the "Platte River Contract") and the Transportation Services Agreement entered into with DJ South (as amended, the "DJ South Contract" and together with the Platte River Contract, the "Transportation Agreements").

3. In connection with the Debtors' chapter 11 cases, this adversary proceeding seeks a declaration that certain covenants contained in the Transportation Agreements do not "run with the land."

## Jurisdiction and Venue

4. The United States Bankruptcy Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157, 1334, and 2201. The proceeding arises from the above-captioned chapter 11 cases and seeks a declaratory judgment that certain covenants (if any) contained in the Transportation Agreements between Defendants and certain of the Debtors do not run with the land. This is a core proceeding under 28 U.S.C. § 157(b)(2).

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6. Extraction consents to the entry of a final order or judgment by this Court.

## Parties

7. Debtors are debtors-in-possession in the above-captioned bankruptcy proceedings by virtue of filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code, on June 14, 2020.

8. Defendant Platte River, upon information and belief, is a Colorado limited liability company with its principal place of business at 1600 Broadway, Suite 2400, Denver, CO 80202.

9. Defendant DJ South, upon information and belief, is a Colorado limited liability company with its principal place of business at 1600 Broadway, Suite 2400, Denver, CO 80202.

## Factual Allegations

### A. The Transportation Agreements.

10. On April 14, 2017, Extraction and Platte River entered into the Platte River Contract. A true and correct copy of the Platte River Contract is attached as **Exhibit A**.

11. On May 16, 2018, Extraction and DJ South entered into the DJ South Contract. A true and correct copy of the DJ South Agreement is attached as **Exhibit B**.

12. ARB Midstream, LLC and ARB Platte River, LLC (collectively, "ARB") is the manager and majority owner of the Defendants. *See* Docket No. 376 (Motion of Platte River Midstream, LLC, DJ South Gathering, LLC and Platte River Holdings, LLC for Entry of Order Modifying the Automatic Stay) at ¶ 10.

13. The initial term of the Platte River Contract commenced as of May 1, 2016[2] and the contract "shall continue thereafter until October 31, 2026 unless earlier terminated pursuant to the terms of this Agreement or extended" under the contract's terms. *See* Ex. A § 4.1.

14. The initial term of the DJ South Contract commenced as of the Commencement Date[3] and the contract "shall continue thereafter for a period of ten (10) years following the later to occur of (i) if [Extraction] constructs, or causes to be constructed, the Badger CGF, the Badger Commencement Date" or "(ii), if [Extraction] constructs, or causes to be constructed, the Matador

---

[2] *See* Ex. B § 1.1(n).
[3] "'Commencement Date' means the earlier to occur of (a) the Badger Commencement Date or (b) the Matador Commencement Date." Ex. A § 1.1(o).

3

CGF, the Matador Commencement Date," unless terminated earlier under the contract's terms. *See* Ex. B § 5.1. Provided, however, that certain portions of the DJ South Contract became effective as of May 16, 2018. *See id.*

15. Under the Transportation Agreements, Extraction agreed to tender "for transportation, or otherwise to pay for the transportation of, the Committed Volume in accordance with the tender procedures set forth in the Tariff and the terms of this Agreement . . . ." Ex. A § 3.1; Ex. B § 4.1. The "Committed Volume" means, subject to other contract terms, "the number of Barrels of Crude Petroleum per day [Extraction] commits to ship on the Pipeline System . . . ." Ex. A § 1.1(o); Ex. B § 1.1(p).

16. Extraction retained exclusive control and possession of all crude petroleum until its delivery into the Pipeline System. Ex. A § 6.7; Ex. B § 7.7. Likewise, Extraction retains title to the crude petroleum throughout transportation and redelivery of the crude petroleum. Ex. A §§ 6.6, 6.7 ███████████████████████████████████████████████████████

███████████████; Ex. B §§ 7.6, 7.7 ███████████████████████████

███████████████████████████████████████████ The contract gives "Crude Petroleum" the ███████████████████ Ex. B § 1.1(f). The Tariff referenced by the Platte River Contract is attached as Exhibit C to that contract. *See* Ex. A at § 1.1(ww) ("Tariff"), Ex. C ("Form of Tariff"). A true and correct copy of the Tariff referenced by the DJ South Contract is attached as **Exhibit C**. The Tariffs, in turn, define Crude Petroleum as "the direct liquid product of oil wells, or the indirect liquid petroleum products of oil or gas wells, or a mixture of such products." Ex. A (Ex. C) at Item 5; Ex. C at Item 5.

17. Extraction's commitments under the Transportation Agreements can be satisfied in full either by: (1) shipping certain amounts of crude petroleum within certain timeframes *or* (2) ██

4

███████████████████████████████████████████████ Ex. A § 3.1; Ex. B § 4.1. ████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████ Ex. A

§ 3.1; Ex. B § 4.1.  The Total Financial Commitment means ████████████████████

████████████████████████████████████████████████████████████████████ Ex. A

§ 1.1(ccc); Ex. B § 1.1 (kkk).

    18.    At Extraction's option, it may accelerate the satisfaction of the Total Volume Commitment, and its obligations under the Transportation Agreement, through payment.  Ex. A § 6.2; Ex. B § 7.2 ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████

    19.    In accordance with their agreements to transport Extraction's produced crude petroleum, the parties agreed to dedicate and commit certain mineral interests to the services provided for under the Transportation Agreements.

    20.    The Platte River Contract—Ex. A § 2.1—states:

████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████

    21.    The DJ South Contract—Ex. B § 2.1—states:

████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████

22. In the Platte River Contract, "Interests" is defined as ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. A § 1.1(bb).

23. Likewise, in the DJ South Contract, "Interests" is defined as ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. B § 1.1(dd).

24. Under both Transportation Agreements, the Dedication Area means lands within certain specified townships in Colorado. Ex. A § 1.1(t); Ex. B § 1.1(u). They do not specifically identify the Extraction real property with which the dedication allegedly runs.

25. In the DJ South Contract *only*, the parties included a provision that purported to contractually render the dedications and commitments under Article II—and *only* those dedications and commitments—a covenant running with Extraction's mineral interests in the Dedication Area, making it enforceable against subsequent owners of Extraction's mineral interests in the Dedication Area by virtue of the privity of estate between the parties. Ex. B § 2.5. Specifically, the parties provided:[4]



---

[4] Ex. B § 2.5.

[redacted]

26.     The Platte River Contract, however, lacks any such language explicitly stating that the parties intended to create a covenant running with the land. *See generally* Ex. A.

27.     The Transportation Agreements are to be construed in accordance with the laws of Colorado, without regards to Colorado's conflict of laws rules. Ex. A § 13.14; Ex. B § 14.14. The real property implicated by the Transportation Agreements is located within Colorado. Ex. A § 1.1(t); Ex. B § 1.1(u) (defining the Dedication Area).

## Claims for Relief

28.     The allegations set forth above are incorporated herein by reference.

29.     Under Colorado law, a covenant runs with the land only when the parties intend the covenant to run with the land and the covenant touches and concerns the land. *Reishus v. Bullmasters, LLC*, 409 P.3d 435, 440 (Colo. App. 2016). Privity of estate is also required. *See Taylor v. Melton*, 274 P.2d 977, 982 (Colo. 1954); *Farmers' High Line Canal & Reservoir Co. v. New Hampshire Real Estate Co.*, 92 P. 290, 293 (Colo. 1907).

30.     Although intent that the covenant run with the land is necessary, it is not sufficient. *See Cloud v. Ass'n of Owners, Satellite Apartment Bldg., Inc.*, 857 P.2d 435, 440 (Colo. App. 1992) ("Even if there is an intent to make a covenant run with the land, the covenant must still 'touch and concern' the land, that is, it must closely relate to the land, its use, or its enjoyment.") (citing *Bigelow v. Nottingham*, 833 P.2d 764 (Colo. App. 1991)).

**COUNT I**
**(Platte River Contract – Declaratory Judgment under 28 U.S.C. § 2201(a))**

31. The allegations set forth above are incorporated herein by reference.

32. The parties dispute whether the Platte River Contract creates any covenants that run with the land.

33. The Platte River Contract does not create covenants that run with the land under Colorado law. In particular, Extraction's purely contractual promise to deliver certain amounts of crude petroleum for shipping is not a covenant that runs with the land.

34. First, the Platte River Contract does not grant Defendants an interest in Extraction's real property sufficient to satisfy privity of estate under Colorado law. Indeed, the Platte River Contract does not actually grant any interest in Extraction's allegedly burdened mineral estate. *See* Ex. A § 6.7 (concerning custody of crude petroleum). Instead, the Platte River Contract merely "identif[ies] and delineate the [parties'] contractual rights and obligations." *In re Sabine Oil & Gas Corp.*, 547 B.R. 66, 76 (Bankr. S.D.N.Y. 2016), aff'd, 567 B.R. 869 (S.D.N.Y. 2017), aff'd, 734 Fed. Appx. 64 (2d Cir. 2018). Thus, the parties were never in privity of estate, and the covenants within the Platte River Contract do not run with the land.

35. Second, the covenants in the Platte River Contract do not "touch and concern" the land. Instead of benefitting or burdening Extraction's mineral estates, the Platte River Contract benefit or burden only the parties personally. The Platte River Contract's covenants relate solely to Extraction's produced crude petroleum. *See generally* Ex. A. Moreover, Extraction can satisfy its obligations under the Platte River Contract by paying its remaining Total Financial Commitment, meaning that Defendants cannot compel Extraction to do anything with its produced crude petroleum, let alone with its mineral estates.

36. Finally, the parties did not even intend to create a covenant running with the land in the Platte River Contract. The Platte River Contract's passing reference to successors and assigns unambiguously binds only ***contractual*** successors and assigns, not successors and assigns to any real property. Indeed, when the parties intended to create a covenant running with the land they knew how to clearly say so, as they did in the DJ South Contract. *See* Ex. B § 2.5.

37. As a result of the facts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

38. A judicial declaration is necessary and appropriate so that Extraction may ascertain its rights and obligations regarding the Platte River Contract.

39. For the foregoing reasons, Extraction is entitled to a judicial declaration that the covenants contained in the Platte River Contract fail to run with the land.

40. Such a declaration will serve the twin interests of judicial efficiency and cost-effectiveness by terminating the substantial and actual controversy between the parties, or resolving some part of it.[5] It will also serve a useful purpose by enabling the Court to determine whether the Platte River Contract and all obligations thereunder may be rejected under section 365 of the Bankruptcy Code.

## COUNT II
**(DJ South Contract – Declaratory Judgment under 28 U.S.C. § 2201(a))**

41. The allegations set forth above are incorporated herein by reference.

---

[5] Debtors have filed a motion to reject the Platte River Contract pursuant to section 365 of the Bankruptcy Code. Bankruptcy courts have expressed a preference for the simultaneous adjudication of the issues raised in this adversary proceeding with a motion to reject the underlying executory contract. *In re Sabine Oil & Gas Corp.*, 547 B.R. at 73 ("[B]ifurcating the motion to reject and further proceedings to finally resolve the underlying property law dispute is an inefficient use of judicial and private resources; it would have been far preferable for the Court to hear the two together.").

42. The parties dispute whether the DJ South Contract creates any covenants that run with the land.

43. The DJ South Contract does not create covenants that run with the land under Colorado law. In particular, Extraction's purely contractual promise to deliver certain amounts of crude petroleum for shipping is not a covenant that runs with the land.

44. First, the DJ South Contract does not grant Defendants an interest in Extraction's real property sufficient to satisfy privity of estate under Colorado law. Indeed, the DJ South Contract does not actually grant any interest in Extraction's allegedly burdened mineral estate. *See* Ex. B § 7.7 (concerning custody of crude petroleum). Instead, the DJ South Contract merely "identif[ies] and delineate the [parties'] contractual rights and obligations." *In re Sabine Oil & Gas Corp.*, 547 B.R. 66, 76 (Bankr. S.D.N.Y. 2016), aff'd, 567 B.R. 869 (S.D.N.Y. 2017), aff'd, 734 Fed. Appx. 64 (2d Cir. 2018). Thus, the parties were never in privity of estate, and the covenants within the DJ South Contract do not run with the land.

45. Second, the covenants in the DJ South Contract do not "touch and concern" the land. Instead of benefitting or burdening Extraction's mineral estates, the DJ South Contract benefits or burdens only the parties personally. The DJ South Contract's covenants relate solely to Extraction's produced crude petroleum. *See generally* Ex. B. Moreover, Extraction can satisfy its obligations under the DJ South Contract by paying its remaining Total Financial Commitment, meaning that Defendants cannot compel Extraction to do anything with its produced crude petroleum, let alone with its mineral estates.

46. As a result of the facts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

47. A judicial declaration is necessary and appropriate so that Extraction may ascertain its rights and obligations regarding the DJ South Contract.

48. For the foregoing reasons, Extraction is entitled to a judicial declaration that the covenants contained in the DJ South Contract fails to run with the land.

49. Such a declaration will serve the twin interests of judicial efficiency and cost-effectiveness by terminating the substantial and actual controversy between the parties, or resolving some part of it.[6] It will also serve a useful purpose by enabling the Court to determine whether the DJ South Contract and all obligations thereunder may be rejected under section 365 of the Bankruptcy Code.

## **Prayer for Relief**

WHEREFORE, Extraction respectfully request that the Court enter judgment in Extraction's favor as follows:

(a) Declaring that the covenants contained in the Transportation Agreements do not run with the land.

(b) Granting Extraction such other relief as the Court deems appropriate under the circumstances.

---

[6] Debtors have filed a motion to reject the DJ South Contract pursuant to section 365 of the Bankruptcy Code. Bankruptcy courts have expressed a preference for the simultaneous adjudication of the issues raised in this adversary proceeding with a motion to reject the underlying executory contract. *In re Sabine Oil & Gas Corp.*, 547 B.R. at 73 ("[B]ifurcating the motion to reject and further proceedings to finally resolve the underlying property law dispute is an inefficient use of judicial and private resources; it would have been far preferable for the Court to hear the two together.").

Dated: August 25, 2020  
Wilmington, Delaware

*/s/ Stephen B. Gerald*  
**WHITEFORD, TAYLOR & PRESTON LLC**[7]  
Marc R. Abrams (DE No. 955)  
Richard W. Riley (DE No. 4052)  
Stephen B. Gerald (DE No. 5857)  
The Renaissance Centre  
405 North King Street, Suite 500  
Wilmington, Delaware 19801  
Telephone:   (302) 353-4144  
Facsimile:   (302) 661-7950  
Email:   mabrams@wtplaw.com  
   rriley@wtplaw.com  
   sgerald@wtplaw.com

- and -

**KIRKLAND & ELLIS LLP**  
**KIRKLAND & ELLIS INTERNATIONAL LLP**  
Christopher Marcus, P.C. (admitted *pro hac vice*)  
Allyson Smith Weinhouse (admitted *pro hac vice*)  
Ciara Foster (admitted *pro hac vice*)  
601 Lexington Avenue  
New York, New York 10022  
Telephone:   (212) 446-4800  
Facsimile:   (212) 446-4900  
Email:   christopher.marcus@kirkland.com  
   allyson.smith@kirkland.com  
   ciara.foster@kirkland.com

- and-

Anna Rotman, P.C. (admitted *pro hac vice*)  
Kenneth Young (admitted *pro hac vice*)  
609 Main Street  
Houston, TX 77002  
Telephone:   (713) 836-3600  
Facsimile:   (713) 836-3601  
Email:   anna.rotman@kirkland.com  
   kenneth.young@kirkland.com

*Co-Counsel to Debtors and Debtors in Possession*

---

[7] Whiteford, Taylor & Preston LLC operates as Whiteford Taylor & Preston L.L.P. in jurisdictions outside of Delaware.