**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|   |   |
|---|---|
| In re: | ) Chapter 11 |
| EXTRACTION OIL & GAS, INC., *et al.*,[1] | ) Case No. 20-11548 |
| Debtors. | ) (Jointly Administered) |
| EXTRACTION OIL & GAS, INC., | ) |
| Plaintiff, | ) Adversary Proceeding |
| v. | ) |
| ELEVATION MIDSTREAM, LLC, | ) Adv. Proc. No. 20-_____ (CSS) |
| Defendant. | ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Extraction Oil & Gas, Inc. ("Extraction") files this Complaint for Declaratory Judgment against Elevation Midstream, LLC ("Elevation"). As the basis for its complaint, Extraction states the following:

**Nature of the Action**

1. On June 14, 2020, the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are operating their businesses

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Extraction Oil & Gas, Inc. (3923); 7N, LLC (4912); 8 North, LLC (0904); Axis Exploration, LLC (8170); Extraction Finance Corp. (7117); Mountaintop Minerals, LLC (7256); Northwest Corridor Holdings, LLC (9353); Table Mountain Resources, LLC (5070); XOG Services, LLC (6915); and XTR Midstream, LLC (5624). The location of the Debtors' principal place of business is 370 17th Street, Suite 5300, Denver, Colorado 80202.

and managing their properties as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code.

2. On August 10, 2020, Debtors filed the *Notice of Rejection of Certain Executory Contracts And/Or Unexpired Leases* [Docket No. 377] (the "Rejection Notice").

3. In connection with the Debtors' chapter 11 cases, this adversary proceeding seeks a declaration that certain covenants contained in the agreements between Elevation and certain of the Debtors do not "run with the land."

## Jurisdiction and Venue

4. The United States Bankruptcy Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157, 1334, and 2201. The proceeding arises from the above-captioned chapter 11 cases and seeks a declaratory judgment that certain covenants (if any) contained in the agreements between Elevation and certain of the Debtors do not run with the land. This is a core proceeding under 28 U.S.C. § 157(b)(2).

5. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6. Extraction consents to the entry of a final order or judgment by this Court.

## Parties

7. Extraction is a debtor in the above-captioned bankruptcy proceedings by virtue of filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532, on June 14, 2020.

8. Defendant Elevation, upon information and belief, is a Delaware limited liability company with its principal place of business at 1225 17th Street, Suite 1750, Denver, CO 80202.

**Factual Allegations**

**I.     THE COMMERCIAL AGREEMENTS.**

9. On July 3, 2018, Extraction and Elevation entered the Gas Gathering and Compression Agreement (the "Gas Agreement"). A true and correct copy of the Gas Agreement is attached as **Exhibit A**.

10. On July 3, 2018, Extraction and Elevation entered the Crude Oil Gathering and Stabilization Agreement (the "Oil Agreement"). A true and correct copy of the Oil Agreement is attached as **Exhibit B**.

11. On July 3, 2018, Extraction and Elevation entered the Produced Water Gathering Agreement (the "Water Agreement"). A true and correct copy of the Water Agreement is attached as **Exhibit C**.

12. When referenced collectively herein, the Gas Agreement, Oil Agreement, and Water Agreement shall be referred to as the "Commercial Agreements."

**II.    DURATION OF THE COMMERCIAL AGREEMENTS.**

13. Each of the Commercial Agreements became effective on July 3, 2018 and each remains █████████████████████████████████████████ ████████████████████ and continues year to year thereafter unless terminated under the contract. Ex. A § VII; Ex. B § VII; Ex. C § VII.

**III.   PERFORMANCE OF THE COMMERCIAL AGREEMENTS.**

14. Each of the Commercial Agreements' obligations largely mirror one another.

15. Under the Gas Agreement, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

3

Ex. A § 2.5. The Delivery Points █████████████████████████████████

████████████████████████████████████████████ as identified on Exhibit B to the Gas

Agreement. *Id.* § 4.1. Meanwhile, Gas ████████████████████████████████

████████████████████████████████████████████████████████████████ *Id.*

(Ex. A) § I(kkk).

    16.    Similarly, under the Oil Agreement, ████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██ Ex. B § 2.5. The Delivery Points ████████████████████████████████

████████████████████████████████████████████ as identified on Exhibit

B to the Oil Agreement. *Id.* § 4.1. Meanwhile, Crude Oil ███████████████

██████████████████████████████ *Id.* (Ex. A) § I(nn).

    17.    Finally, under the Water Agreement, █████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████ Ex. C § 2.5. The Delivery Points ███████

████████████████████████████████████████████████████████████████████

████ as identified on Exhibit B to the Water Agreement. *Id.* § 4.1. Meanwhile, Water ████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████ *Id.* (Ex. A) § I(xxxxx).

**IV. DEDICATIONS.**

18. Each of the Commercial Agreements includes dedications and commitments of certain interests.

19. As part of the Gas Agreement, the parties agreed to dedicate and commit certain interests to the performance of the Gas Agreement—Ex. A § 2.1—stating in relevant part:



20. As part of the Oil Agreement, the parties agreed to a nearly identical dedication and commitment—Ex. B § 2.1—stating in relevant part:



21. As part of the Water Agreement, the parties agreed to another dedication and commitment—Ex. C § 2.1—stating in relevant part:



22. Under the Gas Agreement, the Dedicated Interests are Extraction's ███████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████ and Extraction's ███████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ Ex. A (Ex. A) § I(vv).

23. The Dedicated Interests in the Oil Agreement are nearly identical, simply swapping the word "Gas" for "Crude Oil." *See* Ex. B (Ex. A) § I(ss). The Dedicated Interests in the Water Agreement also simply swaps the word "Gas" for "Water." *See* Ex. C (Ex. A) § I(qq).

24. Under the Gas Agreement, the Other Interests are ███████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████ but excluding ████████████████████████████████ ████████████████████████████ Ex. A (Ex. A) § I(zzzz).

25. The definition of "Other Interests" in the Oil Agreement is nearly identical, simply swapping the word "Gas" for "Crude Oil." *See* Ex. B (Ex. A) § I(uuuu). Likewise, in the Water Agreement, which swaps the word "Gas" for "Water." *See* Ex. C (Ex. A) § I(rrrr).

26. Under each of the Commercial Agreements, the Dedicated Area is █████████ ████████████████████████████████████████ Ex. A (Ex. A) § I(uu); Ex. B (Ex. A) § I(rr); Ex. C (Ex. A) § I(pp).

## V. RESERVATIONS FROM DEDICATIONS.

27. Each of the Commercial Agreements reserved important rights from the scope of the dedications. *See* Ex. A § 2.2; Ex. B § 2.2; Ex. C § 2.2.

28. In each Commercial Agreement, the reservations include the following:[2]



29. The Drilling Commitment ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮ Ex. A (Ex. A) § I(aaa); Ex. B (Ex. A) §I(xx); Ex. C (Ex. A) § I(vv).

## VI. CONDITIONAL GRANTS OF EASEMENTS.

30. Under each of the Commercial Agreements, Elevation was ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ as needed for its surface facilities. Ex. A (Ex. A) § XVI(d); Ex. B (Ex. A) § XVI(d); Ex. C (Ex. A) § XVI(d).

31. However, Extraction granted ▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ for the construction, operation, and maintenance of the Delivery Point facilities. Ex. A (Ex. A) § XVI(d); Ex. B (Ex. A) § XVI(d); Ex. C (Ex. A) § XVI(d).

---

[2] Ex. A § 2.2; Ex. B § 2.2; Ex. C § 2.2.

## VII.  PURPORTED COVENANTS RUNNING WITH THE LAND.

32. Each Commercial Agreement purports to create covenants running with the land.

33. In the Gas Agreement, the parties included a provision that purported to render certain contractual promises into covenants running with the Dedicated Interests. Ex. A § 2.4. Specifically, the parties stated that:[3]



34. In the Oil Agreement, the parties stated:[4]



---

[3]  Ex. A § 2.4.
[4]  Ex. B § 2.4.

35. In the Water Agreement, the parties stated:[5]



## VIII. THE RATIFICATION AGREEMENT.

36. Meanwhile, on July 3, 2018, the parties entered the Ratification Agreement. A true and correct copy of the Ratification Agreement is attached as Exhibit D.

37. The parties "desire[d] to enter into [the] [Ratification] Agreement to clarify certain responsibilities and obligations" respecting the Commercial Agreements. Ex. D at Recital 2. The Ratification Agreement was "executed solely for the purpose of the ratification contemplated [t]herein and shall not amend or modify the Commercial Agreements in any way. In the event of a conflict between this this [sic] [Ratification] Agreement and the Commercial Agreements, the Commercial Agreements shall govern in all respects." *Id.* § 5.

38. First, the Ratification Agreement ratified and confirmed the dedications of the Commercial Agreements. Ex. D § 2(a). Next, the Ratification Agreement restated the parties' intent and language concerning covenants running with the land. *Id.* § 2(b). The Ratification Agreement is governed by Colorado law. *Id.* § 3.

---

[5] Ex. C § 2.4.

**IX.   THE AMENDMENTS.**

39.   Sections of the Commercial Agreements were amended throughout the years.  The amendments do not impact the provisions discussed above or the covenant running with the land analysis.  True and correct copies of each of the amendments are attached as Exhibit E.

**X.   CHOICE OF LAW.**

40.   The Commercial Agreements are construed in accordance with the laws of Colorado, without regards to Colorado's conflict of laws rules.  Ex. A (Ex. A) § XIII; Ex. B (Ex. A) § XIII; Ex. C (Ex. A) § XIII.  The real property interests implicated by the Commercial Agreements are also located in Colorado.  *See* Ex. A at Recital 1 (reciting that Extraction owns certain lands in Colorado); Ex. B at Recital 1 (same); Ex. C at Recital 1 (same).

**Claims for Relief**

41.   The allegations set forth above are incorporated herein by reference.

42.   Under Colorado law, a covenant runs with the land only when the parties intend the covenant to run with the land and the covenant touches and concerns the land.  *Reishus v. Bullmasters, LLC*, 409 P.3d 435, 440 (Colo. App. 2016).  Privity of estate is also required.  *See Taylor v. Melton*, 274 P.2d 977, 982 (Colo. 1954); *Farmers' High Line Canal & Reservoir Co. v. New Hampshire Real Estate Co.*, 92 P. 290, 293 (Colo. 1907).

43.   Although intent that the covenant run with the land is necessary, it is not sufficient. *See Cloud v. Ass'n of Owners, Satellite Apartment Bldg., Inc.*, 857 P.2d 435, 440 (Colo. App. 1992) ("Even if there is an intent to make a covenant run with the land, the covenant must still 'touch and concern' the land, that is, it must closely relate to the land, its use, or its enjoyment.") (citing *Bigelow v. Nottingham*, 833 P.2d 764 (Colo. App. 1991)).

44. Courts assess whether a particular covenant runs with the land on a particularized covenant-by-covenant basis. *See MidCities Metro. Dist. No. 1 v. U.S. Bank Nat. Ass'n*, 12-CV-03322-LTB, 2013 WL 3200088, at *6 (D. Colo. June 24, 2013) (applying Colorado law and concluding certain covenants ran with the land but that the covenant at issue in the same deed did not); *see also Pennaco Energy, Inc. v. KD Co. LLC*, 363 P.3d 18, 34 (Wyo. 2015) (applying Wyoming law and noting an older case held that a particular royalty covenant did not run with the land because, in part, "other provisions of the deed contained 'successors and assigns' language, indicating the parties deliberately omitted those words in the royalty clause") (citing *Mathisen v. Thunder Basin Coal Co., LLC*, 169 P.3d 61, 66 (Wyo. 2007)).

## COUNT I
### (Gas Agreement – Declaratory Judgment under 28 U.S.C. § 2201(a))

45. The allegations in paragraphs 1 through 44 are incorporated herein by reference.

46. The parties dispute whether the Gas Agreement creates any covenants that run with the land.

47. The Gas Agreement does not create covenants that run with the land under Colorado law. In particular, Extraction's purely contractual promise to deliver to Elevation certain amounts of produced gas is not a covenant that runs with the land.

48. First, the covenants in the Gas Agreement—other than the Drilling Commitment—do not "touch and concern" the land. Instead of benefitting or burdening Extraction's mineral estate, the Gas Agreement benefits or burdens the parties personally. The Gas Agreement's covenants relate solely to Extraction's produced gas and not Extraction's land. *See generally* Ex. A. Accordingly, none of the covenants—other than the Drilling Commitment—touch and concern the land and, thus, fail to run with the land on this basis.

49. Second, the Gas Agreement does not grant Elevation an interest in Extraction's real property sufficient to satisfy privity of estate under Colorado law. Indeed, the Gas Agreement does not actually grant any interest in Extraction's allegedly burdened mineral estate. *See* Ex. A § 2 (concerning dedication reservations). Instead, the Gas Agreement merely "identif[ies] and delineat[es] the [parties'] contractual rights and obligations." *In re Sabine Oil & Gas Corp.*, 547 B.R. 66, 76 (Bankr. S.D.N.Y. 2016), aff'd, 567 B.R. 869 (S.D.N.Y. 2017), aff'd, 734 Fed. Appx. 64 (2d Cir. 2018). Thus, the parties were never in privity of estate, and none of the covenants—including the Drilling Commitment—run with the land.

50. As a result of the facts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

51. A judicial declaration is necessary and appropriate so that Extraction may ascertain its rights and obligations regarding the Gas Agreement.

52. For the foregoing reasons, Extraction is entitled to a judicial declaration that the covenants contained in the Gas Agreement fail to run with the land.

53. Such a declaration will serve the twin interests of judicial efficiency and cost-effectiveness by terminating the substantial and actual controversy between the parties, or resolving some part of it.[6] It will also serve a useful purpose by enabling the Court to determine whether the Gas Agreement and all obligations thereunder may be rejected under section 365 of the Bankruptcy Code.

---

[6] On August 10, 2020, the Debtors filed the Rejection Notice to reject the Gas Agreement pursuant to section 365 of the Bankruptcy Code and have adjourned adjudication of such to date. Bankruptcy courts have expressed a preference for the simultaneous adjudication of the issues raised in this adversary proceeding with a motion to reject the underlying executory contract. *In re Sabine Oil & Gas Corp.*, 547 B.R. at 73 ("[B]ifurcating the motion to reject and further proceedings to finally resolve the underlying property law dispute is an inefficient use of judicial and private resources; it would have been far preferable for the Court to hear the two together.").

## COUNT II
## (Oil Agreement – Declaratory Judgment under 28 U.S.C. § 2201(a))

54. The allegations set forth in paragraphs 1 through 44 are incorporated herein by reference.

55. The parties dispute whether the Oil Agreement creates any covenants that run with the land.

56. The Oil Agreement does not create covenants that run with the land under Colorado law. In particular, Extraction's purely contractual promise to deliver to Elevation certain amounts of produced oil is not a covenant that runs with the land.

57. First, the covenants in the Oil Agreement—other than the Drilling Commitment—do not "touch and concern" the land. Instead of benefitting or burdening Extraction's mineral estate, the Oil Agreement benefits or burdens the parties personally. The Oil Agreement's covenants relate solely to Extraction's produced oil and not Extraction's land. *See generally* Ex. B. Accordingly, none of the covenants—other than the Drilling Commitment—touch and concern the land and, thus, they fail to run with the land on this basis.

58. Second, the Oil Agreement does not grant Elevation an interest in Extraction's real property sufficient to satisfy privity of estate under Colorado law. Indeed, the Oil Agreement does not actually grant any interest in Extraction's allegedly burdened mineral estate. *See* Ex. B § 2 (concerning dedication reservations). Instead, the Gas Agreement merely "identif[ies] and delineat[es] the [parties'] contractual rights and obligations." *In re Sabine Oil & Gas Corp.*, 547 B.R. at 76. Thus, the parties were never in privity of estate, and none of the covenants—including the Drilling Commitment—run with the land.

59. As a result of the facts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

60. A judicial declaration is necessary and appropriate so that Extraction may ascertain its rights and obligations regarding the Oil Agreement.

61. For the foregoing reasons, Extraction is entitled to a judicial declaration that the covenants contained in the Oil Agreement fail to run with the land.

62. Such a declaration will serve the twin interests of judicial efficiency and cost-effectiveness by terminating the substantial and actual controversy between the parties, or resolving some part of it.[7] It will also serve a useful purpose by enabling the Court to determine whether the Oil Agreement and all obligations thereunder may be rejected under section 365 of the Bankruptcy Code.

## COUNT III
**(Water Agreement – Declaratory Judgment under 28 U.S.C. § 2201(a))**

63. The allegations set forth in paragraphs 1 through 44 are incorporated herein by reference.

64. The parties dispute whether the Water Agreement creates any covenants that run with the land.

65. The Water Agreement does not create covenants that run with the land under Colorado law. In particular, Extraction's purely contractual promise to deliver to Elevation certain amounts of produced water is not a covenant that runs with the land.

66. First, the covenants in the Water Agreement—other than the Drilling Commitment—do not "touch and concern" the land. Instead of benefitting or burdening

---

[7] On August 10, 2020, the Debtors filed the Rejection Notice to reject the Oil Agreement pursuant to section 365 of the Bankruptcy Code and have adjourned adjudication of such to date. Bankruptcy courts have expressed a preference for the simultaneous adjudication of the issues raised in this adversary proceeding with a motion to reject the underlying executory contract. *In re Sabine Oil & Gas Corp.*, 547 B.R. at 73 ("[B]ifurcating the motion to reject and further proceedings to finally resolve the underlying property law dispute is an inefficient use of judicial and private resources; it would have been far preferable for the Court to hear the two together.").

Extraction's mineral estate, the Water Agreement benefits or burdens the parties personally. The Water Agreement's covenants relate solely to Extraction's produced water and not Extraction's land. *See generally* Ex. C. Accordingly, none of the covenants—other than the Drilling Commitment—touch and concern the land and, thus, they fail to run with the land on this basis.

67. Second, the Water Agreement does not grant Elevation an interest in Extraction's real property sufficient to satisfy privity of estate under Colorado law. Indeed, the Water Agreement does not actually grant any interest in Extraction's allegedly burdened mineral estate. *See* Ex. C § 2 (concerning dedication reservations). Instead, the Water Agreement merely "identif[ies] and delineat[es] the [parties'] contractual rights and obligations." *In re Sabine Oil & Gas Corp.*, 547 B.R. at 76. Thus, the parties were never in privity of estate, and none of the covenants—including the Drilling Commitment—run with the land.

68. As a result of the facts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

69. A judicial declaration is necessary and appropriate so that Extraction may ascertain its rights and obligations regarding the Water Agreement.

70. For the foregoing reasons, Extraction is entitled to a judicial declaration that the covenants contained in the Water Agreement fail to run with the land.

71. Such a declaration will serve the twin interests of judicial efficiency and cost-effectiveness by terminating the substantial and actual controversy between the parties, or resolving some part of it.[8] It will also serve a useful purpose by enabling the Court to determine

---

[8] On August 10, 2020, the Debtors filed the Rejection Notice to reject the Water Agreement pursuant to section 365 of the Bankruptcy Code and have adjourned adjudication of such to date. Bankruptcy courts have expressed a preference for the simultaneous adjudication of the issues raised in this adversary proceeding with a motion to reject the underlying executory contract. *In re Sabine Oil & Gas Corp.*, 547 B.R. at 73 ("[B]ifurcating the motion to reject and further proceedings to finally resolve the underlying property law dispute is an inefficient use of judicial and private resources; it would have been far preferable for the Court to hear the two together.").

whether the Water Agreement and all obligations thereunder may be rejected under section 365 of the Bankruptcy Code.

## Prayer for Relief

WHEREFORE, Extraction respectfully request that the Court enter judgment in Extraction's favor as follows:

(a) Declaring that the covenants contained in the Gas Agreement do not run with the land.

(b) Declaring that the covenants contained in the Oil Agreement do not run with the land.

(c) Declaring that the covenants contained in the Water Agreement do not run with the land.

(d) Granting Extraction such other relief as the Court deems appropriate under the circumstances.

*[Remainder of Page Intentionally Left Blank]*

Dated: September 4, 2020
Wilmington, Delaware

*/s/ Richard W. Riley*

**WHITEFORD, TAYLOR & PRESTON LLC**[9]
Marc R. Abrams (DE No. 955)
Richard W. Riley (DE No. 4052)
Stephen B. Gerald (DE No. 5857)
The Renaissance Centre
405 North King Street, Suite 500
Wilmington, Delaware 19801
Telephone: (302) 353-4144
Facsimile: (302) 661-7950
Email: mabrams@wtplaw.com
rriley@wtplaw.com
sgerald@wtplaw.com

- and -

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Christopher Marcus, P.C. (admitted *pro hac vice*)
Allyson Smith Weinhouse (admitted *pro hac vice*)
Ciara Foster (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: christopher.marcus@kirkland.com
allyson.smith@kirkland.com
ciara.foster@kirkland.com

- and-

Anna Rotman, P.C. (admitted *pro hac vice*)
Kenneth Young (admitted *pro hac vice*)
609 Main Street
Houston, TX 77002
Telephone: (713) 836-3600
Facsimile: (713) 836-3601
Email: anna.rotman@kirkland.com
kenneth.young@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

[9] Whiteford, Taylor & Preston LLC operates as Whiteford Taylor & Preston L.L.P. in jurisdictions outside of Delaware.