# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|   |   |
|---|---|
| In re: | : Chapter 11 |
|  | : |
|  | : Case No. 20-11548 (CSS) |
| EXTRACTION OIL & GAS, INC. *et al*,[1] | : |
|  | : Jointly Administered |
| Debtors. | : **Hearing Date: October 2, 2020 @10:00 am** |
|  | : **Objections Due: September 17, 2020 @4:00 p.m.** |

**THE UNITED STATES TRUSTEE'S OBJECTION TO THE DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO FILE UNDER SEAL CERTAIN PORTIONS OF THE DEBTORS' STATEMENTS OF FINANCIAL AFFAIRS AND SCHEDULES OF ASSETS AND LIABILITIES (D.I. 558, 559 & 560)**

Andrew R. Vara, the United States Trustee for Region 3 (the "U.S. Trustee"), through his undersigned counsel, hereby objects to the Debtors' Motion for Entry of an Order Authorizing the Debtors to File Under Seal Certain Portions of the Debtors' Statements of Financial Affairs and Schedules of Assets and Liabilities (D.I. 558, 559, 560) (the "Sealing Motion"), and in support of that objection respectfully states as follows:

## PRELIMINARY STATEMENT

Unless the movants carry their burden of establishing that one of the narrow exceptions to public access set forth in section 107(b) of the Bankruptcy Code is satisfied, the Seal Motions should be denied.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Extraction Oil & Gas, Inc. (3923); 7N, LLC (4912); 8 North, LLC (0904); Axis Exploration, LLC (8170); Extraction Finance Corp. (7117); Mountaintop Minerals, LLC (7256); Northwest Corridor Holdings, LLC (9353); Table Mountain Resources, LLC (5070); XOG Services, LLC (6915); and XTR Midstream, LLC (5624). The location of the Debtors' principal place of business is 370 17th Street, Suite 5300, Denver, Colorado 80202.

## JURISDICTION, VENUE AND STANDING

1. Pursuant to (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine this objection.

2. Pursuant to 28 U.S.C. § 586(a), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District. Such oversight is part of the U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog"). "U.S. Trustees are officers of the Department of Justice who protect the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy proceedings." *United Artists Theatre Co. v. Walton*, 315 F.3d 217, 225 (3d Cir. 2003).

3. Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to appear and be heard regarding the Seal Motions. "The United States trustee may raise and may appear and be heard on any issue in any case or proceeding under this title but may not file a plan pursuant to section 1121(c) of this title." 11 U.S.C. § 307.

## BACKGROUND AND RELEVANT FACTS

4. On June 14, 2020, each Debtor herein filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5. On June 30, 2020, the U.S. Trustee appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code. (D.I. 155).

6. The section 341 first meeting of creditors was originally scheduled for July 23, 2020 and was held but continued to Monday August 24, 2020.

7. On July 31, 2020, the Debtors filed their Schedules and Statements of Financial Affairs (the "SOFAs") (D.I. 340-359).

8. With respect to Debtor Extraction Oil & Gas, Inc. – Case No. 20-11785-CSS (D.I. 340), that particular Debtor set forth the following answer in response to Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy Part 6, Question 13 which requires the debtor to list any transfers of money or other property-by sale, trade, or any other means------made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs, a portion of which appears on page 222 of the SOFA as follows:

| | | | | |
|---|---|---|---|---|
| POLITICAL CONTRIBUTION | | Political Contribution | 10/18/2019 | $100,000.00 |
| POLITICAL CONTRIBUTION | | Political Contribution | 10/18/2019 | $100,000.00 |
| POLITICAL CONTRIBUTION | | Political Contribution | 10/22/2019 | $15,000.00 |
| POLITICAL CONTRIBUTION | | Political Contribution | 10/24/2019 | $10,000.00 |
| POLITICAL CONTRIBUTION | | Political Contribution | 10/29/2019 | $155,000.00 |
| POLITICAL CONTRIBUTION | | Political Contribution | 10/29/2019 | $45,000.00 |
| POLITICAL CONTRIBUTION | | Political Contribution | 10/31/2019 | $30,000.00 |

(See D.I. 340, p. 222)

9. In fact, the originally-filed SOFAs set forth 61 political contributions from June 2018 through March 2020 totaling $10,045,484.25. See D.I. 340 pp. 217-223.

10. At the continued section 341 meeting, the U.S. Trustee questioned the Debtor representative with respect to the Schedules and SOFAs and requested that the Debtor file an amended SOFAs with respect to the political contribution information contained therein.

11. On August 31, 2020, the Debtor filed the Amended SOFAs, redacting certain information, an example of which is set forth below:

| | | | |
|---|---|---|---|
| ███████ | Political Contribution | 10/03/2019 | $10,000.00 |
| ███████ | Political Contribution | 10/04/2019 | $509,500.00 |
| ███████ | Political Contribution | 10/08/2019 | $65,000.00 |
| ███████ | Political Contribution | 10/10/2019 | $5,000.00 |
| ███████ | Political Contribution | 10/11/2019 | $375,000.00 |

D.I. 558.

## LEGAL ANALYSYS AND ARGUMENT

12. Under Fed. R. Bankr. P. 1007(a), in a voluntary case, the debtor shall file with the petition a list containing the name and address of each entity included or to be included on Schedules D, E/F, G, and H as prescribed by the Official Forms which includes (A) schedules of assets and liabilities and (D) a statement of financial affairs. See Fed. R. Bankr. P. 1007(a).

13. Fed. R. Bankr. P. 1007(k) provides that if a list, schedule, or statement, other than a statement of intention, is not prepared and filed as required by this rule, the court may order the trustee, a petitioning creditor, committee, or other party to prepare and file any of these papers within a time fixed by the court. The court may approve reimbursement of the cost incurred in complying with such an order as an administrative expense.

14. The applicable forms contain an unsworn declaration under 28 U.S.C. § 1746 that states "I have examined the information in this Statement of Financial Affairs and any attachments and have a reasonable belief that the information is true and correct. I declare under

penalty of perjury that the foregoing is true and correct.".  In fact Official Form 207 requires that a debtor disclose:

- Who received the transfer?
- The complete street address of the transferee;
- The relationship to the debtor;
- A description of property transferred or payments received or debts paid in exchange;
- The date the transfer was made, and;
- The total amount or value transferred.

15. In this case, the Debtors have not satisfied their burden of demonstrating that the SOFAs may be sealed under section 107 of the Bankruptcy Code and Fed. R. Bankr. P. 9018.

16. There is a "strong presumption in favor of public access to judicial records and papers, which has statutory, common law and First Amendment underpinnings . . . ." *In re Continental Airlines,* 150 B.R. 334, 341 (D. Del. 1993).  "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978); *accord Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 780-81 (3d Cir. 1994) (recognizing "a right of access to judicial proceedings and judicial records," and that "this right of access is 'beyond dispute'") (citation omitted).  Courts "have recognized a strong presumption of public access to court records. . . . This preference for public access is rooted in the public's first amendment right to know about the administration of justice.  It helps safeguard 'the integrity, quality, and respect in our judicial system.'" *In re Orion Pictures Corp.,* 21 F.3d 24, 26 (2d Cir. 1994)(citations omitted).  "Public observation facilitated by the right of access diminishes possibilities for injustice, incompetence, perjury, and fraud.  Moreover, the very openness of the process should provide the public with a more complete understanding of the judicial system and

a better perception of its fairness." *In re Avandia Marketing, Sales Practices and Products Liability Litigation*, 924 F.3d 662, 672 (3d Cir. 2019) (citations, quotation marks omitted).

17. "There is a strong presumption in favor of public access to bankruptcy proceedings and records. During a chapter 11 reorganization, a debtor's affairs are an open book and the debtor operates in a fishbowl." *In re Alterra Healthcare Corp.*, 353 B.R. 66, 73 (Bankr. D. Del. 2006) (citations omitted).

18. Section 107 of the Bankruptcy Code provides in relevant part:

> (a) Except as provided in subsections (b) and (c) of this section and subject to section 112, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.
>
> (b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—
> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

19. Fed. R. Bankr. P. 9018 provides:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information, (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code, or (3) to protect governmental matters that are made confidential by statute or regulation. If an order is entered under this rule without notice, any entity affected thereby may move to vacate or modify the order, and after a hearing on notice the court shall determine the motion.

20. Section 107(b) of the Bankruptcy Code provides a "narrow statutory exception" to public access in bankruptcy cases." *In re Muma Services, Inc.*, 279 B.R. 478, 484 (Bankr. D. Del. 2002). "Under § 107(a), unless a paper filed in a bankruptcy court falls within one of the express exceptions in § 107(b) or (c), it must be open to public inspection. On the other hand, if a paper falls within one of the express exceptions in § 107(b), on the request of a party in interest, the bankruptcy court *shall* protect a person." *In re Food Management Group, LLC*, 359 B.R. 543, 554 (Bankr. S.D.N.Y. 2007). Sealing is "an extraordinary measure that is warranted only under rare circumstances as 'public monitoring is an essential feature of democratic control.'" *In re Anthracite Capital, Inc.*, 492 B.R. 162, 171 (Bankr. S.D.N.Y. 2013) (citation omitted).

21. The movant has the burden of showing that a request to seal documents falls within the parameters of section 107(b). *See In re Food Management Group, LLC*, 359 B.R. at 561; *accord In re FiberMark, Inc.*, 330 B.R. 480, 504 (Bankr. D. Vt. 2005); *In re Oldco M Corp.*, 466 B.R. 234, 237 (Bankr. S.D.N.Y. 2012). "It is not an easy burden nor should it be." *In re Gitto/Global Corp.*, 321 B.R. 367, 373 (Bankr. D. Mass. 2005), *aff'd* 2005 WL 1027348 (D. Mass. May 2, 2005), *aff'd* 422 F.3d 1 (1st Cir. 2005).

22. Commercial information is information whose disclosure "would result in 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'" *See In re Alterra Healthcare Corp.*, 353 B.R. at 75, (*citing In re Orion Pictures Corp.*, 21 F.3d at 27-28). Disclosure of the information must "'reasonably be expected to cause the entity commercial injury.'" *In re Alterra Healthcare Corp.*, 353 B.R. at 75 (citing *In re Northstar Energy, Inc.*, 315 B.R. 425, 429 (Bankr. E.D. Tex. 2004)). The possibility that disclosure of information will give negative publicity to or embarrass a party in interest is not a

basis on which to seal records under section 107(b).  *See In re Alterra Healthcare Corp.*, 353 B.R. at 77.

23.     The movant has the burden of showing that a request to place documents, especially the SOFAs, under seal falls within the parameters of an exception to section 107(a) by demonstrating "that the interest in secrecy outweighs the presumption in favor of access."  *In re Continental Airlines,* 150 B.R. 334, 340 (D. Del. 1993) (quotation marks, citations omitted).  *See also In re Food Management Group, LLC*, 359 B.R. at 561 (movant has burden of showing that request to seal documents falls within parameters of section 107(b)); *accord In re FiberMark, Inc.*, 330 B.R. 480, 504 (Bankr. D. Vt. 2005); *In re Oldco M Corp.*, 466 B.R. 234, 237 (Bankr. S.D.N.Y. 2012).

24.     Here, the Debtors have not carried their burden under section 107.  The Debtors assert, without support, that such political contributions, made in the ordinary course, are covered by section 107 because it is likely that (i) the disclosure of the specific recipients of the Debtors' political contributions would jeopardize many of the Debtors' business relationships and adversely affect the Debtors' business, (ii) the public disclosure of certain of the political contributions (or the lack thereof) would adversely affect the Debtors' longstanding relationships with both state and local governments and (iii) that the public disclosure of the political contributions would "disproportionately benefit" the Debtors' competitors.  Sealing Motion at ¶¶ 13-15.  However, the Debtors offer no evidence that either support these allegation or that otherwise overcome the strong presumption of public disclosure.  Such unsupported arguments and conclusions do not carry the day under section 107 and Rule 9018.

25.     The U.S. Trustee reserves any and all rights, remedies, and obligations to, among other things, complement, supplement, augment, alter and/or modify this objection.

WHEREFORE, the U.S. Trustee respectfully requests that this Court issue an order denying the Sealing Motion and granting such other relief as this Court deems appropriate and just.

Dated: September 17, 2020
       Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGIONS 3 & 9**

By: */s/Richard L. Schepacarter*
Richard L. Schepacarter, Esq.
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 N. King Street, Room 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (fax)
Richard.schepacarter@usdoj.gov