**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| EXTRACTION OIL & GAS, INC. *et al.*,[1] | ) Case No. 20-11548 (CSS) |
| Debtors. | ) Jointly Administered |
| | ) Hearing Date: 11/2/2020 at 10:00 a.m. (ET) |
| | ) Objection Deadline: 10/26/2020 at 4:00 p.m. (ET) |
| | ) Re: Docket No. 739 |

**DEBTORS' OBJECTION TO RICHMARK ENERGY PARTNERS, LLC
AND RICHMARK ROYALTIES, LLC'S MOTION FOR RELIEF FROM THE
AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of their objection to the *Motion of Richmark Energy Partners LLC and Richmark Royalties, LLC's* (collectively "Richmark" or "Movants") *for Relief from the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code* [Docket No. 739] (the "Motion" or the "Lift Stay Motion"):

**Preliminary Statement**

An automatic stay was imposed on the case styled *Great Northern Properties, LLLP v. The Cookery International, et al.,* Case No. 2019CV30091, District Court, Weld County, Colorado (the "State of Court Action"). By and through the Motion, the Movants seek relief from the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Extraction Oil & Gas, Inc. (3923); 7N, LLC (4912); 8 North, LLC (0904); Axis Exploration, LLC (8170); Extraction Finance Corp. (7117); Mountaintop Minerals, LLC (7256); Northwest Corridor Holdings, LLC (9353); Table Mountain Resources, LLC (5070); XOG Services, LLC (6915); and XTR Midstream, LLC (5624). The location of the Debtors' principal place of business is 370 17th Street, Suite 5300, Denver, Colorado 80202.

automatic stay to continue the State Court Action. The Movants, however, have failed to established sufficient cause for relief from the automatic stay. Relief from the automatic stay—a fundamental debtor protection—is not warranted. Here, if the Movants' relief were granted, the Debtors would have to expend estate resources continuing to litigate the State Court Action to a final judgment and defend an all but certain appeal to the detriment of other stakeholder in the midst of a complex restructuring. The purpose of the automatic stay is to provide precisely the breathing spell the Debtors require here.

## Background

1. On June 14, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the Bankruptcy Code"). Upon commencement of these chapter 11 cases, and by operation of law pursuant to section 362 of the Bankruptcy Code, the automatic stay enjoined all entities from, among other things, pursuing any judicial action that was initiated before the Petition Date, including the State Court Action. On September 30, 2020, the Movants filed their Motion seeking to lift the automatic stay to allow the State Court Action to proceed.

2. The State Court Action involved a claim to quiet title asserted by the plaintiff Great Northern Properties, LLLP ("GNP") to certain minerals underlying a street in Greeley, Colorado. GNP named as defendants the owners of lots adjacent to the street who are currently credited with mineral ownership and those with interests in the minerals pursuant to oil and gas leases including the Debtor Extraction Oil & Gas, Inc. ("Extraction") and the Movants.

3. In 1974 and 1975, a real estate developer, JPRW Construction Company ("JPRW"), subdivided certain lands in Greeley, Colorado. JPRW dedicated a street to the City of Greeley and subdivided the abutting land into individual lots, which it conveyed to third parties. Neither the

street dedication nor the lot conveyances reserved the minerals with the developer, and mineral ownership has been credited with the abutting lot owners.

4. Before the State Court Action was filed, the Movants' parent company, Mineral Resources, Inc. ("MRI") took oil and gas leases from JPRW and the abutting lot owners to "double cover" the minerals underlying the street. MRI then conveyed the working interest in all of the leases to Richmark Energy Partners, LLC, in part, and to Extraction, in part. Richmark Energy Partners LLC then conveyed an overriding royalty interest from its working interest in all of the leases to Richmark Royalties, LLC. The effect of these transactions is that, regardless of who owns the minerals underlying the street, Extraction and the Movants are similarly situated and own interests in the leases covering those minerals.

5. In January 2019, JPRW reappeared to convey—or attempt to convey—the minerals under the street to the plaintiff GNP, which promptly filed the State Court Action. GNP's lawsuit was effectively a test case to push the issue for developers across Colorado hoping to take a slice of abutting lot owners' mineral royalties. Extraction answered the complaint and promptly moved for a C.R.C.P. 56(h) determination of law to resolve the primary question: does the century-old centerline presumption doctrine—which presumes that a grantor of lots abutting a dedicated street conveys the highest estate in that land to the center of the street—exempt or automatically sever the mineral estate under the street from the rest of the conveyed estate?

6. On November 12, 2019, the trial court issued a 49-page order, attached hereto as **Exhibit A**, resolving that question in favor of Extraction and against the plaintiff GNP – "as to [GNP], the Court determines the developer conveyed all its interest in the lots abutting the roadway and, in doing so, ceased to have any claim to the mineral estate beneath the right-of-way." *Order re: Extraction's Motion and Plaintiff's Cross Motion for Determination of a Question of Law* at 47, No. 19CV30091 (SDL) (Dist. Ct., Weld Cnty., Colo. Nov. 12, 2019) That determination of

law did not, however, fully resolve the case because the trial court could not trace the current lot owner defendants' title back to the original owner of the fee underlying the street, *i.e.*, JPRW. Once that factual question is resolved, final judgment can enter and an appeal can be taken. Of course, that title question does not change the trial court's determination that plaintiff GNP has no interest in the mineral estate under the street.

7. On March 11, 2020, in search of a final appealable order, the Movants filed a Motion for Summary Judgment asking the trial court to reverse its decision and find that the minerals under the street remained with the developer, JPRW, and now the plaintiff GNP. As explained herein *infra*, the Movants' motivation for seeking to reverse the trial court's decision is to ratify its flawed policy and leasing strategy. Extraction timely responded to the Motion for Summary Judgment. The trial court asked the parties to provide a stipulation of ownership for the abutting lot owners showing a chain of title from the original developer, JPRW, to the current owners. Before that stipulation was filed, Extraction filed its chapter 11 petition with this Court and the automatic stay was thereafter imposed in the State Court Action.

## Jurisdiction and Venue

8. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. The Debtors confirm their consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by the Court.

9. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**Argument**

I. **The Movants Have Failed to Demonstrate "Cause" Required to Lift the Automatic Stay.**

10. The Bankruptcy Code's automatic stay provisions represent "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986). Section 362(a)(1) of the Bankruptcy Code automatically stays "the commencement or continuation . . . of a judicial . . . or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under [the Bankruptcy Code], or to recover a claim against the debtor that arose before the commencement of the case. . . ." 11 U.S.C. § 362(a)(1). The purpose of the automatic stay is threefold: "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *Borman v. Raymark Indus., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991).

11. Given these protections and purposes, the Movants bear a heavy burden in seeking to eliminate the automatic stay to enable their costly pursuit of a final judgment and appeal to continue unabated. The Movants must establish "cause" in the first instance, and in so doing show that "'the balance of hardships from not obtaining relief tips significantly in [its] favor.'" *Atl. Marine, Inc v. Am. Classic Voyages, Co. (In re American Classic Voyages, Co.)*, 298 B.R. 222, 225 (D. Del. 2003) (quoting *In Re FRG*, 115 B.R. 72, 74 (E.D. Pa. 1990)). And in balancing the hardships, the Court focuses on three factors in determining whether "cause" exists: "1. Whether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the stay; 2. Whether the hardship to the non-bankrupt party by maintenance of the stay considerably

outweighs the hardship to the debtor; and 3. The probability of the creditor prevailing on the merits." *In re Downey Fin. Corp.*, 428 B.R. 595, 609 (Bankr. D. Del. 2010).

### A.    Debtors will be harmed if the stay is lifted.

12.    Since the automatic stay exists as a "fundamental debtor protection[]," the "most important factor" in determining whether to modify the stay and allow litigation to proceed "'is the effect of such litigation on the administration of the estate.'" *In re W.R. Grace & Co.*, No. 01 01139 JFK, 2007 WL 1129170, at *2 n.7 (Bankr. D. Del. Apr. 13, 2007) (quoting *In re Curtis*, 40 B.R. 795, 806 (Bankr. D. Utah 1984)).  Thus, "[e]ven slight interference with the administration may be enough to preclude relief in the absence of a commensurate benefit." *Id.*

13.    The Movants are seeking relief from the stay so that the State Court Action can proceed to a final judgement and the Movants can then initiate an appeal (the "Appeal") of the trial court's decision to the Colorado Court of Appeals. *See* Docket No. 739 at § 14.  While it is true that the Debtors have submitted extensive briefs in connection with the State Court Action, the Movants' contention that all research and briefing have been completed is misleading.  Were this Court to lift the stay, the Appeal would require significant work and associated expense for the Debtors' estates.  Further, even if the appeals process were underway and near conclusion, that consideration alone would not warrant lifting the automatic stay.  Here, however, it is not reasonable to believe that the Appeal could conclude during the pendency of these chapter 11 cases.  The Debtors should not be required to devote significant resources to engage in a protracted appeals process in the midst of these chapter 11 cases. *See, e.g.*, *Borman*, 946 F.2d at 1036.

**B.    Maintenance of the stay will not harm the Movants, much less outweigh hardship to the Debtors by lifting the stay.**

14.    The Movants "bear[] 'the heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief.'" *In re W.R. Grace & Co.*, 2007 WL 1129170 at *3 (quoting *In re Micro Design, Inc.*, 120 B.R. 363, 369 (E.D.Pa.1990)).

15.    In this case, the balance of harms tips decidedly in favor of preserving the stay to protect the Debtors' estates, including the interests of each of their various stakeholders. *See Energy Future Holdings Corp.*, 533 B.R. 106, 118 (Bankr. D. Del. 2015) ("The estate is defined broadly, 11 U.S.C. § 541, and is created 'for the benefit of all creditors and equity holders of the debtor.'" (quoting *In re Johns-Manville Corp.*, 36 B.R. 727, 735 (Bankr. S.D.N.Y. 1984))).

16.    To bolster their claim that they will suffer some genuine harm if the stay is not lifted, the Movants leave a misimpression regarding the "substantial hardship [they will face] if the stay is not lifted" and the Movants are required to relitigate the State Court Action issues [Docket No. 739 at § 24]. The Debtors do not seek relief from this Court to litigate the issues at all, but rather, to maintain the status quo throughout the pendency of these chapter 11 cases.

17.    Further, the Movants do not offer any support for the contention that they will face substantial hardship because there is none. The Movants have stated on the record that their motivation for participating in the State Court Action does not involve financial interests in the underlying issues. In fact, during oral arguments on September 4, 2019, the Movants' counsel stated:

> My clients have an interest—in some ways, you used the term "no dog in the fight," we are in the same shoes as Extraction, to some degree, since our parent company, Mineral Resources, took leases from both the dedicator and from the adjacent landowners. <u>The reason why we have—we're involved in this case is because Mineral Resources, since its inception, has followed the policy that the dedicator of the subdivision owns the minerals underlying the dedicated streets and they have adopted a leasing strategy that is</u>

7

> based on that ownership by the dedicator and, conceptually, its title attorneys have taken the position that the rule announced by Wyoming Supreme court in the Moorcroft decision makes the most sense, applies most, particularly because it's based on Colorado law.

See Hr'g Tr. at 4, *Great Northern Properties, LLLP v. The Cookery International Inc.*, No. 19CV30091 (SDL) (Dist. Ct., Weld Cnty., Colo. Sept. 4, 2019) (emphasis added), attached hereto as **Exhibit B**.

      18.      By their own admission, "Richmark Energy Partners, LLC is a working interest owner and [] Richmark Royalties, LLC is an overriding royalty owner. Both Richmark entities own interests in the Oil and Gas Lease . . . that covers West 11th Street Road. The Richmark entities also own interests in leases given by owners of lots adjacent to West 11th Street Road." *Response of Richmark Energy Partners, LLC and Richmark Royalties, LLC in Opposition to Defendant Extraction Oil and Gas, Inc.'s Motion for Determination of a Question of Law and Cross Motion for Determination of a Question of Law* at 2, 2019CV30091 (Dist. Ct., Weld Cnty., Colo.), attached hereto as **Exhibit C**. In other words, the Movants have their bases covered, as they own an interest in the disputed minerals either through leases with the dedicator or with the lot owners.

      19.      The ultimate question of mineral ownership is therefore irrelevant to the Movants' financial interests. Since the Movants have double-coverage of the minerals through both the dedicator and the lot owners, their financial interests are unaffected. They will receive the same amount of payments that they currently, and will continue to, enjoy through the pendency of these chapter 11 cases. Thus, the automatic stay does not prejudice the Movants.

      20.      Nevertheless, the Movants ask the Court to lift the stay so that they may continue their attempt to validate a leasing strategy wholly unrelated to the administration of the estate. Accordingly, the Movants' desire to continue a self-determined and flawed policy crusade, which

does not affect their financial interest in the subject minerals and Debtors' estate, is not sufficient to warrant the relief they are now seeking.

### C. The Movants are not likely to succeed on the merits of their claims.

21. Extraction has significant defenses that undermine Movants' claims. As an initial matter, all parties in the State Court Action had the full opportunity to brief and orally argue the mineral ownership issue before the trial court, which unequivocally ruled against the Movants in a well-reasoned 49-page order. Further, the crux of the Movants' present legal arguments depends on the Court of Appeals disregarding and upsetting over 100 years of well-established Colorado statutory and common law based on a single case from Wyoming that has never been cited with approval by any Colorado court. Indeed, the State Court Action was decided on established legal grounds and the "wealth of Colorado case law from which to draw in order to decide this question of law." *Order re: Extraction's Motion and Plaintiff's Cross Motion for Determination of a Question of Law* at 43, No. 19CV30091 (SDL) (Dist. Ct., Weld Cnty., Colo. Nov. 12, 2019).

### Conclusion

22. Put simply, there is no good reason to grant a preference to the Movants by allowing them to pursue an appeal of a purely legal question against the Debtors. The Movants are not prejudiced by the automatic stay and the relief they seek will not affect their financial interests, regardless of the outcome on the legal question. On the other hand, lifting the stay would require significant depletion of estate resources and could result in an outcome financially adverse to the Debtors. Thus, the status quo should continue until the Debtors emerge from these chapter 11 cases.

### Reservation of Rights

23. The Debtors reserve all rights to supplement or add to the legal and factual arguments raised in this objection and to object to the Motion, on any bases whatsoever, at a future

date. Additionally, the Debtors reserve all rights to seek actual and punitive damages for any violation of the automatic stay.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| Dated: October 26, 2020<br>Wilmington, Delaware | */s/ Richard W. Riley*<br>**WHITEFORD, TAYLOR & PRESTON LLC**[1]<br>Marc R. Abrams (DE No. 955)<br>Richard W. Riley (DE No. 4052)<br>Stephen B. Gerald (DE No. 5857)<br>The Renaissance Centre<br>405 North King Street, Suite 500<br>Wilmington, Delaware 19801<br>Telephone:   (302) 353-4144<br>Facsimile:   (302) 661-7950<br>Email:         mabrams@wtplaw.com<br>                    rriley@wtplaw.com<br>                    sgerald@wtplaw.com<br><br>- and -<br><br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Christopher Marcus, P.C. (admitted *pro hac vice*)<br>Allyson Smith Weinhouse (admitted *pro hac vice*)<br>Ciara Foster (admitted *pro hac vice*)<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:   (212) 446-4800<br>Facsimile:   (212) 446-4900<br>Email:         christopher.marcus@kirkland.com<br>                    allyson.smith@kirkland.com<br>                    ciara.foster@kirkland.com |

---

[1] Whiteford, Taylor & Preston LLC operates as Whiteford Taylor & Preston L.L.P. in jurisdictions outside of Delaware.