# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| EXTRACTION OIL & GAS, INC., *et al.*,[1] | Case No. 20-11548 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 14, 363, 681, 942, 1038, 1048** |

## MOTION OF GRAND MESA PIPELINE, LLC FOR STAY PENDING APPEAL OF ORDER GRANTING MOTIONS TO REJECT CERTAIN EXECUTORY CONTRACTS

Grand Mesa Pipeline, LLC ("**Grand Mesa**") hereby moves (the "**Motion**"), pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order staying (i) the *Bench Ruling* [D.I. 942] (the "**Bench Ruling**"),[2] entered in this action on November 2, 2020, and (ii) the *Order Authorizing Rejection of Certain Executory Contracts* [D. I. 1038] (the "**Order**" and together with the Bench Ruling, the "**Rejection Order**"), which granted the *Debtors' Omnibus Motion for Entry of an Order (I) Authorizing Rejection of Unexpired Leases of Nonresidential Real Property and Executory Contracts Effective as of the Dates Specified Herein and (II) Granting Related Relief* [D.I. 14] (the "**Rejection Motion**"), pending Grand Mesa's appeal of the Rejection Order. In support of this Motion, Grand Mesa respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Extraction Oil & Gas, Inc. (3923); 7N, LLC (4912); 8 North, LLC (0904); Axis Exploration, LLC (8170); Extraction Finance Corp. (7117); Mountaintop Minerals, LLC (7256); Northwest Corridor Holdings, LLC (9353); Table Mountain Resources, LLC (5070); XOG Services, LLC (6915); and XTR Midstream, LLC (5624). The location of the Debtors' principal place of business is 370 17th Street, Suite 5300, Denver, Colorado 80202.

[2] At the conclusion of the Bench Ruling, Platte River Midstream, Platte River Midstream, LLC, DJ South Gathering, LLC, and Platte River Holdings, LLC (collectively, "**Platte River**"), moved *ore tenus* for entry of a stay pending appeal of the Rejection Order as to Platte River. Grand Mesa acknowledges that the Court denied that request, but files this motion given that it is unclear whether the Court's ruling denying the stay request applies with equal force to Grand Mesa.

## PRELIMINARY STATEMENT

1.  The relevant factors considered by courts in this Circuit weigh strongly in favor of staying the Rejection Order pending appeal. This is especially so here where governing legal principles that this Court relied upon in reaching the conclusions supporting the Rejection Order are unsettled in the Third Circuit, and persuasive authority from other Circuits impels a different conclusion.

2.  The novelty of the issues and the recognized uncertainty in the legal framework demonstrate that Grand Mesa has a substantial possibility of success on appeal, which warrants entry of a stay until the underlying issues of first impression in this Circuit are resolved. A stay also strongly serves the public interest because this Court's holding threatens the viability of thousands of agreements in the nation's midstream oil and gas industry and thwarts the Federal Energy Regulatory Commission's ("**FERC** or the "**Commission**") exclusive jurisdiction under the Interstate Commerce Act ("**ICA**") to determine whether the public interest requires a debtor's abrogation or modification of filed rates and other terms of transportation service agreements through rejection.

3.  Moreover, absent a stay, Grand Mesa would suffer irreparable harm to its property rights and business interests that would be thwarted by Extraction's rejection of the TSAs, for which Extraction could not adequately compensate Grand Mesa with monetary relief. Given the limited—and somewhat obscure—recovery projected for general unsecured creditors in the Debtors' cases, a monetary claim could not possibly compensate Grand Mesa for the substantial harm caused by rejection. Courts have consistently found irreparable harm where, as here, real property rights are eviscerated. By contrast, any potential injury to the Debtors is no greater than maintaining the status quo under its bargained-for agreements with Grand Mesa. This Court

should stay the Rejection Order until the appropriate reviewing court decides these important issues.

## RELEVANT BACKGROUND

4. Grand Mesa operates the Grand Mesa Pipeline (the "**Pipeline**"), an interstate oil pipeline that originates in Weld County, Colorado and extends approximately 550 miles southeast. Given its capacity to transport up to 150,000 barrels per day, the Pipeline provides critical takeaway capacity for crude oil producers in the Denver-Julesburg Basin. Additionally, the Pipeline's convenient position affords shippers access to the U.S. Midcontinent markets and the Texas Gulf Coast refinery complex. The Pipeline not only supports the continued growth and production in the area but does so in a cost-effective and environmentally responsible way by reducing the current utilization of rail and truck transportation.

5. On February 19, 2016, Grand Mesa and a shipper—Extraction Oil & Gas, LLC, the predecessor to one of the above-captioned Debtors, Extraction Oil & Gas, Inc. ("**Extraction**")—entered into an *Amended and Restated Transportation Services Agreement* (the "**Extraction TSA**").[3] On August 9, 2016, a generic Transportation Services Agreement containing the same terms as the Extraction TSA, and which Grand Mesa offered to all potential shippers, was filed with FERC. On September 8, 2016, FERC approved the terms of the generic agreement.

6. Grand Mesa is also a party to that certain *Amended and Restated Transportation Services Agreement with Extraction Oil & Gas, Inc.*,[4] dated June 21, 2016 (assigned by Bayswater

---

[3] Amended and Restated Transportation Services Agreement (by and between Grand Mesa Pipeline, LLC and Extraction Oil & Gas, LLC), February 19, 2016 (filed with and approved by FERC on September 8, 2016 in Docket No. OR16-12).

[4] Amended and Restated Transportation Services Agreement (by and between Grand Mesa Pipeline, LLC and Bayswater Exploration & Production, LLC), June 21, 2016 (filed with and approved by FERC on September 8, 2016 in Docket No. OR16-12).

Exploration & Production, LLC to Extraction Oil & Gas, LLC[5] pursuant to an *Assignment, Bill of Sale and Conveyance* dated October 3, 2016, effective July 1, 2016, the "**Bayswater TSA**" and together with the Extraction TSA, the "**TSAs**"). As assurance for Extraction's performance thereunder, the Bayswater TSA contains a dedication of interests to Grand Mesa which constitutes a covenant running with the land under Colorado law, deemed to touch and concern all of Extraction's oil and gas leasehold interests in the lands within the dedication area.

7. On June 14, 2020 (the "**Petition Date**"), the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") each filed voluntary petitions for relief under chapter 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

8. On June 15, 2020, the Debtors filed the Rejection Motion, seeking entry of an order authorizing rejection of the TSAs.

9. On August 4, 2020, Grand Mesa filed an objection to the Rejection Motion [D.I. 363] (the "**Rejection Objection**") arguing, *inter alia*, that (i) as the TSAs are regulated by FERC, a heightened "public interest" standard, rather than the "business judgment" standard, applies when evaluating the propriety of the Debtors' determination to reject the TSAs; (ii) should the "business judgment" standard apply, rather than the "public interest" standard, the Debtors fail to substantiate their decision to reject the TSAs, relying on conclusory statements, and raise concerns related to external influences over the Debtors' decision-making process; and (iii) dedication rights granted to Grand Mesa under the Bayswater TSA constitute valid and enforceable covenants running with the land precluding rejection of the Bayswater TSA pursuant to section 365 of the

---

[5] Successor by conversion to Extraction.

Bankruptcy Code and, if intended by the Debtors, the Rejection Motion is an improper mechanism to contest the validity of such rights and interests. Rejection Objection, ¶¶ 3-9.

10. On November 2, 2020, the Bankruptcy Court entered the Bench Ruling, finding that the relief sought in the Rejection Motion is appropriate, and on November 9, 2020, the Bankruptcy Court entered the Rejection Order granting the Rejection Motion and permitting rejection of the TSAs.

11. At the conclusion of the Bench Ruling, Platte River moved *ore tenus* for entry of a stay pending appeal of the Rejection Order as to Platte River. The Bankruptcy Court denied that request.

12. On November 11, 2020, Grand Mesa filed a notice of appeal [D.I. 1048] (the "**Notice of Appeal**") to the United States District Court for the District of Delaware with respect to the Rejection Order.

## RELIEF REQUESTED

13. Pursuant to Rule 8007 of the Bankruptcy Rules, Grand Mesa requests that this Court stay the Rejection Order pending an appeal by Grand Mesa. A stay is appropriate because Grand Mesa has a strong likelihood of success on the merits, will suffer irreparable harm absent a stay and the public interest favors entry of a stay. In addition, a stay will not prejudice the Debtors' bankruptcy estates, as it will merely preserve the status quo during the pendency of Grand Mesa's appeal. Accordingly, and as set forth more fully below, a stay pending appeal is appropriate under the circumstances.

## BASIS FOR RELIEF REQUESTED

14. Rule 8007 of the Bankruptcy Rules provides "[o]rdinarily, a party must move first in the bankruptcy court for . . . a stay of a judgment, order, or decree of the bankruptcy court

pending appeal[.]" Fed. R. Bankr. P. 8007(a)(1)(A).

15. The Third Circuit has held that courts should consider the following factors in determining whether to grant a stay pending appeal:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

16. In this analysis, the first two factors "are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff[] will suffer absent the stay. Simply stated, more of one excuses less of the other." *In re Revel AC, Inc.*, 802 F.3d at 570 (quoting *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002)); *see also Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 397 F. Supp. 2d 537, 548 (D. Del. 2005) ("[W]hen the movant is more likely to succeed, the harm required to be shown is less; if success is less likely, then the harm needed must weigh more heavily in the movant's favor.").

17. Once the movant demonstrates that the first two factors justify a stay, the court then "balance[s] the relative harms considering all four factors using a 'sliding scale' approach." *In re Revel AC, Inc.*, 802 F.3d at 571; *see also In re Cujas*, 376 B.R. 480, 485-86 (Bankr. E.D. Pa. 2007) (stating that the balancing approach is the majority view and is "more consonant with the court's role in making decisions based on the equities and provides the court with the flexibility required to reach a fair result"). Here, because each of the factors typically considered in determining whether to grant a stay pending appeal militates in favor of staying the Rejection Order pending appeal, the Court should grant this Motion and an enter an order staying the Rejection Order

pending appeal.

### A. Grand Mesa's Appeal is Likely to Succeed on the Merits.

18. Grand Mesa respectfully submits that there is a serious likelihood that a reviewing court could disagree with the Rejection Order and conclude that it was inappropriate to proceed with rejection of the TSAs under a traditional rejection analysis without FERC having had the opportunity to formally determine through a FERC order whether the public interest under the ICA requires any modification or abrogation in connection with, or caused by, rejection of the TSAs..

19. The effect of rejection of the TSAs, and therefore the determination of whether rejection is appropriate or warranted, goes well beyond that of a simple contract rejection and any determination of the propriety of rejecting the TSAs should have at least included a formal review and determination by FERC as to whether the public interest under the ICA requires rejection. Other courts to address the issue—including at least one Circuit Court of Appeal—have allowed FERC to undergo a public interest evaluation, in accordance with FERC's standard process, and to speak through its orders on the issue of the public interest as part of the bankruptcy rejection procedure. This issue is one of first impression in this Circuit and does not accord with the rulings of the Circuit Courts of Appeal to have addressed similar issues. Grand Mesa, thus, has at least a substantial possibility of success on appeal, especially considering the concurrent and significant federal interest of FERC associated with the Debtors' request to reject the TSAs.

20. Grand Mesa further submits that there is a strong likelihood that an appellate court could disagree with the Rejection Order, as it authorizes the Debtors to reject the Bayswater TSA even if it contains a valid and enforceable covenant running with the land—which, of course, Grand Mesa believes that it does (in accordance with Colorado law). In this respect, the Rejection Order also rejects the body of bankruptcy case law holding that a real property covenant is not

7

subject to rejection under the Bankruptcy Code. There is, therefore, a considerable probability that an appellate court—reviewing this Court's determination in the adversary proceeding[6] that the Bayswater TSA does not contain real property covenants running with the land—would conclude that the disputed covenants are real covenants or equitable servitudes that run with the land, which are not subject to rejection. The lack of binding authority supporting the Court's analysis on both the covenant running with the land determination and the rejectability of a real property covenant, as well as conflicting indications in Colorado case law on whether the dedications in the Bayswater TSA run with the land, confirm that Grand Mesa has a substantial possibility of success on appeal.

### B. Absent a Stay, Grand Mesa will be Irreparably Harmed.

21. Grand Mesa will suffer immeasurable harm absent a stay of the Rejection Order. As a threshold matter, authorizing rejection of the TSAs under a faulty standard that is deferential to the Debtors' business judgment wrongfully curtails Grand Mesa's ability to have FERC—the statutorily appointed regulator—weigh-in on the consequences of rejection and whether the Debtors' actions have functionally resulted in the modification or abrogation of the filed rate under the ICA. The harm to Grand Mesa associated with the Bankruptcy Court's (a) application of the business judgment standard to adjudicate the propriety of rejecting filed rates such as the TSAs, and (b) decision to cut off rights and obligations imposed by FERC, is significant as it posits systemic change in the markets and could also have the consequence of devastating Grand Mesa's business. For these reasons alone, Grand Mesa satisfies the irreparable harm prong of the factors considered in determining whether a stay pending appeal is appropriate.

---

[6] In a separate adversary proceeding, Adv. Pro. No. 20-50813, the Court granted declaratory relief to the Debtors in finding that the Bayswater TSA does not contain a covenant running with the land under Colorado law. That decision is the subject of a separate appeal by Grand Mesa.

22. In addition, absent a stay, the Rejection Order will jeopardize what Grand Mesa maintains—and what the appellate court could conclude—are real property interests created by the dedications, covenants and servitudes in the Bayswater TSA. *See Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) ("[I]rreparable harm [exists] where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied."); *7-Eleven, Inc. v. Khan*, 977 F. Supp. 2d 214, 234 (E.D.N.Y. 2013) ("[I]t is well-settled that unauthorized interference with a real property interest constitutes irreparable harm as a matter of law, given that a piece of property is considered to be a unique commodity for which a monetary remedy for injury is an inherently inadequate substitute."). Unless a stay pending appeal is granted, Grand Mesa's real property interests could be depleted, transferred or otherwise lost before Grand Mesa has an opportunity to vindicate its rights on appeal.[7]

### C. A Stay Will Not Harm the Debtors.

23. A stay of the Rejection Order is appropriate because, in contrast with the irreparable harm that Grand Mesa will suffer, the Debtors will suffer little to no harm. *See St. John v. Affinia Grp., Inc.*, 2009 U.S. Dist. LEXIS 47787, at *7 (D.N.J. June 8, 2009) (finding this factor weighed in favor of granting a motion for stay pending appeal where "the only harm to [the non-moving party] will be a short although not inconsequential delay.").

24. Extraction freely entered into the TSAs, and a stay pending appeal would place Extraction in no worse position than it occupied prior to the entry of the Rejection Order. Grand Mesa would continue to provide services pursuant to the TSAs, as it has done up until this point.

---

[7] Extraction's insolvency—and the limited recovery projected for general unsecured creditors, including Grand Mesa— further underscores that the harm to Grand Mesa resulting from the Rejection Order could not be sufficiently remedied by monetary relief.

9

A stay pending appeal merely maintains the status quo. Entry of the stay would also protect the Debtors' estates from incurring a massive rejection damages claim and any additional costs associated therewith. Accordingly, the harm facing Grand Mesa outweighs any harm that the Debtors may face.

        **D.**        **The Public Interest Favors Granting a Stay.**

25. The public interest weighs in favor of a stay pending appeal of the Rejection Order, considering the public interest concerns at issue here include the correct application of the law, the protection of parties' right to appeal and the consideration of parallel federal statutory regimes—the Bankruptcy Code and the ICA. *See In re Nw. Missouri Holdings, Inc.*, No. BR 15-10728-BLS, 2015 WL 3638000, at *3 (D. Del. June 11, 2015) ("[T]he public has an interest in correct application of the law."). The Rejection Order raises numerous complex legal issues, and an appeal may have been imminent regardless of which party prevailed. Grand Mesa disagrees with the Court's resolution of the Rejection Motion and submits that the public interest favors a stay because it will suspend the disruptive effect of the Rejection Order, including the elimination of FERC's ability to assess the public interest considerations with respect to federally-approved filed rates and the evisceration of Grand Mesa's real property interests. Until the underlying legal issues can be finally resolved on appeal, a stay should be granted to avoid chaos, as Grand Mesa has a strong likelihood of success on appeal.

26. Moreover, while there is some level of public interest associated with the Debtors resolving their Chapter 11 Cases efficiently, there is a greater public interest in upholding the statutory scheme created by Congress and allowing FERC to review and determine whether modification or abrogation of the TSAs (caused by rejection) is consistent with the public interest and the ICA. This is especially so where Grand Mesa is not seeking to prevent the Debtors from

restructuring or maximizing the return for creditors, but rather seeks to ensure that the Debtors do so in accordance with the Bankruptcy Code and other applicable laws, including FERC regulations governing agreements that fall squarely within the Commission's statutory mandate.

27. In addition, the public interest favors a stay because the Rejection Order could potentially have a profound and serious impact not only Grand Mesa's business, but also on dozens of other midstream businesses that are similarly situated to Grand Mesa.

28. Finally, where the likelihood of success on the merits factor and the irreparable harm factor are met, courts almost always find that the public interest factor is also satisfied. *See AT&T v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994) ("As a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff."). Here, Grand Mesa respectfully submits that it has a strong likelihood of success on appeal and will suffer irreparable harm if the stay is denied. Therefore, it is consistent with the public interest to preserve Grand Mesa's ability to effectively exercise its right to a meaningful review through a full and fair appeal process.

**WHEREFORE**, for the foregoing reasons, Grand Mesa respectfully requests that this Court enter an order, (i) granting the Motion, (ii) staying the Rejection Order pending final resolution of Grand Mesa's appeal; and (iii) granting such other and further relief as the Court deems equitable and proper.

[*Signature Page Follows*]

Dated: November 23, 2020
Wilmington, Delaware

Respectfully submitted,

GREENBERG TRAURIG, LLP

*/s/ Dennis A. Meloro*
Dennis A. Meloro (DE Bar No. 4435)
The Nemours Building
1007 North Orange Street
Suite 1200
Wilmington, DE 19801
Telephone: 302-661-7000
Facsimile: 302-661-7360
Email: melorod@gtlaw.com

    and

Iskender H. Catto
Hal S. Shaftel
Ryan A. Wagner
MetLife Building
200 Park Avenue
New York, NY 10166
Telephone: 212-801-9200
Facsimile: 212-801-6400
Email: cattoi@gtlaw.com
    shaftelh@gtlaw.com
    wagnerr@gtlaw.com

    and

Ari Newman
Reginald Sainvil
333 S.E. 2nd Avenue, Suite 4400
Miami, FL 33131
Telephone: 305-579-0500
Facsimile: 305-579-0717
Email:    newmanar@gtlaw.com
    sainvilr@gtlaw.com

*Counsel for Grand Mesa Pipeline, LLC*