**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **CHRISTOPHER S. SONTCHI**<br>**CHIEF JUDGE** | | **824 N. MARKET STREET**<br>**WILMINGTON, DELAWARE**<br>**(302) 252-2888** |

December 3, 2020

<u>**VIA CM/ECF**</u>

| | |
|---|---|
| Marc R. Abrams | Curtis S. Miller |
| Richard W. Riley | Matthew B. Harvey |
| Stephen B. Gerald | Taylor M. Haga |
| Whiteford, Taylor & Preston, LLC | Brett S. Turlington |
| The Renaissance Centre | Morris, Nichols, Arsht & Tunnel LLP |
| 405 North King Street, Suite 500 | 1201 Market Street, 16th Floor |
| Wilmington, Delaware 19801 | Wilmington, DE  19801 |
| | |
| Christopher Marcus | Reid A. Page |
| Allyson Smith Weinhouse | Kutak Rock LLP |
| Ciara Foster | 1801 California Street, Suite 3000 |
| Kirkland & Ellis, LLP | Denver, Colorado 80111 |
| Kirkland & Ellis International LLP | |
| 601 Lexington Avenue | Lisa M. Peters |
| New York, NY  10022 | Kutak Rock LLP |
| | 1650 Farnam Street |
| Jamie Aycock | Omaha, Nebraska |
| Kirkland & Ellis, LLP | |
| Kirkland & Ellis International, LLP | |
| 609 Main Street | |
| Houston, Texas 77002 | |

RE:    **Extraction Oil & Gas, Inc.,** *et al.,* **Case No.: 20-11548 (CSS)**

Dear Counsel,

Before the Court is the Debtors' Motion for Entry of an Order Enforcing the Automatic Stay Against ARB Midstream, LLC and Platte River Midstream, LLC (the "Motion").  As set

forth below, the Court finds that ARB Midstream, LLC and Platte River Midstream, LLC (collectively, "Platte River") violated the automatic stay in commencing the Colorado Litigation and entering into the Settlement Agreement (both as defined below).  The Court will grant the Motion and order that the Settlement Agreement is void *ab initio*.

### I.    Statement of Facts[1]

The factual recitation of the business and litigation history between the parties is somewhat lengthy.  For present purposes, however, it can be distilled into the key facts.[2]  The Debtors are in the "upstream" business of extracting hydrocarbons from land in the State of Colorado.  The Debtors have sought to reject several of what are commonly known as Transportation Services Agreements or TSA's.  Broadly speaking, the counterparties to these TSA's are "midstream" pipelines, which transport the Debtors' hydrocarbons to larger "downstream" pipelines.  Platte River operates midstream pipelines and is a party to a TSA with the Debtors (the "Platte River TSA").  Among other things, the Platte River TSA requires the Debtors to ship a minimum amount of volume of oil from a defined "Dedication Area" using Platte River's pipelines and, if the Debtors fail to do so, make cash payments to Platte River.

The Debtors filed bankruptcy on June 14, 2020.  On August 11, 2020, the Debtors filed the Debtors' Second Omnibus Motion for Entry of an Order (I) Authorizing Rejection of Unexpired Leases of Nonresidential Real Property and Executory Contracts Effective as of the Dates Specified Herein and (II) Granting Related Relief (D.I. 412) (the "Motion to Reject") in which the Debtors sought to reject the Platte River TSA.  While the Motion to Reject and a related adversary proceeding were being litigated, the Debtors ceased using Platte River as its sole transportation vendor in the Platte River dedication area and did not make the required minimum payments, which were breaches of the Platte River TSA by the Debtors.  More specifically, in lieu of Platte River, the Debtors engaged a trucking company and an alternative pipeline company to transport their oil.

In late August 2020, the Debtors informed Platte River that they would be using a trucking company "to begin moving oil and shipping around [the Platte River] transportation system."[3]  After learning of the Debtors' intentions, Platte River raised this issue during the September 1, 2020 status conference before the Court. Specifically, counsel for Platte River informed the Court that the Debtors intended to begin trucking oil from certain well pads in the

---

[1] With minor exceptions, the facts are undisputed.

[2] For a more complete recitation of the facts please see *Extraction Oil & Gas, Inc. v. Platte River Midstream, LLC, and DJ South Gathering, LLC (In re Extraction Oil and Gas, Inc.)*, No. 20-50833 (CSS), 2020 WL 6694354 (Bankr. D. Del. Oct. 14, 2020); and *In re Extraction Oil & Gas, Inc.*, No. 20-11548 (CSS), 2020 WL 6389252 (Bankr. D. Del. Nov. 2, 2020).

[3] Sept. 1, 2020 Hearing Tr. at 30:20–23.

Platte River dedication area.[4] Platte River claimed that the Debtors' use of trucking would result in irreparable harm and previewed that Platte River would file a request for a temporary restraining order in the Court in the next day or two:

> MR. MILLER: On Friday, a representative of the debtors contacted my client and said that starting today they were going to begin moving oil and shipping around our transportation system. We got a follow-up email from the debtor's CEO, Matt Owens, yesterday confirming that . . . . That would be a breach of the Midstream agreements and - - -

> THE COURT: Well, they're free to breach. I mean the rejection order is a breach. The rejection order is just a court authorized breach that has the effect of transferring damages to unsecured versus administrative, but if they breach before the administrative claim and you have damages - - excuse me, if they breach before its rejected then you have damages in their admin claims. Now if you think you're suffering from irreparable harm you need to file a TRO.

> MR. MILLER: Your Honor, that's exactly what I was going to say is that this is the same issue that came up in the Emerald Oil case before Judge Gross and he did enter a TRO. We were planning on doing the same thing because we believe we are being irreparably harmed and, you know, they are effecting [sic] our property interest. I wanted to mention that to you in light of, you know, the scheduling of everything else. We plan to get on that file in the next day or so, but because of the prejudice that was occurring to our client beginning today I wanted to highlight that for Your Honor, let you know that that additional motion and request for relief will be coming and, essentially, just put it on your radar with everything else . . . So, I just wanted to put that out there so no was surprised when that actually happens. That is a very significant issue for our client. I mean this is a do or die situation for us, Your Honor.[5]

Platte River did not, however, file a request for a temporary restraining order with this Court. Rather, on September 11, 2020, Platte River filed a Complaint for Damages and Injunctive Relief (the "First Colorado Complaint") in the District Court of Arapahoe County, Colorado against the trucking company the Debtors were utilizing (the "Colorado Litigation"). In the First Colorado Complaint, Platte River asserted nine claims for relief against the trucking company the Debtors were using to transport their produced oil from the Platte River dedication area. These claims included causes of action for civil theft, intentional interference with contractual relations, unjust enrichment, and civil conspiracy. Platte River's claims relied on the assertion that Platte River had an ownership interest in the property, "the Interests, the subject

---

[4] *Id.* at 30:20–31:5.

[5] *Id.* at 31:16–32:3

crude oil, and the Platte River Dedication Area . . . that has substantial value." A principal of Platte River stated in deposition that the purpose of this litigation was "to enforce [their] rights under the dedication" and "to stop the trucking and require the [D]ebtors to use the PRM transportation system."[6]

On September 14, 2020, Platte River filed an Amended Complaint for Damages and Injunctive Relief (the "Amended Colorado Complaint") before the Colorado state court. Platte River amended the First Colorado Complaint to include as defendants the Debtors' alternative pipeline provider.[7] The Amended Colorado Complaint contained the same nine claims for relief that Platte River had asserted against the trucking company defendants.

On September 16, 2020, Platte River filed a motion seeking entry of an *ex parte* temporary restraining order against the Alternative Service Providers. On September 18, 2020, the Colorado state court entered a temporary restraining order through which the Alternative Service Providers were required to "cease <u>all</u> diversion and transport of crude oil from the Extraction wells as of the date of this Order."[8]

After the entry of the temporary restraining order, Platte River communicated with the alternative pipeline provider concerning a settlement of the claims asserted in the Amended Colorado Complaint. In connection with these settlement discussions, the alternative pipeline provider made a settlement proposal. As part of this proposal, the alternative pipeline provider offered to not "knowingly receive crude oil via existing pipelines connected to the pad locations identified in the [Amended Colorado Complaint], with intent to transport crude oil attributed to [Extraction's] operated working interest." The alternative pipeline provider also proposed that any settlement remain effective until this Court "determines[d]whether the Platte River Midstream, LLC and DJ South Gathering, LLC contracts . . . may be rejected under [s]ection 365 of the Bankruptcy Code."

Platte River provided a counterproposal in which it sought the alternative pipeline provider's agreement that it would not receive crude oil from all of the pad locations identified in the Amended Complaint (even though it was connected to only two of the pad locations at the time). Platte River also requested that the Settlement Agreement "remain in effect until there is a final, non-appealable order . . . in which it is determined that the contracts between Platte River Midstream, LLC and DJ South Gathering, LLC" and Extraction are effectively rejected under the Bankruptcy Code. Thus, through this proposal, Platte River expanded the scope of

---

[6] Sept. 23, 2020 Rogan McGillis Dep. 78:19–23 ("Q. And so the purpose of this litigation was to stop the trucking and require the debtors to use the PRM transportation system. Right? A. It was to enforce our rights under the dedication. Yes.").

[7] The alternative pipeline provider and the alternative trucking providers are collectively referred to herein as the "Alternative Service Providers."

[8] Colorado Order at 6 (emphasis in original).

the settlement to include any well pads that the alternative provider would connect to in the future and lengthened the amount of time that any settlement would be effective. On September 30, 2020, Platte River and the Alternative Service Providers (including the trucking company) entered into a Settlement Agreement on essentially the same terms as proposed by Platte River.[9] Platte River did not disclose the existence of the Settlement Agreement or its terms to the Debtors or the Court until the cross-examination of the Debtors' CEO on October 7, 2020, during the evidentiary hearing on the Motion to Reject.

## II.    The Colorado Litigation and the Settlement Agreement Violate the Automatic Stay

"When a debtor files for bankruptcy, Section 362(a) of the Bankruptcy Code imposes a broad automatic stay."[10]  The automatic stay is a statutory injunction.[11]  This statutory injunction arises automatically and "without the necessity of a formal court order."[12]  More specific to this case, "a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of . . . (3) any act to obtain possession of property of the estate **or to exercise control over property of the estate** . . . ."[13]  Section 362(a)(3) "applies to actions against third parties as well as actions against the debtor."[14]

Here, the Debtors assert that both the Colorado Litigation and the Settlement Agreement exercised control over property of the estate in violation of section 362(a)(3) by interfering with the Debtors' contractual and business relationships with the Alternative Service Providers.  A violation of section 362(a)(3) "requires both (1) a post-petition act; and (2) property of the estate."[15]  There is no dispute that the actions at issue occurred post-petition and involved property of the estate.

Importantly, "Platte River does not dispute that the [Extraction] Oil—the actual crude oil being produced at the wells within the Dedication Area—are [sic] property of [the Debtors'] bankruptcy estate and thereby protected by the automatic stay under section 362(a) of the

---

[9] Settlement Agreement at 1–2 (admitted as D-58 during Oct. 20, 2020 hearing).

[10] *In re Nortel Networks, Inc.*, 669 F.3d 128, 137 (3d Cir. 2011).

[11] *In re Odom*, 570 B.R. 718, 723 (Bankr. E.D. Pa. 2017); and *In re Wingard*, 382 B.R. 892, 899 (Bankr. W.D. Pa. 2008).

[12] *In re Alberts*, 381 B.R. 171, 176 (Bankr. W.D. Pa. 2008).

[13] 11 U.S.C. § 362(a)(3) (emphasis added).

[14] *Acands, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 259 (3d Cir. 2006).  *See also Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 628 (D. Del. 2018) ("Section 362(a)(3), the terms of which are further defined by Section 541, applies to actions against third parties as well as actions against the debtor.").

[15] *In re Welded Constr., L.P.*, 609 B.R. 101, 127 (Bankr. D. Del. 2019).

Bankruptcy Code."[16]  Moreover, "Platte River does not dispute that [the Debtors'] contractual and business relationships with the Alternative Providers are also property of the estate and thereby protected by the automatic stay."[17]   Courts have repeatedly held that "the mere opportunity to receive an economic benefit in the future is property with value under the Bankruptcy Code."[18]  In this case, the Colorado Litigation and Settlement Agreement do not interfere with an "**opportunity** to receive an economic benefit."  Rather, they interfere with an **existing** business relationship (and its concomitant economic benefits) between the Debtors and the Alternative Service Providers.

In response to the Motion, Platte River raises several procedural objections.  Primarily, Platte River argues that the Debtors are attempting to extend the automatic stay to non-debtors. It is certainly true that "[i]t is a tenet of bankruptcy law that the automatic stay provisions of § 362 of the Bankruptcy Code apply only to debtors and do not prevent litigation from proceeding against nondebtors."[19]  However, this is not a case where a debtor is seeking to extend the stay to co-defendants in a litigation merely because there is some legal or factual nexus with the debtor.[20]  Indeed, the Debtors do not seek to protect the Alternative Service Providers at all.  Rather, the Debtors seek to stop Platte River from controlling estate property, i.e., the Debtors' contractual and business relationships with the Alternative Providers.  This is not an extension of the automatic stay.

In addition, Platte River argues that the Debtors' Motion is procedurally improper because it seek an injunction, which requires an adversary proceeding.[21]  However, the Debtors are not seeking an injunction.  Rather, they are seeking to enforce an existing, statutorily-created injunction.  As such, the Debtors may proceed by motion.[22]  Indeed, the Court could have raised

---

[16] ARB Midstream, LLC's and Platte River Midstream, LLC's Objection to Debtors' Motion for Entry of an Order Enforcing the Automatic Stay Against ARB Midstream, LLC and Platte River Midstream, LLC [D.I. 1041] (the "Platte River Objection") at 20.

[17] *Id.* at 22.

[18] *In re Majestic Star Casino, LLC*, 716 F.3d 736, 750–51 (3d Cir. 2013).  *See also In re THG Holdings LLC*, 604 B.R. 154, 160 (Bankr. D. Del. 2019) (same).

19 *In re DESA Holdings Corp.*, 353 B.R. 419, 425 (Bankr. D. Del. 2006); *see also In re UniMarts, LLC*, 399 B.R. 400, 415 (Bankr. D. Del. 2009).

[20] *See In re Conference of African Union First Colored Methodist Protestant Church*, 184 B.R. 207, 214 (Bankr. D. Del. 1995) (quoting *Maritime Elec. Co. Inc. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3rd Cir. 1991)).

[21] Fed. R. Bankr. P. 7001(7).

[22] *In re THG Holdings LLC*, 604 B.R. 154, 162 (Bankr. D. Del. 2019) (Unnecessary "to establish each of the factors necessary to impose a preliminary injunction because the Bankruptcy Code itself establishes the basis for the enforcement of the automatic stay.").

the issue *sua sponte*.[23]  And, indeed, the Court did note its concerns in its October 2, 2020 Bench Ruling.[24]

Thus, the Court finds that the commencement and prosecution of the Colorado Litigation, including the request for and issuance of the *ex parte* temporary restraining order, violated the automatic stay.  In addition, the entry into the Settlement Agreement in the face of the temporary restraining order and under the threat of continuing, impermissible litigation was, in and of itself, a violation of the automatic stay.

"[A]ny act post-petition by a creditor that violates the automatic stay under [section] 362 is void."[25]  Thus, the temporary restraining order and the Settlement Agreement are void *ab initio* and are without any force or effect.  The Debtors are directed to consult with Platte River and to submit an order under certification of counsel.

Sincerely,

Christopher S. Sontchi
Chief United States Bankruptcy Judge

CSS/cas

---

[23] *In re Lessig Const., Inc.*, 67 B.R. 436, 444 (Bankr. E.D. Pa. 1986) (The Court "must raise the automatic stay issue *sua sponte* when [it] observe[s] its applicability.").

[24] Bench Ruling [D.I. 942], p. 17, n. 56 ("The Court was troubled by the testimony of Mr. McGillis, which was also discussed during closing argument, that Platte River had obtained an *ex parte* TRO in Colorado State Court against one of the Debtors' alternative trucking companies based on the terms of the Platte River TSA's.  Notwithstanding that the action may have been a violation of the automatic stay, it is based on a theory that does not hold water post-rejection as Platte River will have a rejection claim, and, thus, an adequate remedy at law.").

[25] *In re Student Fin. Corp.*, 378 B.R. 73, 78 (Bankr. D. Del. 2007).