**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| EXTRACTION OIL & GAS, INC. *et al.*,[1] | ) | Case No. 20-11548 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | Re: Docket Nos. 1505 & 1508 |

**FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND ORDER CONFIRMING THE SIXTH AMENDED JOINT
PLAN OF REORGANIZATION OF EXTRACTION OIL & GAS, INC. AND ITS
DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), having:[2]

a.    commenced, on June 14, 2020 (the "Petition Date"), these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

b.    continued to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c.    filed, on July 30, 2020, the *Joint Plan of Reorganization of Extraction Oil & Gas, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 337];

d.    filed, on July 31, 2020, the *Disclosure Statement for the Joint Plan of Reorganization of Extraction Oil & Gas, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 338];

e.    filed, on August 13, 2020, the *Debtors' Motion for Entry of an Order (I) Approving the Adequacy of Information in the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures, (III) Approving the Forms of Ballots and*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Extraction Oil & Gas, Inc. (3923); 7N, LLC (4912); 8 North, LLC (0904); Axis Exploration, LLC (8170); Extraction Finance Corp. (7117); Mountaintop Minerals, LLC (7256); Northwest Corridor Holdings, LLC (9353); Table Mountain Resources, LLC (5070); XOG Services, LLC (6915); and XTR Midstream, LLC (5624).  The location of the Debtors' principal place of business is 370 17th Street, Suite 5300, Denver, Colorado 80202.

[2]    Unless otherwise noted herein, capitalized terms not defined in these findings of fact, conclusions of law, and order (collectively, this "Confirmation Order") shall have the meanings ascribed to them in the Plan (as defined herein).  The rules of interpretation set forth in Article I.B of the Plan shall apply to this Confirmation Order.

*Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 440] (the "<u>Disclosure Statement Motion</u>");

f.      filed, on October 22, 2020, the *First Amended Joint Plan of Reorganization of Extraction Oil & Gas, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 881];

g.      filed, on October 23, 2020, the *First Amended Disclosure Statement for the First Amended Joint Plan of Reorganization of Extraction Oil & Gas, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 883];

h.      filed, on November 4, 2020, the *Second Amended Joint Plan of Reorganization of Extraction Oil & Gas, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 988];

i.      filed, on November 5, 2020, the *Second Amended Disclosure Statement for the Second Amended Joint Plan of Reorganization of Extraction Oil & Gas, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 989];

j.      filed, on November 6, 2020, (i) the *Third Amended Joint Plan of Reorganization of Extraction Oil & Gas, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1009], (ii) the *Third Amended Disclosure Statement for the Third Amended Joint Plan of Reorganization of Extraction Oil & Gas, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1011], and (iii) the *Revised Third Amended Disclosure Statement for the Third Amended Joint Plan of Reorganization of Extraction Oil & Gas, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket Nos. 1019, 1023] (as may be amended, supplemented, or modified from time to time, and including all exhibits and supplements thereto, the "<u>Disclosure Statement</u>");

k.      obtained, on November 6, 2020, entry of (i) the *Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* [Docket No. 1022] (the "<u>Disclosure Statement Order</u>"), granting the relief requested in the Disclosure Statement Motion as set forth in the Disclosure Statement Order, including by approving the Disclosure Statement as having adequate information, as required under section 1125(a) of the Bankruptcy Code, authorizing the Debtors to solicit votes with regard to the acceptance or rejection of the Plan, and approving, among other things, the Debtors' supplemental disclosures and related notices, forms, and ballots to be submitted to parties in interest in connection with the modifications set forth in the Disclosure Statement (collectively, the "<u>Solicitation Packages</u>") and the Debtors' solicitation procedures (the "<u>Solicitation Procedures</u>") and (ii) the *Order (I)(A) Authorizing the Debtors to*

*Enter into the Backstop Commitment Agreement, (B) Authorizing the Debtors to Perform All Obligations Under the Backstop Commitment Agreement, and (C) Approving the Rights Offering Procedures and Related Forms and (II) Granting Related Relief* [Docket No. 1018] (the "<u>Backstop Order</u>");

l.      caused, on November 13, 2020, and continuing thereafter (the "<u>Solicitation Date</u>"), solicitation materials and notices of the deadline for objecting to confirmation of the Plan to be distributed consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and the Disclosure Statement Order, as evidenced by, among other things, the *Certificate of Service* [Docket No. 1175] (the "<u>Solicitation Affidavit</u>") filed by the Claims, Noticing, and Solicitation Agent;

m.      caused notice of the Confirmation Hearing (the "<u>Confirmation Hearing Notice</u>") to be published on November 13, 2020 in the *Wall Street Journal (National Edition)* and *The Denver Post*, as evidenced by, among other things, the *Notice of Affidavits of Publication* [Docket No. 1086] (the "<u>Publication Affidavits</u>");

n.      filed, on December 4, 2020, the *Notice of Filing of Plan Supplement* [Docket No. 1273] (the "<u>Initial Plan Supplement</u>") and caused the Plan Supplement to be distributed consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, as evidenced by, among other things, the *Certificate of Service* [Docket No. 1374] filed by the Claims, Noticing, and Solicitation Agent;

o.      filed, on December 16, 2020, the *Declaration of Jeffrey R. Miller Regarding the Solicitation and Tabulation of Votes on the the Third Amended Joint Plan of Reorganization of Extraction Oil & Gas, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1364] (the "<u>Initial Voting Report</u>"), which detailed the preliminary results of the Plan voting process; and

p.      filed, on December 17, 2020, the *Notice of Filing of First Amended Plan Supplement* [Docket No. 1380] (as amended, modified, or otherwise supplemented from time to time, the "<u>First Amended Plan Supplement</u>") and caused the First Amended Plan Supplement to be distributed consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, as evidenced by, among other things, the *Certificate of Service* [Docket No. 1447] filed by the Claims, Noticing, and Solicitation Agent;

q.      filed, on December 18, 2020, (i) the *Debtors' Memorandum of Law in Support of Confirmation of the Fourth Amended Joint Plan of Reorganization of Extraction Oil & Gas, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1410] (the "<u>Confirmation Brief</u>"), (ii) the *Declaration of James M. Grady in Support of Confirmation of the Fourth Amended Joint Plan of Reorganization of Extraction Oil & Gas, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1411] (the "<u>Grady Declaration</u>"), (iii) the *Declaration of Kevin J. Voelte in Support of Confirmation of the Fourth Amended Joint Plan of Reorganization of Extraction Oil & Gas, Inc. and its Debtor*

3

*Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1412] (the "Voelte Declaration"), (iv) the *Declaration of Matthew R. Owens in Support of Confirmation of the Fourth Amended Joint Plan of Reorganization of Extraction Oil & Gas, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [1413] (the "Owens Declaration"); (v) the *Fourth Amended Joint Plan of Reorganization of Extraction Oil & Gas, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1420]; and (vi) the proposed *Findings of Fact, Conclusions of Law, And Order Confirming Joint Plan Of Reorganization Of Extraction Oil & Gas, Inc. And Its Debtor Affiliates Pursuant To Chapter 11 Of The Bankruptcy Code* [Docket No. 1422];

r.    filed, on December 19, 2020, the *Amended Declaration of Jeffrey R. Miller Regarding the Solicitation and Tabulation of Votes on the Third Amended Joint Plan of Reorganization of Extraction Oil & Gas, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1430] (the "Amended Voting Report," and, together with the Voting Report, the "Voting Reports"), which detailed the updated results of the Plan voting process;

s.    filed, on December 20, 2020, the *Declaration of Audrey Robertson, Member of Board of Directors of Extraction Oil & Gas, Inc., in Support of an Order Confirming the Fourth Amended Joint Plan of Reorganization of Extraction Oil & Gas, Inc. and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1435] (the "Robertson Declaration," and, together with the Grady Declaration, the Voelte Declaration, and the Owens Declaration, collectively, the "Confirmation Declarations");

t.    filed, on December 21, 2020, (i) the *Fifth Amended Joint Plan of Reorganization of Extraction Oil & Gas, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1451];  (ii) the revised proposed *Findings of Fact, Conclusions of Law, And Order Confirming Joint Plan Of Reorganization Of Extraction Oil & Gas, Inc. And Its Debtor Affiliates Pursuant To Chapter 11 Of The Bankruptcy Code* [Docket No. 1453]; and (iii) the *Notice of Filing of Second Amended Plan Supplement* [Docket No. 1472] (the "Second Amended Plan Supplement" and, together with the Initial Plan Supplement and the First Amended Plan Supplement, collectively, and as may be further amended, modified, or otherwise supplemented from time to time in accordance with the terms of the Plan, the "Plan Supplement") and caused the Second Amended Plan Supplement to be distributed consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order; and

u.    filed, on December 22, 2020, (i) the *Revised Fifth Amended Joint Plan of Reorganization of Extraction Oil & Gas, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1475] and (ii) the revised proposed *Findings of Fact, Conclusions of Law, And Order Confirming Joint Plan Of Reorganization Of Extraction Oil & Gas, Inc. And Its Debtor Affiliates Pursuant To Chapter 11 Of The Bankruptcy Code* [Docket No. 1477]; and

v.      filed, on December 23, 2020, (i) the *Sixth Amended Joint Plan of Reorganization of Extraction Oil & Gas, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1505] (as may be amended, supplemented, or modified from time to time, and including all exhibits and supplements thereto, the "Plan") and (ii) the supplement to the Disclosure Statement [Docket No. 1507] (the "Disclosure Statement Supplement").

This Court having:

a.      set December 21, 2020 at 12:00 p.m. (prevailing Eastern Time) as the date and time for the commencement of the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

b.      reviewed the Plan, the Disclosure Statement, the Disclosure Statement Supplement, the Confirmation Brief, the Voting Reports, the Confirmation Declarations, and all pleadings, exhibits, statements, responses, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases;

c.      held the Confirmation Hearing;

d.      heard the statements, arguments, and objections made by counsel in respect of Confirmation;

e.      considered all oral representations, testimony, documents, filings, and other evidence regarding Confirmation;

f.      overruled any and all objections to the Plan and to Confirmation and all statements and reservations of rights not consensually resolved or withdrawn; and

g.      taken judicial notice of all papers and pleadings filed in these Chapter 11 Cases and all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of these Chapter 11 Cases.

NOW, THEREFORE, the Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the record of these Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing, including, but not limited to, the Confirmation Declarations establish just cause for the relief granted in this

Confirmation Order; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact, conclusions of law, and order:

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY FOUND AND DETERMINED THAT:

**A.    Findings of Fact and Conclusions of Law.**

1.    The findings of fact and the conclusions of law set forth in this Confirmation Order constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding by Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to Confirmation are hereby incorporated into this Confirmation Order to the extent not inconsistent herewith.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.  To the extent any finding of fact or conclusion of law set forth in this Confirmation Order (including any findings of fact or conclusions of law announced by the Court at the Confirmation Hearing and incorporated herein) constitutes an order of this Court, it is adopted as such.

**B.    Jurisdiction and Venue.**

2.    The Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.  Venue in the Court was proper as of the Petition Date and remains proper under 28 U.S.C. §§ 1408 and 1409.  The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court in connection with this Confirmation Order to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final

orders or judgments in connection herewith consistent with Article III of the United States Constitution.  The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

**C.      Eligibility for Relief.**

3.      The Debtors were and continue to be entities eligible for relief under section 109 of the Bankruptcy Code.

**D.      Commencement and Joint Administration of the Chapter 11 Cases.**

4.      On the Petition Date, the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On June 16, 2020, the Court entered an order [Docket No. 79] authorizing the joint administration and procedural consolidation of these Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b).

**E.      Judicial Notice.**

5.      The Court takes judicial notice of (and deems admitted into evidence for purposes of Confirmation) the docket of these Chapter 11 Cases maintained by the Clerk of the Court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during these Chapter 11 Cases.  All unresolved objections, statements, informal objections, and reservations of rights, if any, related to the Plan or Confirmation are overruled on the merits.

**F.      Plan Supplement.**

6.      The Plan Supplement complies with the Bankruptcy Code and the terms of the Plan, and the filing and notice of such documents were good and proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and the facts and circumstances of these Chapter 11 Cases.  No other or further notice is or will be required with

respect to the Plan Supplement.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan (including Article X of the Plan) and this Confirmation Order, the Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

**G.**     **Disclosure Statement Order.**

7.     On November 6, 2020, the Court entered the Disclosure Statement Order, which, among other things:  (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017; (b) approved the Solicitation Procedures; (c) approved the Solicitation Packages; (d) set December 11, 2020, at 4:00 p.m. (prevailing Eastern Time), as the deadline for voting to accept or reject the Plan (the "Voting Deadline"); (e) set December 11, 2020, at 4:00 p.m. (prevailing Eastern Time), as the deadline for objecting to the Plan (the "Plan Objection Deadline"); and (f) set December 21, 2020 at 9:30 a.m. (prevailing Eastern Time) as the date and time for the commencement of the Confirmation Hearing.

**H.**     **Transmittal and Mailing of Materials; Notice.**

8.     As evidenced by the Solicitation Affidavit, the Publication Affidavits, and the Voting Reports, due, adequate, and sufficient notice of entry of the Disclosure Statement Order, the Plan, and the Plan Supplement, and notice of the assumptions of Executory Contracts and Unexpired Leases to be assumed by the Debtors (such Executory Contracts and Unexpired Leases, the "Assumed Contracts") and related cure amounts and the procedures for objecting thereto and resolution of disputes by the Court thereof has been given to, as applicable:  (a) all known holders of Claims and Interests; (b) parties that requested notice in accordance with Bankruptcy Rule 2002; (c) all non-Debtor counterparties to Executory Contracts and Unexpired Leases; and (d) all taxing authorities listed on the Debtors' Schedules or Claims Register; each in substantial compliance

with the Disclosure Statement Order and Bankruptcy Rules 2002(b), 3017, 3019, and 3020(b), and no other or further notice is or shall be required.  Due, adequate, and sufficient notice of the Plan Objection Deadline, the Confirmation Hearing (as may be continued from time to time), and any applicable bar dates and hearings described in the Disclosure Statement Order was given in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, and no other or further notice is or shall be required.

I.      **Adequacy of the Disclosure Statement Supplement.**

9.      The Disclosure Statement Supplement, when combined with the Disclosure Statement, (i) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy laws, including the Securities Act, and (ii) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein.

J.      **Solicitation.**

10.     The Debtors solicited votes for acceptance and rejection of the Plan in good faith and in compliance with the Bankruptcy Code and pursuant to sections 1125, 1126, and all other applicable sections of the Bankruptcy Code, Bankruptcy Rules 3017, 3018, and 3019, the Disclosure Statement Order, and all other applicable rules, laws, and regulations, including, to the extent applicable, the registration requirements under the Securities Act.

K.      **Voting Results.**

11.     Prior to the Confirmation Hearing, the Debtors filed the Voting Reports.  As set forth in the Voting Reports, the procedures used to tabulate the ballots were fair and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations.

12.     As set forth in the Plan, holders of Claims and Interests in Classes 3, 4, 6, 7, and 8 (collectively, the "Voting Classes") for each of the Debtors were eligible to vote on the Plan pursuant to the Solicitation Procedures.  In addition, holders of Claims in Classes 1, 2, and 5 are Unimpaired and conclusively presumed to accept the Plan and, therefore, are not entitled to vote to accept or reject the Plan.  Holders of Claims or Interests in Classes 10 and 11 either are Unimpaired, in which case they are conclusively presumed to accept the Plan, or Impaired, in which case they are deemed to reject the Plan, and therefore, are not entitled to vote to accept or reject the Plan.  Holders of Claims in Classes 9 and 12 (together with holders of Claims in Classes 10 and 11, to the extent Impaired under the Plan, the "Deemed Rejecting Classes") are Impaired under the Plan, are entitled to no recovery under the Plan, and are therefore deemed to have rejected the Plan.

13.     As evidenced by the Amended Voting Report, each of Classes 3, 4, 6, 7, and 8 voted to accept the Plan for each Debtor.

**L.     Bankruptcy Rule 3016.**

14.     The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately filed the Disclosure Statement, the Disclosure Statement Supplement, and the Plan with the Court, thereby satisfying Bankruptcy Rule 3016(b).

**M.     Burden of Proof.**

15.     The Debtors, as proponents of the Plan, have met their burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, the applicable evidentiary standard for Confirmation.  The Debtors have proven the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by clear and convincing evidence.  Further, each witness who testified on behalf of the Debtors at or in connection with the

Confirmation Hearing was credible, reliable, and qualified to testify as to topics addressed in his or her testimony.

**N.    Compliance with the Requirements of Section 1129 of the Bankruptcy Code.**

16.    The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code.

**1.    Section 1129(a)(1)—Compliance with Applicable Provisions of the Bankruptcy Code.**

17.    The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

**a)    Sections 1122 and 1123(a)(1)—Proper Classification.**

18.    The classification of Claims and Interests under the Plan is proper under the Bankruptcy Code.  In accordance with sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Interests into 12 different Classes based on differences in the legal nature or priority of such Claims against and Interests in each Debtor.  Valid business, factual, and legal reasons exist for the separate classification of such Claims and Interests.  The classifications reflect no improper purpose and do not unfairly discriminate between, or among, holders of Claims or Interests.  Each Class of Claims or Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  Accordingly, the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code have been satisfied.

**b)    Section 1123(a)(2)—Specification of Unimpaired Classes.**

19.    Article III of the Plan specifies that Claims in Classes 1, 2, and 5 are Unimpaired under the Plan and Claims in Classes 10 and 11 are either Impaired or Unimpaired under the Plan. Additionally, Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP

Claims are not classified under the Plan.  Accordingly, the Plan satisfies the requirements of section 1123(a)(2) of the Bankruptcy Code.

### c)      Section 1123(a)(3)—Specification of Treatment of Impaired Classes.

20.     Article III of the Plan specifies that Claims in Classes 3, 4, 6, 7, 8, 9, and 12 are Impaired under the Plan and Claims in Classes 10 and 11 are either Impaired or Unimpaired under the Plan.  Accordingly, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

### d)      Section 1123(a)(4)—No Disparate Treatment.

21.     Article III of the Plan provides the same treatment to each Claim or Interest in any particular Class, as the case may be, unless in some cases, the holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest. Accordingly, the Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code.

### e)      Section 1123(a)(5)—Adequate Means for Plan Implementation.

22.     Pursuant to section 1123(a)(5) of the Bankruptcy Code, Article IV and various other provisions of the Plan specifically provide in detail adequate and proper means for the Plan's implementation, including, among other things:  (a) the Restructuring Transactions; (b) the Exit Facility; (c) the Equity Rights Offering (including the Backstopped Equity Rights Offering and the GUC Equity Rights Offering); (d) the good-faith compromise and treatment of all Claims as set forth in the Plan; (e) the preservation of all Royalty and Working Interests in accordance with the terms of the Plan; (f) continued corporate existence; (g) the vesting of Estate assets in the Reorganized Debtors; (h) the cancellation of notes, shares, instruments, certificates, and other documents evidencing Claims or Interests; (i) the general authority for all corporate and limited liability company (as applicable) action necessary to effectuate the Plan; (j) the New Corporate Governance Documents; (k) the appointment of the directors and officers of the Reorganized

Debtors; (l) the issuance of the New Common Shares and the New Warrants; (m) the preservation and vesting of all Causes of Action; (n) the release of Claims and Causes of Action (including Avoidance Actions) except those Claims and Causes of Action (including Avoidance Actions) set forth in the Plan Supplement; (o) the exemption from certain taxes and fees to the extent provided in the Plan; (p) the adoption and implementation of the Management Incentive Plan; (q) the Midstream Settlement and the Share Purchase Agreement; and (q) the general settlement of Claims and Interests.  Moreover, the Debtors will have, immediately upon the Effective Date, sufficient Cash to make all payments required on the Effective Date, pursuant to the terms of the Plan.  Accordingly, the Plan satisfies the requirements of section 1123(a)(5) of the Bankruptcy Code.

### f)        Section 1123(a)(6)—Voting Power of Equity Securities.

23.        The New Corporate Governance Documents prohibit the issuance of non-voting equity securities to the extent prohibited by section 1123(a)(6) of the Bankruptcy Code, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

### g)        Section 1123(a)(7)—Selection of Officers and Directors.

24.        In accordance with Article IV.E of the Plan, the identity and affiliations of the initial members of the New Board and the initial officers of the Reorganized Debtors, to the extent known, are set forth in the Plan Supplement.  The selection of the New Board and officers, as set forth in Article IV.E of the Plan and in the New Corporate Governance Documents, is consistent with the interests of all Holders of Claims and Interests and public policy.  Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

### h)        Section 1123(b)—Discretionary Contents of the Plan.

25.        The Plan's discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code, thereby

KE 71096341

satisfying section 1123(b) of the Bankruptcy Code.  The failure to specifically address a provision of the Bankruptcy Code in this Confirmation Order shall not diminish or impair the effectiveness of this Confirmation Order.

> **(a)** **Section 1123(b)(2)—Executory Contracts and Unexpired Leases.**

26.     Article V of the Plan provides that on the Effective Date, except as otherwise provided in the Plan (including but not limited to Article IV.F.14 of the Plan) or otherwise agreed to by the Debtors and the counterparty to an Executory Contract or Unexpired Lease, all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected in the Chapter 11 Cases, will be deemed assumed by the Reorganized Debtors in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than:  (1) those that are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (2) those that have been previously rejected by a Final Order; (3) those that are the subject of a motion or notice to reject Executory Contracts or Unexpired Leases that is filed by the Debtors and pending on the Confirmation Date; (4) those that are subject to a motion to reject an Executory Contract or Unexpired Lease filed by the Debtors pursuant to which the requested effective date of such rejection is after the Effective Date; or (5) the LACT Unit Agreement, effective April 14, 2017, entered into by Platte River Midstream, LLC ("PRM") and the Debtors, identified in the Cure Notice on line 1698 (the "LACT Agreement").

27.     Except as otherwise provided in the Plan, the Debtors will assume, assume and assign, or reject, as the case may be, Executory Contracts and Unexpired Leases set forth in the applicable Schedules in the Plan Supplement; *provided* that notwithstanding anything to the contrary herein or in the Plan, no Executory Contract or Unexpired Lease will be assumed, assumed and assigned, or rejected without the reasonable consent of the Required Consenting

Senior Noteholders; *provided*, *further*, that the Debtors will consult with the DIP Agent regarding the assumption, assumption and assignment, or rejection (or related settlement) of any Executory Contract or Unexpired Lease.  Entry of this Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions, assumptions and assignments, or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan or the Schedule of Rejected Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, except as otherwise provided in the Plan or this Confirmation Order.  Unless otherwise indicated or agreed by the Debtors and the applicable contract counterparties, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law or as otherwise agreed by the Debtors and the applicable counterparty to the Executory Contract or Unexpired Lease.

28.    To the maximum extent permitted by law, assumption of an Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result upon payment of the Cure Claim in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest, composition, or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease; *provided*, *however*, notwithstanding anything in this paragraph to the contrary

KE 71096341

and subject to the provisions of paragraph 29 below, all liabilities incurred or obligations to pay proceeds, including, without limitation, as to proceeds accruing to a creditor's interest that have been put in suspense and proceeds relating to hydrocarbons previously sold by the Debtors for which the Debtors have not yet paid such proceeds shall not be released or satisfied and shall be paid or satisfied in the ordinary course of business.

29.    Any monetary defaults under an Executory Contract or Unexpired Lease, as reflected on the Cure Notice, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. Notwithstanding the Cure Claim amount stated in any Cure Notice, any postpetition monetary defaults under an Executory Contract or Unexpired Leases shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash in the ordinary course of business. The Debtors, Reorganized Debtors; DCP Operating Company, LP, Incline Energy Partners, Seismic Data of Seitel Data, Ltd., Cigna Health and Life Insurance Company, Pinnacol Assurance, USA Compression Partners, LLC and its affiliates, Richmark Energy Partners, LLC, Kit Energy, LLC and Mineral Resources, Inc., The City and County of Broomfield, Colorado, and Geophysical Pursuit Inc., reserve all rights with respect to the postpetition portion of any Cure Claims and such rights are unaffected by the Plan and this Confirmation Order. Except as expressly provided in this Confirmation Order, any disputed cure amounts will be determined in accordance with the procedures set forth in Article V.C of the Plan and applicable bankruptcy and nonbankruptcy law. As such, the Plan provides that the Debtors will cure, or provide adequate assurance that the Debtors will promptly cure, defaults with respect to assumed Executory Contracts and Unexpired

Leases with regard to any such Debtors in accordance with section 365(b)(1) of the Bankruptcy Code. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

30.    Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults in connection with the respective Executory Contract or Unexpired Lease that is assumed, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease.

> **(b)    Section 1123(b)(3)—Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action.**

31.    **Compromise and Settlement.**  Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have, or any distribution to be made on account of such Allowed Claim or Allowed Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle any Claims and Causes of Action against other Entities.

KE 71096341

32.    **Subordinated Claims; Classification.**    The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Reorganized Debtors, as applicable, will be deemed to have expressly reserved the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto; *provided* that the Debtors or Reorganized Debtors, as applicable, shall not seek, and neither reserve nor claim the right to reclassify any Prepetition Secured Claims or DIP Claims.  The Debtors and the Reorganized Debtors, as applicable, may seek reclassification of any Disputed Claim pursuant to section 507 of the Bankruptcy Code or otherwise.

33.    **Releases by the Debtors.**    The release, set forth in Article VIII.E of the Plan (the "Debtor Release"), is an essential provision of the Plan.  The scope of the Debtor Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases.  The Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, is:  (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good faith settlement and compromise of the claims released by such releases; (c) in the best interests of the Debtors and all holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; (f) integral to the agreements among the various parties in interest and essential to the formulation and

implementation of the Plan, as provided in section 1123 of the Bankruptcy Code; and (g) a bar to any of the Debtors asserting any Claim or Causes of Action released pursuant to such release.

34.     The Debtor Release represents a valid exercise of the Debtors' business judgment and confers substantial benefits to the Debtors' Estates.  The Released Parties provided good and valuable consideration in exchange for the releases—including services, substantial funding (including exit financing and new-money equity financing), and the consensual reduction or waiver of significant claims, as the case may be—and otherwise facilitated the reorganization of the Debtors and the implementation of the restructuring contemplated by the Plan.

35.     **Third-Party Release**.   The release, set forth in Article VIII.F of the Plan (the "Third-Party Release"), is an essential provision of the Plan.  The scope of the Third-Party Release in the Plan is appropriately tailored under the facts and circumstances of these Chapter 11 Cases, and parties received due and adequate notice of the Third-Party Release and the opportunity to opt out of the Third-Party Release, as applicable.  The Third-Party Release is:  (a) consensual; (b) in exchange for the good and valuable consideration provided by the Released Parties; (c) a good faith settlement and compromise of the claims released by such releases; (d) in the best interests of the Debtors and all holders of Claims and Interests; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) integral to the agreements among the various parties in interest and is essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code; and (h) a bar to any of the Releasing Parties asserting any Claim or Causes of Action released pursuant to such release.

36.     The Third-Party Release is consensual with respect to the Releasing Parties. Specifically, the Confirmation Hearing Notice sent to all applicable notice parties on November 13, 2020 and published in *The Wall Street Journal (National Edition)* and *The Denver*

*Post* on November 13, 2020, and the Ballots sent to all Holders of Impaired Claims in the Voting Classes, in each case, unambiguously and prominently stated that the Plan contains the Third-Party Release and the procedures for opting out of the Third-Party Release.  Accordingly, in light of all of the circumstances, the Third-Party Release satisfies the applicable standards contained in *In re Indianapolis Downs, LLC*, 486 B.R. 286, 303 (Bankr. D. Del. 2013), are fair to the Releasing Parties, and are otherwise appropriate under *In re W.R. Grace & Co.*, 475 B.R. 34, 107 (D. Del. 2012).

37.     Further, the Third-Party Release is an integral part of the Plan and was a core negotiation point in connection with the Restructuring Support Agreement.  The Consenting Senior Noteholders, the Majority Lenders, the Backstop Parties and the Participating AHG Members, as applicable, would not have agreed to support the Plan, backstop the Backstopped Equity Rights Offering and facilitate the compromises embodied in the Plan, including the Midstream Settlement, without the Third-Party Release.  Like the Debtor Release, the Third-Party Release and its protections facilitated the participation of many of the Debtors' stakeholders in the negotiations and compromises that led to the Plan and the structure for the Debtors' reorganization. As such, the Third-Party Release appropriately offers protection to parties who constructively participated in and contributed to the Debtors' restructuring.  The failure to implement the Debtor Release and the Third-Party Release as well as the Exculpation and Injunction would impair the Debtors' ability to confirm and implement the Plan.

38.     **Exculpation.**  The scope of the exculpation provisions set forth in Article VIII.G of the Plan (the "Exculpation") is appropriately tailored under the facts and circumstances of these Chapter 11 Cases to protect the Exculpated Parties from inappropriate litigation.  The Exculpation appropriately affords protection to certain parties who constructively participated in and

contributed to the Debtors' restructuring consistent with their duties under the Bankruptcy Code. The Exculpation granted under the Plan is reasonable in scope as it does not relieve any party of liability for an act or omission to the extent such act or omission is determined by final order to constitute actual fraud, willful misconduct, or gross negligence.

39.     **Injunction.**   The injunction provisions set forth in Article VIII.H of the Plan (the "Injunction") are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third-Party Release, and the Exculpation provisions in Article VIII of the Plan.  Such injunction provisions are appropriately tailored to achieve those purposes.

40.     **Preservation of Claims and Causes of Action.**   The provisions regarding the preservation of Claims and Causes of Action in the Plan (including Article IV.E) are appropriate, fair, equitable, and reasonable, and are in the best interests of the Debtors, their respective Estates, and holders of Claims and Interests.

41.     The record of the Confirmation Hearing is sufficient to support the Debtor Release, Third-Party Release, Exculpation, and Injunction.  Accordingly, based upon the representations of the parties and the evidence proffered, adduced, or presented at the Confirmation Hearing, the Debtor Release, Third-Party Release, Exculpation, and Injunction are consistent with the Bankruptcy Code and applicable law.

**2.      Section 1129(a)(2)—The Debtors' Compliance with the Applicable Provisions of the Bankruptcy Code.**

42.     The Debtors, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code,

including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019.

43.    As set forth in greater detail in paragraph 6 of the Initial Voting Report and paragraph 7 of the Amended Voting Report, votes to accept or reject the Plan were solicited by the Debtors and their agents after the Court approved the Disclosure Statement pursuant to section 1125(a) of the Bankruptcy Code and entered the Disclosure Statement Order.

44.    As set forth in greater detail in paragraphs 6 through 17 of the Initial Voting Report and paragraphs 7 through 18 of the Amended Voting Report, the Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly and in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, and all other applicable rules, laws, and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provisions set forth in Article VIII.G of the Plan.

45.    The Debtors and their agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made thereunder, so long as such distributions are made consistent with and pursuant to the Plan.

3.      **Section 1129(a)(3)—Proposal of Plan in Good Faith.**

46.      The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan in good faith and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself, and the process leading to its formulation.  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, the Disclosure Statement Hearing, the Disclosure Statement Supplement, the record of the Confirmation Hearing, the Confirmation Declarations, and all other proceedings held in these Chapter 11 Cases, including, but not limited to, *Extraction Oil & Gas, Inc. v. REP Processing, LLC*, Adv. Pro. No. 20-50813 (CSS) (Bankr. D. Del. Aug. 14, 2020), *Extraction Oil & Gas, Inc. vs. Grand Mesa Pipeline, LLC*, Adv. Pro. No. 20-50816 (CSS) (Bankr. D. Del. Aug. 19, 2020), *Extraction Oil & Gas, Inc. v. Platte River Midstream, LLC and DJ South Gathering, LLC*, Adv. Pro. No. 20-50833 (CSS) (Bankr. D. Del. Aug. 25, 2020), *Extraction Oil & Gas, Inc. v. Elevation Midstream, LLC*, Adv. Pro. No. 20-50839 (CSS) (Bankr. D. Del. Sept. 4, 2020), and  *Extraction Oil & Gas, Inc. v. Rocky Mountain Midstream LLC*, Adv. Pro. No. 20-50840 (CSS) (Bankr. D. Del. Sept. 8, 2020).  The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' good faith, serve the public interest, and assure fair treatment of holders of Claims and Interests.  Consistent with the overriding purpose of chapter 11, the Debtors commenced these Chapter 11 Cases and proposed the Plan, with the legitimate purpose of allowing the Debtors to restructure their balance sheet, carry out their operational reorganization, and maximize stakeholder value.

47.      The Debtors and each of the constituents who negotiated the Plan, Plan Supplement, and other Confirmation Documents (a) acted in good faith in negotiating, formulating, and proposing, where applicable, the Plan and the agreements, compromises,

settlements, transactions, transfers, and documentation contemplated by the Plan and (b) will be acting in good faith in proceeding to (i) consummate the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated by the Plan, and (ii) take any actions authorized and directed or contemplated by this Confirmation Order.  The Exculpated Parties and Released Parties have participated in good faith and in compliance with the provisions of the applicable laws with regard to the solicitation of, and the distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulatory governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

      **4.**      **Section 1129(a)(4)—Court Approval of Certain Payments as Reasonable.**

48.    The procedures set forth in the Plan for the payment of the fees and expenses to be paid by the Debtors, or the Reorganized Debtors, as applicable, in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code. Accordingly, the Plan satisfies the requirements of section 1129(a)(4).

      **5.**      **Section 1129(a)(5)—Disclosure of Identity of Proposed Management, Compensation of Insiders, and Consistency of Management Proposals with the Interests of Creditors and Public Policy.**

49.    The Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code. Article IV.E.9 of the Plan, in conjunction with the Plan Supplement, discloses:  (a) to the extent known, the identity and affiliations of the members proposed to serve as the initial directors of the New Board; and (b) the nature and compensation for any insider who will be employed or retained by the Reorganized Debtors under section 101(31) of the Bankruptcy Code.  The method of appointment of members of the New Board was, is, and will be consistent with the interests of holders of Claims and public policy.  The proposed officers and directors for the Reorganized

Debtors are qualified, and their appointment to, or continuance in, such roles is consistent with the interests of holders of Claims and Interest with public policy.  Accordingly, the Plan satisfies the requirements of section 1129(a)(5).

**6.      Section 1129(a)(6)—Approval of Rate Changes.**

50.      Section 1129(a)(6) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.  The Plan proposes no rate change subject to the jurisdiction of any governmental regulatory commission.

**7.      Section 1129(a)(7)—Best Interests of Holders of Claims and Interests.**

51.      The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The evidence in support of the Plan that was proffered or adduced at the Confirmation Hearing, including the Grady Declaration, the liquidation analysis attached to the Disclosure Statement as <u>Exhibit C</u>, and the facts and circumstances of these Chapter 11 Cases:   (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; and (d) establishes that holders of Allowed Claims or Interests in each Class will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such Holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

**8.      Section 1129(a)(8)—Conclusive Presumption of Acceptance by Unimpaired Classes.**

52.      Classes 1 and 2 and Classes 10 and 11 to the extent Unimpaired under the Plan, are each Classes of Unimpaired Claims or Interests that are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.

KE 71096341

53.     Because the Plan has not been accepted by the Deemed Rejecting Classes, the Debtors seek Confirmation under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code.  Thus, although section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to each such Class as described further below.

**9.     Section 1129(a)(9)—Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code.**

54.     The treatment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Claims under Article II of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**10.     Section 1129(a)(10)—Acceptance by at Least One Impaired Class.**

55.     As set forth in the Amended Voting Report, Class 3 (Revolving Credit Agreement Claims), Class 4 (Senior Notes Claims), Class 6 (General Unsecured Claims), Class 7 (Existing Preferred Interests), and Class 8 (Existing Common Interests) have voted to accept the Plan by the requisite number and amount of Claims or Interests at each Debtor, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).  Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

**11.     Section 1129(a)(11)—Feasibility of the Plan.**

56.     The Plan satisfies section 1129(a)(11) of the Bankruptcy Code.  The evidence in support of the Plan that was proffered or adduced before and at the Confirmation Hearing, including the Latif Declaration, and the financial projections attached to the Disclosure Statement

as Exhibit E: (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible and that Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors or any successor to the Reorganized Debtors under the Plan; and (e) establishes that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan.

**12.    Section 1129(a)(12)—Payment of Bankruptcy Fees.**

57.    The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code. Article II.E of the Plan provides for the payment of all fees payable by the Debtors or the Reorganized Debtors, as applicable, under section 1930(a) of the Judicial Code.

**13.    Section 1129(a)(13)—Retiree Benefits.**

58.    The Plan satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code. Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for retiree benefits (as defined in section 1114 of the Bankruptcy Code) at levels established pursuant to section 1114 of the Bankruptcy Code. On and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law and therefore, the requirements under section 1129(a)(13) of the Bankruptcy Code are satisfied.

**14.    Non-Applicability of Certain Sections (11 U.S.C. §§ 1129(a)(14), (15), and (16).**

59.    The Debtors do not owe any domestic support obligations, are not individuals, and are not nonprofit corporations, and thus sections 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Cases.

KE 71096341

**15.    Section 1129(b)—Confirmation of Plan Over Non-Acceptance of Impaired Class.**

60.    The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan may be confirmed because:  (a) at least one Voting Class at each Debtor voted to accept the Plan; (b) the Plan satisfies all requirements of section 1129(a) of the Bankruptcy Code other than section 1129(a)(8); and (c) the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes because there is no Class of equal priority receiving more favorable treatment than the Deemed Rejecting Classes and no Class that is junior to the Deemed Rejecting Classes is receiving or retaining any property on account of their Claims or Interests. The Plan may therefore be confirmed even though not all Impaired Classes have voted to accept the Plan.

**16.    Section 1129(c)—Only One Plan.**

61.    The Plan is the only plan filed in the Chapter 11 Cases.  Accordingly, the Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.

**17.    Section 1129(d)—Principal Purpose of the Plan.**

62.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

**O.    Satisfaction of Confirmation Requirements.**

63.    Based upon the foregoing, the Plan satisfies the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

P.    **Good Faith.**

64.    The evidence proffered or adduced at the Confirmation Hearing (a) is reasonable, persuasive and credible; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; and (d) establishes that:  (i) the Debtors, the Released Parties, the Exculpated Parties, and any and all affiliates, directors, officers, members, managers, shareholders, partners, employees, attorneys, and advisors of each of the foregoing, as applicable, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to support of the Plan and this Confirmation Order, including the solicitation of acceptances of the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code; (ii) the Debtors have proposed the Plan in good faith, with the legitimate and honest purposes of reorganizing the Debtors' balance sheet and ongoing business and maximizing the value of the Debtors' Estates for the benefit of their stakeholders; (iii) the Plan is the product of extensive collaboration among the Debtors and all key stakeholders; and (iv) the Plan gives effect to many of the Debtors' restructuring initiatives, including a substantial deleveraging of the Debtors' balance sheet. Accordingly, the Debtors and all of their respective members, officers, directors, agents, financial advisers, attorneys, employees, partners, affiliates, and representatives have been, are, and will continue to act in good faith if they proceed to:  (a) consummate the Plan, and the agreements, settlements, transactions, and transfers contemplated thereby (including the Restructuring Transactions); and (b) take the actions authorized and directed or contemplated by this Confirmation Order.  Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

KE 71096341

**Q.**     **Disclosure:  Agreements and Other Documents.**

65.     The Debtors have disclosed all material facts regarding the Plan, the Plan Supplement, and the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Debtors.

**R.**     **Conditions to Confirmation of the Plan.**

66.     Entry of this Confirmation Order shall satisfy the applicable conditions to the Confirmation of the Plan as set forth in Article IX.A of the Plan.

**S.**     **Likelihood of Satisfaction of Conditions Precedents to the Effective Date.**

67.     Each of the conditions precedent to the Effective Date, as set forth in Article IX.B of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article IX.C of the Plan.

**T.**     **Waiver of Conditions; Consents Required.**

68.     The conditions precedent to Confirmation of the Plan and to the Effective Date set forth in Article IX of the Plan may be waived, in whole or in part, in writing (which may be via electronic mails) only by the Debtors, the Required Consenting Senior Noteholders, and the Majority Lenders (only when the relevant condition directly affects the consent and/or consultation rights of the Majority Lenders in accordance with Article I.A.64 of the Plan), without notice, leave, or order of the Court or any formal action other than proceedings to confirm or consummate the Plan provided that waiver of the conditions to the Effective Date of the Plan set forth in Article IX.B.14(e) shall also require the written consent (which may be via electronic mail) of the Creditors' Committee.

**U.**     **Midstream Settlement.**

69.     Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the mutual compromises described in Article IV of the Plan, the Midstream

KE 71096341

Settlement (including the Share Purchase Agreement) is: (a) an integral element of the Plan; (b) fair and equitable; (c) in the best interest of the Debtors' Estates; (d) falls well above the lowest point in the range of reasonableness with respect to all litigation related to the Midstream Settlement; (e) negotiated in good faith by parties to the Midstream Settlement at arm's-length; (f) consistent with sections 105, 1129, and 1129 of the Bankruptcy Code, other provisions of the Bankruptcy Code, Bankruptcy Rule 9019, and other applicable law; and (f) was the result of arm's-length negotiations between the Midstream Parties, the PRM Parties, the Participating AHG Members, the Consenting Senior Noteholders, the Backstop Parties, and the Debtors. The Midstream Settlement (including the Share Purchase Agreement) is appropriate in light of the facts and circumstances, is in the best interests of, and confers material benefits on, the Debtors, the Debtors' Estates, and the Holders of Claims and Interests, including the Midstream Parties and the PRM Parties. The Midstream Settlement (including the Share Purchase Agreement) is incorporated by reference into this Confirmation Order as if set forth in full herein, is approved in all respects, and constitutes an integral part of this Confirmation Order. The Debtors or the Reorganized Debtors are authorized to implement and consummate the Midstream Settlement (including the Share Purchase Agreement) and are authorized to make payments and execute and deliver all necessary documents or agreements required to perform their obligations thereunder.

## V.     **Implementation.**

70.     All documents and agreements necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents (including, without limitation, the New Corporate Governance Documents) have been negotiated in good faith and at arm's-length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law. The Debtors have exercised reasonable business

judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements and the material terms thereof to all parties in interest in these Chapter 11 Cases.  The terms and conditions of such documents and agreements have been negotiated in good faith, at arm's-length, and are fair and reasonable and are reaffirmed and approved.  The Exit Facility was negotiated in good faith and at arm's length and any credit extended and loans made to the Reorganized Debtors and any fees and expenses paid thereunder are deemed to have been extended, issued, and made in good faith. The execution, delivery, or performance by the Debtors or Reorganized Debtors, as applicable, of any of the Exit Facility Documents, the New Corporate Governance Documents, the New Warrants, and any agreements related thereto and compliance by the Debtors or the Reorganized Debtors, as applicable, with the terms thereof is authorized by, and will not conflict with, the terms of the Plan or this Confirmation Order.  The Debtors and the Reorganized Debtors, as applicable, are authorized, without any further notice to or action, order or approval of this Court, to finalize, execute and deliver all agreements, documents, instruments and certificates relating thereto and perform their obligations thereunder in accordance with the Plan, this Confirmation Order, and the Restructuring Support Agreement.

## W.    **Objections**.

71.    All parties have had a full and fair opportunity to litigate all issues raised in the objections to Confirmation of the Plan, or which might have been raised, and the objections have been fully and fairly litigated or resolved, including by agreed-upon reservations of rights as set forth in this Confirmation Order.

KE 71096341

**X.**     **Plan Supplement.**

72.     The filing and notice of the Plan Supplement, and any amendments, modifications or supplements thereto, were proper and in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice is or shall be required.

**Y.**     **Incorporation by Reference.**

73.     The terms of the Plan, including the Plan Supplement, and the exhibits and schedules thereto are incorporated by reference into, and are an integral part of, this Confirmation Order. The terms of the Plan, including the documents contained in the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents, shall be effective and binding as of the Effective Date.

## II. ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

**A.**     **Order.**

74.     All requirements for Confirmation of the Plan have been satisfied.  The Plan, attached hereto as **Exhibit A**, is approved in its entirety and confirmed under section 1129 of the Bankruptcy Code.  The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Confirmation Order.  The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements related thereto (including all exhibits and attachments thereto), and the execution, delivery, and performance thereof, are authorized and approved as finalized, executed, and delivered.  The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Court that the Plan, the Plan Supplement,

and any related document or exhibit are approved and confirmed in their entirety.  The terms of the Plan, the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents shall be effective and binding as of the Effective Date.  In the event of an inconsistency between the Plan and the Disclosure Statement or the Disclosure Statement Supplement, the terms of the Plan shall control in all respects.

**B.**      **Final Approval of Disclosure Statement Supplement.**

75.      The Disclosure Statement Supplement is approved on a final basis as having adequate information as contemplated by section 1125(a)(1) of the Bankruptcy Code.

**C.**      **Objections.**

76.      All objections to Confirmation of the Plan have been withdrawn, waived, or otherwise resolved by the Debtors prior to entry of this Confirmation Order.  To the extent that any objections (including any reservations of rights contained therein) to Confirmation of the Plan (not including any disputed cure amounts with respect to any Assumed Contract, or any disputes with respect to the assumption by the Debtors of any of the Assumed Contracts with DCP Operating Company, LP, Incline Energy Partners, Seismic Data of Seitel Data, Ltd., Cigna Health and Life Insurance Company, Pinnacol Assurance, USA Compression Partners, LLC and its affiliates, Richmark Energy Partners, LLC, Kit Energy, LLC and Mineral Resources, Inc., The City and County of Broomfield, Colorado, and Geophysical Pursuit Inc.,) have not been withdrawn, waived, or settled prior to entry of this Confirmation Order, are not cured by the relief granted herein, or otherwise resolved as stated by the Debtors on the record of the Confirmation Hearing, all such objections (including any reservations of rights contained therein) are overruled on the merits.

**D.**  **Amendment of the Plan.**

77.    Subject to Article X.A of the Plan, including the consent rights specified therein, the Debtors reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan (including Article X of the Plan), the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, the Disclosure Statement Supplement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

**E.**  **Plan Classification Controlling.**

78.    The terms of the Plan shall solely govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.  The classifications set forth on the Ballots tendered to or returned by the Holders of Claims and Interests in connection with voting on the Plan:  (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

**F.**     **Distributions are Fair.**

79.     The distributions to the Holders of Allowed Claims and Interests are fair and for reasonably equivalent value.

**G.**     **Binding Effect.**

80.     Pursuant to section 1141 of the Bankruptcy Code and other applicable provisions of the Bankruptcy Code, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or otherwise, on the Effective Date and effective as of the Effective Date and without limiting or altering Article XII.A of the Plan, the provisions of the Plan (including the exhibits and schedules to, and all documents and agreements executed pursuant to or in connection with, the Plan) and this Confirmation Order shall be binding on (a) the Debtors and the Reorganized Debtors, (b) all Holders of Claims against and Interests in the Debtors, (c) all Persons and Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, (d) each Person and Entity acquiring property under the Plan, (e) any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors and the respective successors and assigns of each of the foregoing, to the maximum extent permitted by applicable law, and notwithstanding whether or not such Person or Entity (x) shall receive or retain any property, or interest in property, under the Plan, (y) has filed a proof of claim or interest in the Chapter 11 Cases, or (z) failed to vote to accept or reject the Plan, affirmatively voted to reject the Plan, or is conclusively presumed to reject the Plan.

**H.**     **General Settlement of Claims.**

81.     The Plan embodies the global settlement among the Debtors, the Creditors' Committee, the Required Consenting Senior Noteholders, and the Backstop Parties (the "Global Settlement"). Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the

Plan, upon the Final Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have, or any distribution to be made on account of such Allowed Claim or Allowed Interest that have been effectuated through an order pursuant to Bankruptcy Rule 9019, or otherwise expressly identified as a settlement as may be set forth in the Plan or this Confirmation Order, including the Midstream 9019 Orders and the Global Settlement.  All distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.

## I.     <u>Vesting of Assets in the Debtors</u>.

82.     Except as otherwise provided in the Plan or Plan Supplement, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, pursuant to section 1141 of the Bankruptcy Code, all property in each Debtor's Estate, all Causes of Action, and any property acquired by each of the Debtors under the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances other than the Liens of the Exit Facility and such other Liens or other encumbrances as may be permitted thereby. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and pursue, compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

83.     Notwithstanding anything in the Plan or this Confirmation Order to the contrary, the Buyback Claims related to the Buyback Investigation Party do not revest with the Reorganized Debtors; rather, such Buyback Claims will be assigned on the Effective Date to the Litigation Agent in the sole discretion of the Debtors and debtors in possession, and, to the extent there is a

viable claim, pursued by the Litigation Agent in the name and right of Extraction Oil & Gas, Inc., as a debtor in possession.  Pursuit of any Buyback Claim against the Buyback Investigation Party is solely for the benefit of Holders of an Allowed Claim in Classes 4 and 6. Any recovery from the Buyback Investigation Party on account of a Buyback Claim ("Buyback Proceeds") shall be segregated from general corporate funds of the Reorganized Debtors and held for the benefit of Holders of an Allowed Claim in Classes 4 and 6.  Notwithstanding the foregoing, to the extent the Reorganized Debtors or Litigation Agent incur expenses and costs, whether pre- or post-Effective Date, in connection with the prosecution of a Buyback Claim, such costs and expenses shall be reimbursed to the Reorganized Debtors or Litigation Agent, as applicable, from Buyback Proceeds first before any other distribution of the proceeds.  For the avoidance of doubt, any proceeds on account of the Exit Facility shall in no way be used to reimburse the Reorganized Debtors or the Litigation Agent for such costs and expenses.  Further, any (a) Cash held by the Debtors or Reorganized Debtors, as applicable, or (b) proceeds of the Equity Rights Offering, that is used to reimburse the Reorganized Debtors or Litigation Agent for such costs and expenses shall not exceed $250,000 in Cash in the aggregate (the "Buyback Claim Funding Cap").  Any Buyback Proceeds shall be first used to satisfy any tax amounts associated with such Buyback Proceeds, and the net remaining proceeds shall be then used to reimburse the Reorganized Debtors or the Litigation Agent, as applicable, for any outstanding amounts under the Buyback Claim Funding Cap, and, only after such amount is reimbursed, distributed by the Litigation Agent, Pro Rata, in proportion to the distributable value (i.e., Claims Equity Allocation) under this Plan allocated to each Holder of an Allowed Claim in Classes 4 and 6 capped at the Allowed amount of the Claim as of the Petition Date.

KE 71096341

84.     The Debtors and debtors in possession reserve the right to establish on or before the Effective Date a "liquidating trust" pursuant to Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, including section 301.7701-4, with no objective to continue or engage in the conduct of a trade or another business, except to the extent necessary to, and consistent with, the liquidating purpose of the trust, which shall be a "grantor trust" for U.S. federal income tax purposes.  The liquidating trust shall be established by the Debtors and debtors in possession by entering into a trust agreement, assigning the Buyback Claims to such trust, and appointing a trustee, all in the sole discretion of the Debtors and debtors in possession.  In such case, the beneficiaries of the trust will be treated as the grantors and owners thereof.  The trust will act in lieu of the Litigation Agent and each Holder of an Allowed Claim in Classes 4 and 6 shall be a beneficiary of the liquidating trust.  Notwithstanding the foregoing, if a determination is made by the Debtors prior to the Effective Date that no viable claim exists in connection with the Buyback Investigation Party, there will be no assignment of the Buyback Claims or establishment of the liquidating trust.  For the avoidance of doubt, any proceeds on account of the Exit Facility shall in no way be used to reimburse the Reorganized Debtors or the Litigation Agent for such costs and expenses.   Further, the costs and expenses of the Reorganized Debtors to form, administer and wind down the liquidating trust shall be subject to, and limited by the monetary cap contained in the Buyback Claim Funding Cap and subject to the reimbursement mechanics of paragraph 81 of this Confirmation Order prior to making any other distributions to each holder of an Allowed Claim in Classes 4 and 6.

**J.     Restructuring Transactions.**

85.     Before, on, and after the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall take all actions as may be necessary or appropriate to effectuate the Restructuring Transactions and the Stand-Alone Restructuring, including:  (a) the execution and delivery of any

KE 71096341

appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, formation, organization, dissolution, or liquidation containing terms that are consistent with the terms of the Plan and the Restructuring Support Agreement, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree, including the documents comprising the Plan Supplement and the New Corporate Governance Documents; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan (including the Global Settlement and the Midstream Settlement) and Restructuring Support Agreement and having other terms for which the applicable parties agree; (c) the execution, delivery and filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable law, including any applicable New Corporate Governance Documents; (d) such other transactions that are required to effectuate the Restructuring Transactions; (e) all transactions necessary to provide for the purchase of substantially all of the assets of, or Interests in, any of the Debtors by one or more Entities to be wholly owned by Reorganized XOG, which purchase may be structured as a taxable transaction for United States federal income tax purposes (with the consent of the Required Consenting Senior Noteholders); and (f) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

## K.   Corporate Existence.

86.     Except as otherwise provided in the Plan, the New Corporate Governance Documents, the New Common Shares Agreement, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, each Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company,

partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval.  On the Effective Date, each New Corporate Governance Document will be a legal, valid, and binding obligation of the Debtors or Reorganized Debtors, as applicable, enforceable against the Debtors and the Reorganized Debtors in accordance with the respective terms thereof.

**L.**    **Exit Facility.**

87.    On the Effective Date, the Reorganized Debtors shall enter into the Exit Facility (the terms of which shall be set forth in the Exit Facility Documents), which shall be in an amount sufficient to pay on the Effective Date certain Holders of Claims as set forth in Article III of the Plan, and to provide incremental liquidity.  This Confirmation Order shall be deemed approval of the Exit Facility and the Exit Facility Documents and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein, and authorization of the Reorganized Debtors to enter into and execute the Exit Facility Documents and such other documents as may be required to effectuate the Exit Facility, in each case without further notice to or order of the Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person or Entity (other than as expressly required by the Exit Facility Documents).  On the Effective Date,

KE 71096341

all of the Liens and security interests to be granted in accordance with the Exit Facility Documents (i) shall be deemed to be granted, (ii) shall be legal, binding, and enforceable Liens on, and security interests in, the applicable collateral in accordance with the respective terms of the Exit Facility Documents, (iii) shall be deemed perfected on the Effective Date, subject only to such Liens and security interests as may be permitted under the respective Exit Facility Documents, and (iv) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable nonbankruptcy law.  The Reorganized Debtors and the Entities granting such Liens and security interests shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, federal, or other law that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically by virtue of the entry of this Confirmation Order (subject solely to the occurrence of the Effective Date) and any such filings, recordings, approvals, and consents shall not be required unless required by the Exit Facility Documents), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

**M.**      **Equity Rights Offering.**

88.      The Plan provides that the Equity Rights Offering Amount will be raised through the Equity Rights Offering, and the Backstopped Equity Rights Offering and the GUC Equity Rights Offering are hereby approved.  The Debtors and Reorganized Debtors, as applicable, shall implement the Equity Rights Offering in accordance with the Equity Rights Offering Procedures and the other Equity Rights Offering Documents. The Backstopped Equity Rights Offering Amount is $200 million and shall be fully backstopped by the Backstop Parties pursuant to the

terms and conditions in the Backstop Commitment Agreement and the Backstop Order. The GUC Equity Rights Offering Amount is $50 million and is not backstopped. The GUC Equity Rights Offering Procedures will not provide for any oversubscription rights.

89.     The Equity Rights Offering Documents (including the GUC Equity Rights Offering Documents) provide sufficient information to enable each Equity Rights Offering Offeree to duly participate in the Equity Rights Offering and are hereby approved in their entirety. The Debtors have distributed or will distribute the Subscription Rights for the Equity Rights Offering to the Equity Rights Offering Offerees as set forth in the Plan and the Equity Rights Offering Documents. Pursuant to the Backstop Commitment Agreement, the Equity Rights Offering Procedures, the Plan, and the other Equity Rights Offering Documents, the Equity Rights Offering shall be open to all Equity Rights Offering Offerees, unless the Plan provides otherwise. The Debtors are authorized to commence the GUC Equity Rights Offering in accordance with and as described in the GUC Equity Rights Offering Procedures and the other GUC Equity Rights Offering Documents and may take such actions, as necessary, to effectuate the GUC Equity Rights Offering.

90.     Holders of General Unsecured Claims shall have until the GUC Equity Rights Offering Subscription Deadline to exercise the GUC Subscription Rights; *provided* that no Holder of a General Unsecured Claim shall be permitted to exercise more than it Pro Rata share of the GUC Subscription Rights; *provided*, *further*, that each Midstream Party that executes a Midstream Settlement Transaction Term Sheet, and each Participating AHG Member is not eligible to participate in the GUC Equity Rights Offering on account of any Allowed Midstream Claim or any of the Midstream Parties' Allowed General Unsecured Claim. The GUC Subscription Rights shall not be transferable. Upon exercise of the Subscription Rights by the Equity Rights Offering Participants pursuant to the terms of the Backstop Commitment Agreement, the Equity Rights

KE 71096341

Offering Procedures, the Plan, and the other Equity Rights Offering Documents, the Reorganized Debtors shall be authorized to issue the Equity Rights Offering Shares in accordance with the Plan, the Backstop Commitment Agreement, the Equity Rights Offering Procedures, and the other Equity Rights Offering Documents.  Subject to the terms, conditions and limitations set forth in the Backstop Commitment Agreement, if, after following the procedures set forth in the Equity Rights Offering Procedures, there remain any Backstopped Equity Rights Offering Shares not subscribed to by Equity Rights Offering Participants, the Reorganized Debtors will sell to the Backstop Parties and the Backstop Parties shall purchase, severally and not jointly, an aggregate number of New Common Shares equal to its Backstop Obligation for an amount equal to the Purchase Price (as defined in the Backstop Commitment Agreement), in accordance with, and subject to, the terms and conditions of the Backstop Commitment Agreement and the Equity Rights Offering Procedures.  On the Effective Date, Reorganized XOG, subject to the terms of this Article IV.E.4 and Article VII.C.1 of the Plan, shall issue (a) the Equity Rights Offering Shares pursuant to the Equity Rights Offering and (b) the New Common Shares to the Backstop Parties on account of the Backstop Obligations and the Backstop Commitment Premium pursuant to the terms of the Backstop Commitment Agreement.  On the Effective Date, the rights and obligations of the Debtors under the Backstop Commitment Agreement shall vest in the Reorganized Debtors. Notwithstanding anything to the contrary in the Plan or the Confirmation Order, (a) the Debtors' obligations under the Backstop Commitment Agreement shall remain unaffected and shall survive following the Effective Date in accordance with the terms thereof, (b) any such obligations shall not be discharged under the Plan, and (c) none of the Reorganized Debtors shall terminate any such obligations.

91.     The terms and conditions of the Equity Rights Offering are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value and fair consideration and are in the best interests of the Debtors' Estates and their creditors.

**N.     Midstream Settlement.**

92.     The Midstream Settlement (including the Share Purchase Agreement, the Midstream Settlement Transaction Term Sheet, the other transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid in connection therewith) is hereby approved.  To the extent not already approved by the Bankruptcy Court, the Debtors or the Reorganized Debtors, as applicable, are authorized to negotiate, execute, and deliver those documents necessary or appropriate to effectuate the Midstream Settlement, without further notice or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Reorganized Debtors and the Participating AHG Members may deem to be necessary to effectuate the Midstream Settlement.

93.     On the Effective Date, subject to the terms and conditions in the Share Purchase Agreement, the Debtors shall cause the Settlement Shares to be issued to the Participating AHG Members in accordance with the terms of the Share Purchase Agreement and shall use the proceeds of the Settlement Shares to fund the applicable Midstream Settlement Payment to each Midstream Party in full and final satisfaction, compromise, settlement, release, and discharge of each Allowed Midstream Claim.  For the avoidance of doubt, any proceeds on account of the Equity Rights Offering or the Exit Facility shall in no way be used to fund the Midstream Settlement Payments. The Midstream Parties that execute a Midstream Settlement Transaction Term Sheet shall waive the right to any other distributions under the Plan, including pursuant to Article III.B.6.b of the

Plan, on account of the Allowed Midstream Claims. The Midstream Parties that execute a Midstream Settlement Transaction Term Sheet and the Participating AHG Members are not eligible to participate in the GUC Equity Rights Offering (or exercise the GUC Cash Out Election) on account of any Allowed Midstream Claim or any of the Midstream Parties' Allowed General Unsecured Claim. As part of the Midstream Settlement or as otherwise agreed to between the Debtors and Reorganized Debtors, as applicable, the Participating AHG Members and the relevant Midstream Party or PRM Party, each Midstream Party that executes the Midstream Settlement Transaction Term Sheet shall be deemed to withdraw all pending litigation, appeals, and other proceedings against the Debtors or in connection with such Midstream Party's General Unsecured Claims (including any Allowed Midstream Claims or otherwise). Each Midstream Party and shall use commercially reasonable efforts to coordinate with the Debtors or Reorganized Debtors, as applicable, to cause any pending appeals or other litigation subject to the Midstream Settlement to be withdrawn or otherwise dismissed with prejudice; ; *provided*, *however*, for the avoidance of doubt, the PRM Party's obligation to withdraw any pending appeals or other litigation shall be subject to the prior entry of an order approving the settlement between the PRM Parties and the Debtors pursuant to Bankruptcy Rule 9019.

94.    The terms and conditions of the Midstream Settlement and Share Purchase Agreement are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, are supported by reasonably equivalent value.

O.    **Cancellation of Notes, Instruments, Certificates, and Other Documents.**

95.    On the Effective Date, except as otherwise specifically provided for in the Plan or the Plan Supplement: (a) the obligations of any Debtor under all certificates, shares, notes, bonds, indentures, purchase rights, or other instruments or documents, directly or indirectly evidencing or creating any indebtedness or obligations of or ownership interest, equity, or portfolio interest in

the Debtors or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest shall be canceled and deemed surrendered to the Debtors without any need for a Holder to take further action with respect thereto, and the Debtors shall not have any continuing obligations thereunder and Holders of or parties to such cancelled instruments, certificates, and other documentation will have no rights arising from or relating to such instruments, certificates, and other documentation, or the cancellation thereof, except the rights provided for pursuant to the Plan or the Confirmation Order; and (b) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors shall be fully released, settled, compromised and discharged. Notwithstanding such cancellation, subject to any applicable provisions of Article IV of the Plan, upon occurrence of the Effective Date, the Senior Notes Indentures shall continue in effect solely to the extent necessary to: (a) permit Senior Noteholders to receive their distributions pursuant to the Plan; (b) permit the Indenture Trustee to make or assist in making, as applicable, distributions pursuant to the Plan as applicable and deduct therefrom such reasonable compensation, fees and expenses (i) due to the Indenture Trustee, or (ii) incurred by the Indenture Trustee in making such distributions; and (c) permit the Indenture Trustee to seek compensation and/or reimbursement of fees and expenses in accordance with the terms of the Plan. Except as provided in the Plan (including Article IV thereof), on the Effective Date, the Indenture Trustee and its respective agents, successors and assigns shall be automatically and fully discharged of all of their duties and obligations associated with the Senior Notes Indentures. The commitments and

KE 71096341

obligations of the Senior Noteholders to extend any further or future credit or financial accommodations to any of the Debtors, any of their respective subsidiaries, or any of their respective successors or assigns under the Senior Notes Indentures shall fully terminate and be of no further force or effect on the Effective Date.  Further, notwithstanding such cancellation, subject to any applicable provisions of Article IV of the Plan, upon occurrence of the Effective Date, the Prepetition Secured Claims and the DIP Claims shall continue in effect solely to the extent necessary to:  (a) permit the Prepetition Agent and the DIP Agent to receive their respective distributions pursuant to the Plan; (b) permit the Prepetition Agent and the DIP Agent to make or assist in making, as applicable, their respective distributions pursuant to the Plan as applicable and deduct therefrom such reasonable compensation, fees and expenses (i) due to the Prepetition Agent and the DIP Agent respectively, or (ii) incurred by the Prepetition Agent and the DIP Agent in making such respective distributions; and (c) permit the Prepetition Agent and the DIP Agent to seek their respective compensation and/or reimbursement of fees and expenses in accordance with the terms of this Plan.  Except as provided in the Plan (including Article IV thereof), on the Effective Date, the Prepetition Agent and the DIP Agent and their respective agents, successors and assigns shall be automatically and fully discharged of all of their duties and obligations associated with the Prepetition Secured Claims and the DIP Claims.  The commitments and obligations of the Prepetition Agent and the DIP Agent to extend any further or future credit or financial accommodations to any of the Debtors, any of their respective subsidiaries, or any of their respective successors or assigns under the Prepetition Secured Claim or the DIP Claims, as applicable, shall fully terminate and be of no further force or effect on the Effective Date.

P.    **Issuance of New Common Shares and New Warrants.**

96.    On the Effective Date, Reorganized XOG shall issue the New Common Shares and the New Warrants to fund distributions to certain Holders of Allowed Claims and Allowed

Interests in accordance with Article III of the Plan.  The issuance of New Common Shares under the Plan, including any Equity Rights Offering Shares, any New Common Shares issued pursuant to the Backstop Commitment Premium, any New Common Shares to be issued upon exercise of the New Warrants, any New Common Shares to be issued as Settlement Shares, as well as any MIP Equity, shall be duly authorized without the need for any further corporate action and without any further action by the Debtors or Reorganized Debtors or the Holders of Claims or Interests, as applicable.  All New Common Shares and New Warrants issued under the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.  The New Warrants shall not include Black Scholes or similar protections in the event of a sale, merger, or similar transaction prior to exercise.

97.    On the Effective Date, Reorganized XOG and all Holders of New Common Shares then outstanding shall be deemed to be parties to the New Common Shares Documents, substantially in the form contained in the Plan Supplement, without the need for execution by any such Holder.  On the Effective Date, the New Common Shares Documents shall be binding on the Reorganized Debtors and all parties receiving, and all Holders of, the New Common Shares.  On the Effective Date, Reorganized XOG, all Consenting Senior Noteholders and any other Holders of 10% or more of the New Common Shares shall be deemed to be parties to the Registration Rights Agreement, substantially in the form contained in the Plan Supplement, without the need for execution by any such Person.  On the Effective Date, the Registration Rights Agreement shall be binding on the Reorganized Debtors and all Holders parties thereto.

**Q.    No Action Required; Corporate Action.**

98.    Upon the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan shall be deemed authorized and approved by the Bankruptcy Court in all respects without any further corporate or equity holder action, including, as applicable:

KE 71096341

(a) the implementation of the Restructuring Transactions; (b) the adoption, execution, and filing of the New Corporate Governance Documents; (c) the selection of the directors, managers and officers for the Reorganized Debtors; (d) the execution and delivery of the Exit Facility and the incurrence of credit thereunder; (e) the adoption of the Management Incentive Plan by the New Board; (f) the issuance and distribution of the New Common Shares and the New Warrants and the execution, delivery, and filing of any documents pertaining thereto, as applicable; (g) the formation of any Entities pursuant to the Restructuring Transactions; and (h) all other actions contemplated under or necessary to implement the Plan (whether to occur before, on, or after the Effective Date).  Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of the Reorganized Debtors, and any corporate action required by the Debtors, or the other Reorganized Debtors in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtors, or the Reorganized Debtors.  On or before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors, including the Exit Facility, the New Common Shares, the New Warrants and any and all other agreements, documents, securities, and instruments relating to the foregoing, to the extent not previously authorized by the Bankruptcy Court.  The authorizations and approvals contemplated by Article IV.E of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

**R.    Discharge of the Debtors.**

KE 71096341

99.     Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action against any Debtor of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Causes of Action accrued before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt or right is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtors or their Affiliates with respect to any Claim that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. Unless expressly provided in the Plan, the Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

**S.      The Releases, Injunction, Exculpation, and Related Provisions Under the Plan.**

100.    The release, exculpation, discharge, injunction and related provisions set forth in Article VIII of the Plan shall be, and hereby are, approved and authorized in their entirety, and binding on all Persons and Entities described therein without further notice to or order of the Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Person or Entity, including, but not limited to:

a.    **Debtor Release.**  The Debtor Release set forth in Article VIII.E of the Plan is hereby approved.

b.    **Releases by Holders of Claims or Interests.**  The releases by Holders of Claims or Interests set forth in Article VIII.F of the Plan is hereby approved.

c.    **Exculpation.**  The Exculpation set forth in Article VIII.G of the Plan is hereby approved.

d.    **Injunction.**  The Injunction set forth in Article VIII.H of the Plan is hereby approved.

101.    For all purposes under the Plan and this Confirmation Order, the claims released by the Releasing Parties shall include any and all Causes of Action, including any derivative claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, contract, tort, or otherwise, by statute, violations of federal or state securities law or otherwise that the Debtors, the Reorganized Debtors, or their Estates or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or any other Entity, based on or relating to, or in any manner arising from or in connection with, in whole or in part, the Midstream Settlement (including the Share Purchase Agreement), the negotiation leading up to the execution of the Midstream Settlement (including the Share Purchase Agreement), the negotiation and preparation of any definitive documentation to implement the Midstream Settlement (including the Share Purchase Agreement) and the transactions contemplated thereunder.  Notwithstanding anything to the contrary in any

Ballot, all Midstream Parties and PRM Parties shall be deemed to be "Releasing Parties" and "Released Parties" under the Plan notwithstanding any contrary election in such Midstream Parties' or PRM Parties' ballots cast in connection with voting on the Plan; *provided*, that the foregoing clause shall apply to the PRM Parties only upon entry of an order approving the settlement between the PRM Parties and the Debtors pursuant to Bankruptcy Rule 9019.

**T.** **Provisions Regarding Certain Executory Contracts and Unexpired Leases.**

102.    The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding the resolution of any and all disputes concerning the assumption or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety.

103.    Except as otherwise provided in the Plan (including but not limited to Article IV.F.14 of the Plan) or otherwise agreed to by the Debtors and the counterparty to an Executory Contract or Unexpired Lease, all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected in the Chapter 11 Cases, shall be deemed assumed by the Reorganized Debtors, effective as of the Effective Date, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code and regardless of whether such Executory Contract or Unexpired Lease is set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases, other than:  (a) those that are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (b) those that have been previously rejected by a Final Order; (c) those that are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; (d) those that are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date; or (e) the LACT Agreement (as defined above). Except as otherwise provided in the Plan, the Debtors shall assume, assume and assign, or reject,

as the case may be, Executory Contracts and Unexpired Leases set forth in the applicable Schedules in the Plan Supplement; *provided* that notwithstanding anything to the contrary herein, no Executory Contract or Unexpired Lease shall be assumed, assumed and assigned, or rejected without the reasonable consent of the Required Consenting Senior Noteholders; *provided*, *further*, that the Debtors shall consult with the DIP Agent or Exit Facility Agent, as applicable, regarding the assumption, assumption and assignment, or rejection (or related settlement) of any Executory Contract or Unexpired Lease.  Entry of this Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions, assumptions and assignments, or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan or the Schedule of Rejected Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, except as otherwise provided in the Plan or this Confirmation Order.  Unless otherwise indicated or agreed by the Debtors and the applicable contract counterparties, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law or as otherwise agreed by the Debtors and the applicable counterparty to the Executory Contract or Unexpired Lease.

104.    Claims arising from the rejection of the Debtors' Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims and any settlement of such claims is subject to the reasonable consent of the Required Consenting Senior Noteholders, which

consent shall not be unreasonably withheld.  The Debtors shall consult with the DIP Agent or Exit Facility Agent, as applicable, prior to entering into any settlements with respect to the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease.

**U.     Release of Liens.**

105.    Except as otherwise specifically provided in the Plan, this Confirmation Order, the Exit Facility Documents, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors or the Reorganized Debtors, as applicable. The DIP Agent and the Revolving Credit Agreement Agent shall execute and deliver all documents reasonably requested by the Reorganized Debtors to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests on such assets of the Debtors that are subject to the Stand-Alone Restructuring.

106.    To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then such Holder (or the agent for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and take any and all steps requested by the Debtors, the Reorganized Debtors, or Exit Facility Agent that are necessary or desirable to record

or effectuate the cancellation and/or extinguishment of such Liens and/or security interests, including the execution and delivery of such releases and the making of any applicable filings or recordings, and the Reorganized Debtors shall be entitled to make any such filings or recordings on such Holder's behalf.  The presentation or filing of this Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens. Notwithstanding the foregoing paragraph, Article VIII.D of the Plan shall not apply to any Secured Claims that are Reinstated pursuant to the terms of the Plan.

V.      **Provisions Governing Distributions.**

107.    The distribution provisions of Article VI of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Debtors or Reorganized Debtors, as applicable, shall make all distributions required under the Plan.  The timing of distributions required under the Plan or this Confirmation Order shall be made in accordance with and as set forth in the Plan or this Confirmation Order, as applicable

108.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Distribution Record Date as set forth in Article I.A.78 of the Plan shall not apply to any Senior Notes or other Securities deposited with DTC, the Holders of which shall receive a distribution in accordance with the customary procedures of DTC.

W.      **Post-Confirmation Notices**

1.      **Notice of Entry of the Confirmation Order.**

109.    In accordance with Bankruptcy Rules 2002 and 3020(c), the Debtors or the Reorganized Debtors, as the case may be, shall cause to be served a notice of Confirmation and occurrence of the Effective Date, substantially in the form attached hereto as **Exhibit B** (the "Confirmation Notice"), upon (a) all parties listed in the creditor matrix maintained by the

Claims, Noticing, and Solicitation Agent and (b) such additional persons and entities as deemed appropriate by the Debtors, no later than ten (10) business days after the Effective Date; *provided* that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed a Confirmation Hearing Notice but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors or Reorganized Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address. Mailing of the Confirmation Notice in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c) and no further notice is necessary.

110.    The Confirmation Notice will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers, and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

**2.    Other Administrative Claims.**

111.    The provisions governing the treatment of Allowed Administrative Claims set forth in Article II.A of the Plan are approved in their entirety.

**3.    Professional Compensation.**

112.    The provisions governing Professional compensation set forth in Article II.B and Article XII.E of the Plan are approved in their entirety pursuant to section 1129(a)(4) of the Bankruptcy Code.

113.    For the avoidance of doubt, the Revolving Credit Agreement Lender Fees and Expenses incurred and invoiced up to and including the Effective Date shall be paid in full in Cash on the Effective Date, without any requirement to file a fee application with the Bankruptcy Court

KE 71096341

and without any requirement for Bankruptcy Court review or approval, and without notice and a hearing pursuant to section 1129(a)(4) of the Bankruptcy Code or otherwise.

## X.      Exemption from Securities Laws.

114.    Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any Securities pursuant to the Plan, including the New Common Shares (other than the New Common Shares issued on account of the Backstop Obligations or the Settlement Shares), the Equity Rights Offering Shares, and the New Warrants (together, the "1145 Securities"), shall be exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. federal, state or local securities laws requiring registration prior to the offering, issuance, distribution, or sale of Securities.  The issuance of the New Common Shares on account of the Backstop Obligations and the Settlement Shares will be made in reliance on the exemption from registration provided by section 4(a)(2) of the Securities Act, Regulation D promulgated thereunder or another available exemption from registration under the Securities Act.  The 1145 Securities (i) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (ii) are freely tradable and transferable by any initial recipient thereof that (a) is not an "affiliate" of Reorganized XOG as defined in Rule 144(a)(1) under the Securities Act, (b) has not been such an "affiliate" within 90 days of such transfer, and (c) is not an entity that is an "underwriter" (as defined in section 1145(b) of the Bankruptcy Code) with respect to such securities.  To the extent that Persons who receive the 1145 Securities as contemplated under the Plan are deemed to be underwriters, resales by such Persons would not be exempted from registration under the Securities Act or other applicable law by Section 1145 of the Bankruptcy Code.  Persons deemed to be underwriters may, however, be permitted to resell the 1145 Securities received pursuant to the Plan without registration pursuant to the provisions of Rule 144 under the Securities Act or another applicable exemption under the Securities Act.  Notwithstanding the

foregoing, recipients of the New Common Shares and/or New Warrants are advised to consult with their own legal advisors as to the availability of any exemptions from registration under the Securities Act and any applicable state blue sky law.

115.    Should the Reorganized Debtors elect on or after the Effective Date to reflect any ownership of the New Common Shares through the facilities of DTC, the Reorganized Debtors need not provide any further evidence other than the Plan or this Confirmation Order with respect to the treatment of the New Common Shares or under applicable securities laws.  DTC shall be required to accept and conclusively rely upon the Plan and this Confirmation Order in lieu of a legal opinion regarding whether the New Common Shares issued under the Plan are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

116.    Notwithstanding anything to the contrary in the Plan, no entity (including DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including whether the New Common Shares issued under the Plan are exempt from registration and/or eligible for DTC book entry delivery, settlement, and depository services.

**Y.    Exemptions from Taxation.**

117.    To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto, including the issuance, transfer or exchange of any security under the Plan or the granting of security under the Exit Facility shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other

documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

**Z.**   **Directors' and Officers' Liability Insurance.**

118.   To the extent that the D&O Liability Insurance Policies are considered to be Executory Contracts, notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, the Debtors shall be deemed to have assumed all D&O Liability Insurance Policies with respect to the Debtors' directors, managers, officers, and employees serving on or before the Petition Date pursuant to section 365(a) of the Bankruptcy Code, and coverage for defense and indemnity under any of the D&O Liability Insurance Policies shall remain available to all individuals within the definition of "Insured" in any of the D&O Liability Insurance Policies. Entry of this Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the unexpired D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be Filed.

**AA.**   **Preservation of Causes of Action.**

119.   Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled under the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors or Reorganized Debtors, as applicable shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action (including all Avoidance Actions), whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and such rights to

commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, the Disclosure Statement, or the Disclosure Statement Supplement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against it.  The Debtors or the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled under the Plan or pursuant to a Bankruptcy Court order, the Debtors or Reorganized Debtors, as applicable, expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.  In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors.  The applicable Reorganized Debtor, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to, or action, order, or approval of, the Bankruptcy Court.

**BB.**    **Reversal, Stay, Modification, Vacatur of Confirmation Order.**

120.    Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by

subsequent order of this Bankruptcy Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or Lien incurred or undertaken by the Debtors or the Reorganized Debtors, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur.  Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

**CC.**    **<u>Filing and Recording</u>.**

121.    This Confirmation Order (a) is and shall be effective as a determination that, except as otherwise provided in the Plan or this Confirmation Order, or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan (including, without limitation, the Exit Facility Documents, Equity Rights Offering Documents, New Common Shares Documents, New Corporate Governance Documents and any other Definitive Document), on the Effective Date, all Claims, existing prior to such date have been unconditionally released, discharged, and terminated and (b) is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and any other persons and entities that may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including Uniform Commercial Code financing statements) to effectuate, implement, and consummate the transactions

contemplated by the Plan and this Confirmation Order (including, without limitation, the Exit Facility Documents, Equity Rights Offering Documents, New Common Shares Documents, New Corporate Governance Documents and any other Definitive Document) without payment of any stamp or similar tax or governmental assessment imposed by state or local law.

**DD.**     **Governmental Approvals Not Required.**

122.     Except as set forth in the Plan, this Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to (a) the implementation or consummation of the Plan and (b) any related documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, the Disclosure Statement Supplement, the Exit Facility Documents, or any documents, instruments or agreements related to any of the foregoing, and any amendments or modifications related to any of the foregoing.

**EE.**     **No Postpetition Interest on Claims.**

123.     Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim; *provided* that interest shall accrue on the DIP Claims and the Prepetition Secured Claim in accordance with the terms of the DIP Credit Agreement and the DIP Orders until paid in full in Cash or otherwise satisfied with the consent of the Holders of DIP Claims or the Prepetition Secured Claims, as applicable.

**FF.**     **No Distributions Pending Allowance.**

124.     If an objection to a Claim or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until

KE 71096341

such Disputed Claim becomes an Allowed Claim, unless otherwise determined by the Reorganized Debtors.

**GG.    Procedures for Resolving Claims and Disputes.**

125.    The procedures for resolving contingent, unliquidated, and disputed Claims contained in Article VII of the Plan shall be, and hereby are, approved in their entirety.

**HH.    The Elevation Parties.**

126.    Notwithstanding anything to the contrary contained in the Plan or in this Confirmation Order, neither the Plan nor this Confirmation Order shall affect, impact, or change the terms of the documents (the "Elevation Settlement Documents") memorializing the Court-approved settlement [Docket No. 1274] between (a) Elevation Midstream, LLC and GSO EM Holdings LP and (b) the Debtors; moreover, in the event of a conflict, inconsistency, or other discrepancy between the terms of (i) this Confirmation Order and/or the Plan and (ii) the Settlement Documents, the terms of the Settlement Documents shall control.

**II.    DCP Operating Company, LP.**

127.    Notwithstanding anything to the contrary herein, nothing in the Confirmation Order, the Plan, or the Plan Supplement shall in any way modify, change or impair the Debtors or DCP Operating Company, LP's ("DCP") agreements, stipulations and representations as set forth in that certain Stipulation of Matters Between Debtors and DCP Operating Company, LP [Docket No. 908] (the "DCP Stipulation"). The Debtors confirm and represent that (a) the contract listed as *Gas Purchase Contract - Amended and Restated, Dated: 02/01/2019* (the "Gas Purchase Agreement") on the Schedule of Assumed Executory Contracts and Unexpired Leases of the Plan Supplement (the "Schedule") shall be assumed (together with all exhibits and, solely with respect to both the Plant 10 Agreement (as defined in the DCP Stipulation) and the Plant 11 Agreement (as defined in the DCP Stipulation, and together with the Plant 10 Agreement,

the "Facilities Agreements", subject to the conditions set forth in this paragraph) and (b) for the avoidance of doubt, the Debtors will not, and shall not seek to, reject the Gas Purchase Agreement under section 365 of the Bankruptcy Code or otherwise in these Chapter 11 Cases and will not, and shall not, remove the Gas Purchase Agreement from the Schedule.  The Debtors and DCP have agreed (i) to work in good faith to determine the appropriate way to address the cure amount and/or breaches and/or defaults under that certain Gas Purchase Agreement and nothing in the Confirmation Order, Plan, or the Plan Supplement shall limit, impair or modify DCP's arguments with respect the Debtors' cure obligations or obligations to address breaches and/or cure defaults under the Gas Purchase Agreement; and (ii) notwithstanding anything to the contrary herein, nothing in the Confirmation Order, the Plan or the Plan Supplement shall in any way modify, change or impair DCP's or the Debtors' rights with respect to the foregoing or any arguments surrounding any potential rejection of the Facilities Agreements; *provided, however*, that because the Debtors have asserted a right to reject the Facilities Agreements, and without DCP waiving any right to dispute the Debtors' ability to reject  the Facilities Agreements, solely for the purpose of the estimation of GUC Claims, the Debtors and DCP have agreed that within twenty-one (21) days after entry of this Confirmation Order, the Debtors and DCP shall agree on the amount of an estimated rejection damage claim that the Debtors shall reserve as part of the Disputed Claims Reserve in accordance with Article VII.D of the Plan.

**JJ.    Incline Energy Partners.**

128.    Notwithstanding anything in the Plan (including Article VII.H therein) and this Confirmation Order to the contrary, Proof of Claim Nos. 1489, 1522, and 1925, which relate to a scheduled joint interest billings/revenue review and audit ("Incline Audit") of the Debtors by Incline Energy Partners ("Incline"), may be amended within forty-five (45) days from the conclusion of the Incline Audit solely to reflect any results or conclusions thereof.  Similarly, to

the extent Incline is required to file an Administrative Claim to preserve any postpetition Claim identified as a result of the Incline Audit, Incline shall be permitted to amend any timely filed Administrative Claim within forty-five (45) days from the conclusion of the Incline Audit solely to reflect any results or conclusions thereof.

129.    This Confirmation Order shall not be, and shall not be construed as, a determination of the cure amount or compensation, if any, required to satisfy the provisions of sections 365(b)(1)(A) and (B) of the Bankruptcy Code for the assumption of the Incline Operating Agreements ("Incline Cure"). For purposes of determining the Incline Cure, the effective date of assumption shall be the Effective Date. The Reorganized Debtors and Incline shall endeavor in good faith to reach agreement as to the Incline Cure within forty-five (45) days following the conclusion of the Incline Audit and, if such an agreement is reached, and the Incline Cure is $0.00, no further action is necessary. Alternatively, if the Incline Cure is greater than $0.00, the Reorganized Debtors shall file a stipulation with the Court setting forth the agreed Incline Cure that shall be in form and substance reasonably acceptable to the Exit RBL Facility Agent and the Exit RBL Facility Lenders.  If the Reorganized Debtors and Incline fail to reach agreement as to the Incline Cure within such forty-five (45) day period, either the Reorganized Debtors or Incline may, on notice to the Reorganized Debtors or Incline, as applicable, request a hearing before the Court for a determination of the Incline Cure.

130.    Notwithstanding any other provision in this Confirmation Order or the Plan to the contrary, nothing in this Confirmation Order or the Plan (and neither the confirmation nor consummation of the Plan) shall eliminate, alter or impair (or otherwise prevent Incline from asserting), any or all of Incline's defenses, arguments or appellate rights to the extent relating to (a) any proposed assumption or rejection of any Executory Contract or Unexpired Lease with

Incline or real property interests of Incline (including rights, defenses, or arguments that such agreements or interests, as applicable, (i) constitute covenants running with the land not subject to assumption or rejection, (ii) do not constitute Executory Contracts or Unexpired Leases under the Bankruptcy Code and the terms of the Plan, or (iii) are not otherwise subject to assumption or rejection) and (b) the vesting of any property in the Reorganized Debtors free and clear of Incline's real property interests, including any covenants that run with the land (notwithstanding anything herein to the contrary, whether the Bankruptcy Code and the United States Constitution would permit the Plan to discharge any such property interests and transfer such property free and clear of any such property interests is not being determined at this time and shall be adjudicated by the Court at a later date together with any related rejection or assumption disputes, and the rights, defenses and arguments to such disputes are hereby fully preserved); *provided*, *however*, that the Debtors' and Reorganized Debtors' rights, defenses, claims, and counterclaims with respect to the foregoing are expressly and fully reserved.

**KK.**     **Seismic Data of Seitel Data, Ltd.**

131.    Notwithstanding anything in the Plan, any Plan Supplement or this Confirmation Order to the contrary, (a) all Executory Contracts, including, but not limited to, all Master Licensing Agreements and all supplements, amendments, schedules and attachments thereto (collectively, the "Seitel Agreements") between any of the Debtors, on the one hand, and Seitel Data, Ltd., Seitel Data Corp., Seitel Offshore Corp., and other affiliates, (collectively, "Seitel"), on the other hand, shall be and hereby are rejected pursuant to section 365 of the Bankruptcy Code as of the date of entry of this Confirmation Order, (b) to the extent necessary, the automatic stay under section 362 of the Bankruptcy Code is hereby modified to permit the termination of the Seitel Agreements, and (c) the Debtors shall comply with all confidentiality provisions, destruction of data and verification of destruction of data provisions required by the Seitel Agreements.

**LL.**    **Fidelity & Deposit Company of Maryland.**

132.    Fidelity & Deposit Company of Maryland (hereinafter referred to collectively as the "Fidelity Surety") issued various surety bonds, prepetition, on behalf of certain of the Debtors (collectively, the "Existing Fidelity Surety Bonds").  The Existing Fidelity Surety Bonds are issued pursuant to that certain existing Commercial Surety General Indemnity Agreement by and between the Surety, on the one hand, and the Debtors and their affiliates and certain non-Debtors, as applicable, on the other hand (the "Existing Fidelity Indemnity Agreement").  The Surety and the Debtors likewise entered into a postpetition Indemnity Agreement (the "Postpetition Fidelity Indemnity Agreement").

133.    Notwithstanding anything in the Plan, including anything contained in any document or other agreement or exhibit to the Plan, including in the Plan Supplement, or this Confirmation Order, shall impair, release, discharge, preclude, or enjoin any obligations of the Debtors or the Reorganized Debtors to the Surety under the Existing Fidelity Surety Bonds, the Existing Fidelity Indemnity Agreement, the Postpetition Fidelity Indemnity Agreement, and/or obligations under the common law of suretyship,  and such obligations are affirmed, unimpaired and are not being released, discharged, precluded, or enjoined by the Plan, including by or through anything contained in the Plan Supplement, this Confirmation Order, or any agreements with third parties.  For the avoidance of doubt, the Surety is deemed to have opted out of the releases, and are not Releasing Parties or Released Parties under the Plan, including under Article VIII of the Plan.

134.    Notwithstanding anything in the Plan, including anything contained in any document or other agreement or exhibit to the Plan, including in the Plan Supplement, or this Confirmation Order, shall be interpreted to alter, diminish or enlarge the rights or obligations of the Surety or any obligee under the Existing Fidelity Surety Bonds with respect to any obligations

relating to such Existing Fidelity Surety Bonds, nor shall any provision of the Plan be deemed to enjoin or preclude the Surety from asserting any rights or claims of any obligees under such Existing Fidelity Surety Bonds.

135.     The Reorganized Debtors will undertake to execute a post-Effective Date indemnity agreement, which will be substantially similar to the Existing Fidelity Indemnity Agreement and the Postpetition Fidelity Indemnity Agreement, upon the request of the Fidelity Surety.

## MM.   Certain Government Matters.

136.     Nothing in this Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5) ("Claim"); (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date: (iii) any liability to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any non-debtor.  Nor shall anything in this Confirmation Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence.

137.     Notwithstanding any provision to the contrary in the Plan, this Order, or any Definitive Documents (collectively, "Documents"):

   a.     As to the United States of America, its agencies, departments, or agents (collectively, "United States"), nothing in the Documents shall:  (A) release, exculpate, enjoin, impair or discharge any non-Debtor from any claim, liability, suit, right, interest or Cause of Action of the United States; (B) affect any valid setoff or recoupment rights of the United States and such rights are preserved and the Debtors agree to waive any defenses related to the adequacy of preservation of any right of setoff or recoupment of the United States, including whether the United States needed to take any action prior to confirmation of the Plan; (V) require the

United States to file an administrative claim described in section 503(b)(1)(B) and (C) of the Bankruptcy Code pursuant to section 503(b)(1)(D) of the Bankruptcy Code as a condition of such claim being an allowed administrative expense; (D) constitute an approval or consent by the United States without compliance with all applicable legal requirements and approvals under non-bankruptcy law; (E) be construed as a compromise or settlement of any claim, liability, suit, right interest or Cause of Action of the United States; (F) affect the ability of the United States to file or amend a claim without prior authorization of the Bankruptcy Court or the Reorganized Debtors (i) prior to the expiration of the Governmental Bar Date (as defined in the Bar Date Order), (ii) to the extent the United States files a claim pursuant to section 503(b)(1)(D) of the Bankruptcy Code, or (iii) to the extent otherwise permitted pursuant to the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or applicable law; (G) cause claims filed or amended by the United States to be automatically deemed disallowed or expunged pursuant to Article VII(H) of the Plan to the extent filed or revised in accordance with this paragraph; (H) modify the scope of section 502 of the Bankruptcy Code, including but not limited to, the provisions governing estimation of claims; (I) modify the scope of section 525 of the Bankruptcy Code; (J) authorize the assumption, transfer or assignment of any governmental (i) license, (ii) permit, (iii) registration, (iv) authorization or (v) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements, obligations and approvals under non-bankruptcy laws; (K) cause the assumption, assignment or transfer of any interests of a Governmental Unit in contracts, leases, covenants, operating rights agreements, rights-of-use and easement, and rights-of-way or other interests or agreements with the United States or other interests or agreements involving federal land or minerals (collectively, "Federal Interests") without (i) obtaining the written consent of the United States and (ii) compliance with all applicable non-bankruptcy law; or (l) be interpreted to set cure amounts with respect to Federal Interests or require the United States to novate, approve or otherwise consent to the assumption, transfer or assignment of any Federal Interests. The second sentence of Article IV, Section F(11) of the Plan shall not apply to the claims, rights and interests of the United States.

b.   Without limiting the foregoing but for the avoidance of doubt, as to the Federal Interests of the Department of Interior ("Federal Leases") nothing in the Documents shall authorize the Debtors to abandon any real property or wells. Moreover, nothing in the Documents shall be interpreted: to release the Debtors or the Reorganized Debtors from any reclamation, plugging and abandonment, or other operational requirement under applicable federal law; to address or otherwise affect any decommissioning obligations and financial assurance requirements under the Federal Leases that must be met by the Debtors or the Reorganized Debtors on the Federal Leases going forward; or to impair audit rights of the federal government. In addition, notwithstanding any provision to the contrary in the Documents, nothing shall nullify the United States' right to assert, against the Debtors and their estates, any (i) decommissioning liability, (ii) liability for trespass, and/or (iii) claim that is nondischargeable under applicable law, including but not limited to a claim arising from the Debtors' interest in any Federal Lease not assumed by the Debtors

or the Reorganized Debtors. Notwithstanding any provision to the contrary in the Documents, the United States will retain and have the right to (i) audit and/or perform any compliance review and, if appropriate, collect from the Debtors, the Reorganized Debtors and/or their successor(s) and assign(s) in full any additional monies owed by the Debtors with respect to any trespass claim against the Debtors and (ii) obtain plugging and abandonment by Debtors, the Reorganized Debtors and/or their successors on account of any trespass by Debtors, without those rights being adversely affected by these Chapter 11 Cases.  Such rights shall be preserved in full as if these Chapter 11 Cases had not occurred. The Debtors and the Reorganized Debtors, will retain all defenses and/or rights, other than defenses and/or rights arising from these Chapter 11 Cases, to challenge any such determination; provided, however, that any such challenge, including any challenge associated with these Chapter 11 Cases, must be raised in the United States' administrative review process leading to a final agency determination by the Department of the Interior. The audit and/or compliance review period shall remain open for the full statute of limitations period established by the Federal Oil and Gas Royalty Simplification and Fairness Act of 1996, 30 U.S.C. § 1702, et seq.

c.   Administrative expense claims of the United States allowed pursuant to the Plan or the Bankruptcy Code shall accrue interest and penalties as provided by the Bankruptcy Code and applicable law until paid in full.  To the extent the Priority Tax Claims of the United States (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code) allowed pursuant to the Bankruptcy Code or the Plan are not paid in full in cash on the Effective Date, then such Priority Tax Claims shall be paid in accordance with section 1129(A)(9)(c) of the Bankruptcy Code and shall accrue interest commencing on the Effective Date at the rate and method set forth in section 511 of the Bankruptcy Code. Moreover, nothing shall effect a release, injunction or otherwise preclude any claim whatsoever against any Debtor or any of the Debtors' Estates by or on behalf of the United States for any liability arising (a) out of pre-petition or postpetition tax periods for which a return has not been filed or (b) as a result of a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period.  Further, nothing shall enjoin the United States from amending any claim against any Debtor or any of the Debtors' Estates with respect to any tax liability (i) arising out of pre-petition or post-petition tax periods for which a tax return has not been filed or (ii) from a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period.  Any liability arising (i) out of pre-petition or post-petition tax periods for which a return has not been filed or (ii) as a result of a pending audit or audit which may be performed with respect to any pre-petition or post-petition tax period shall be paid in accordance with section 1129(a)(9)(A) and (C) of the Bankruptcy Code. Without limiting the foregoing but for the avoidance of doubt, the Debtors and the Reorganized Debtors, as applicable, shall comply with the provisions of the Internal Revenue Code and nothing contained in the Documents shall be deemed to bind the United States to any characterization of any transaction for tax purposes or to determine the tax liability of any person or entity, including, but not limited to, the Debtors and the Reorganized Debtors, as applicable, nor shall the Documents be deemed to have

determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of this Plan, nor shall anything in the Documents be deemed to have conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under section 505 of the Bankruptcy Code.

## NN.    **Westchester Fire Insurance Company.**

138.    Nothing in this Confirmation Order, the DIP Order, the Exit Facility, the Plan, the Plan Supplement, or the Backstop Order (together with any orders, documents, or agreements relating thereto and any amended versions of the foregoing, "Confirmation Documents") shall in any way prime or affect the rights of Westchester Fire Insurance Company and its affiliated sureties (the "Chubb Surety") as to:  (a) any funds the Chubb Surety is holding and/or being held for it presently or in the future, whether in trust, as security, or otherwise, including any proceeds due or to become due any of the Debtors in relation to contracts or obligations bonded by the Chubb Surety; (b) any substitutions or replacements of said funds including accretions to and interest earned on said funds; (c) any letter of credit related to any indemnity, collateral trust, bond or agreements between or involving the Chubb Surety and any of the Debtors (collectively (a) to (c), the "Chubb Surety Assets"); or (d) any set-off and/or recoupment rights and/or trust fund rights and/or lien rights and/or existing or future subrogation or common law rights of the Chubb Surety or of any party to whose rights the Chubb Surety has or may become subrogated. Notwithstanding the Confirmation Documents: (a) the General Agreement of Indemnity dated on or about November 8, 2016 (the "Chubb Indemnity Agreement") is assumed; (b) the Chubb Surety's claims shall in no way be limited by the cure amounts set forth in the Plan Supplement or the *Notice of Executory Contracts and Unexpired Leases to be Assumed by the Debtors Pursuant to the Plan, Cure Amounts, if any, and Related Procedures in Connection Therewith*, dated December 5, 2020; (c) Articles VI(K)(1), VII(E) and VIII(J) of the Plan shall not apply to the Chubb Surety or any obligee or beneficiary of any bond issued by the Chubb Surety on behalf of the Debtors and/or

their non-debtor affiliates; and (d) the Chubb Surety's rights under 11 U.S.C. § 502(j) of the Code shall be preserved.  Nothing in this paragraph shall be deemed to waive any of the Debtors' or the Reorganized Debtors' rights or defenses with respect to any Claims.  Nor shall this paragraph be deemed to modify the respective rights and obligations of the Chubb Surety, the Debtors, or the Reorganized Debtors, as applicable, under the Chubb Surety Assets, the Chubb Indemnity Agreement, or any related collateral agreements.

**OO.**    **Certain Hedging Matters.**

139.    For the avoidance of doubt, (a) all DIP Hedging Obligations (as defined in the *Final Order (A) Authorizing Continuation of Prepetition Hedging Agreements, (B) Authorizing Entry Into and Performance Under Postpetition Hedging Agreements, (C) Granting DIP Liens and Superpriority Administrative Expense Status, (D) Modifying the Automatic Stay and (E) Granting Related Relief Hedging Order* [Docket No. 242] (the "Hedging Order")) shall constitute DIP Claims under the Plan and (b) nothing in the Plan or this Confirmation Order shall impair, discharge, or release the rights of any DIP Hedging Provider (as defined in the Hedging Order) under the Hedging Order or any DIP Hedging Agreement (as defined in the Hedging Order).

**PP.**    **Employee Compensation Matters.**

140.    The Management Incentive Program, the terms of which are set forth in the Plan Supplement, is approved in its entirety.  The New Board is authorized to adopt and implement the Management Incentive Plan, consistent with such terms.

141.    On the Effective Date, notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Debtors shall be deemed to have assumed each of the written contracts, agreements, policies, programs and plans for compensation, bonuses, reimbursement, health care benefits, disability benefits, deferred compensation benefits, travel benefits, vacation and sick leave benefits, savings, severance benefits, retirement benefits, welfare benefits, relocation

programs, life insurance and accidental death and dismemberment insurance, including written contracts, agreements, policies, programs, and plans for bonuses and other incentives or compensation for the Debtors' current and former employees, directors, officers, and managers, including executive compensation programs and existing compensation arrangements for the employees of the Debtors (but excluding any severance agreements with any of Debtors' former employees) (collectively, the "Employee Agreements") only if such Employment Agreements are in form and substance reasonably acceptable to the Required Consenting Senior Noteholders and the Required Backstop Parties.

**QQ.    Provision Regarding Cigna Health and Life Insurance Company.**

142.    Notwithstanding anything to the contrary in the Plan, or in any notice related thereto, the Cigna Policy (as defined in the *Objection of Cigna to Third Amended Joint Plan of Reorganization of Extraction Oil & Gas, Inc. and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1299] ("Cigna Objection")) through which Cigna Health and Life Insurance Company provides insurance benefits for Debtors' employee benefits plan, shall be assumed under the Plan, and, in lieu of cure, all obligations due and unpaid under the Cigna Policy accruing prior to the Effective Date shall be unimpaired and reinstated, and nothing in this Confirmation Order or 11 U.S.C. §365 shall affect such obligations.  This fully resolves the Cigna Objection.

**RR.    Provision Regarding Pinnacol Assurance.**

143.    In relation to Pinnacol Assurance, notwithstanding anything to the contrary in the Plan, or the Plan Supplement, or and this Order, the Debtors shall continue to timely perform pursuant to, and comply with, any insurance policies with Pinnacol Assurance, including timely paying any valid invoices, insurance policy charges and obligations such as audit additionals and deductibles, regardless of whether such charges or obligations arise, are due, or are owing before,

on, or after the Effective Date, including in accordance with section 365(b)(1) of the Bankruptcy Code, and nothing in the Plan, or the Plan Supplement, or this Order shall defer, waive, or abate such timely policy performance and compliance.

**SS.  Provision Regarding Geophysical Pursuit Inc.**

144.    Notwithstanding any provision of the Plan, the Plan Supplement, or this Confirmation Order to the contrary:  (a) Geophysical Pursuit Inc.'s Objection [Docket No. 1317] ("GPI" and the "GPI Objection") is adjourned to a date agreed to by the parties; (b) the issues/arguments raised in the GPI Objection are fully reserved and are in no way impaired or prejudiced by this Order, and (c) GPI's contracts shall not be assumed or otherwise transferred absent Geophysical' s consent or further order of the Court.   For the avoidance of doubt, GPI is deemed to have opted out of the releases, and are not Releasing Parties or Released Parties under the Plan, including under Article VIII of the Plan.

**TT.    Effectiveness of All Actions.**

145.    All actions authorized to be taken pursuant to the Plan, the Exit Facility, and the Rights Offering shall be effective on, prior to, or after the Final Effective Date pursuant to this Confirmation Order, without further application to, or order of the Court, or further action by the respective officers, directors, managers, members, or stockholders of the Debtors or Reorganized Debtors, as applicable, and with the effect that such actions had been taken by unanimous action of such officers, directors, managers, members, or stockholders.

146.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and the Exit Facility and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and

KE 71096341

transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, the Disclosure Statement Supplement, the Exit Facility Documents, the Rights Offering Documents, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto.

**UU.**    **Effect of Conflict Between Plan and Confirmation Order.**

147.    In the event of an inconsistency between the Plan and the Disclosure Statement or the Disclosure Statement Supplement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the Plan shall control.  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

**VV.**    **Reservation of Rights.**

148.    Before the Effective Date, neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Disclosure Statement, the Disclosure Statement Supplement, this Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests.

**WW.**    **Injunctions and Automatic Stay.**

149.    Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise in existence on the Confirmation Date shall remain in full force and effect until the later of the Effective Date and the date set forth in the order providing for such injunction or stay.

## XX.    **Nonseverability of Plan Provisions upon Confirmation**.

150.    This Confirmation Order constitutes a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with Article XII.J of the Plan, is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Majority Lenders, the Required Consenting Senior Noteholders, and the Creditors' Committee (solely to the extent it modifies the treatment of or materially adversely affects the rights and distributions under the Plan of Holders of General Unsecured Claims), as well as that of the Debtors' or Reorganized Debtors', as applicable; and (c) nonseverable and mutually dependent.

## YY.    **Waiver or Estoppel**.

151.    Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed before the Confirmation Date.

## ZZ.    **Authorization to Consummate**.

152.    The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to the satisfaction or waiver (by the required parties) of the conditions precedent to the Effective Date set forth in Article IX.B of the Plan.

## AAA.    **Effect of Non-Occurrence of Conditions to the Effective Date**.

153.    If the Effective Date does not occur on or before the termination of the Restructuring Support Agreement or the DIP Credit Agreement, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors,

any Holders of a Claim or Interest, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect; provided, that all provisions of the Restructuring Support Agreement that survive termination thereof shall remain in effect in accordance with the terms thereof.

**BBB.    Retention of Jurisdiction.**

154.    The Court properly retains jurisdiction over these Chapter 11 Cases and all matters arising out of, or related to, these Chapter 11 Cases, the Plan, and this Confirmation Order, including those matters specifically set forth in Article XI of the Plan.

**CCC.    Dissolution of Committee.**

155.    On the Effective Date, the Creditors' Committee and any other statutory committee appointed in the Chapter 11 Cases shall dissolve automatically and the members thereof shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code, except for the limited purpose of prosecuting requests for payment of Professional Fee Claims for services and reimbursement of expenses incurred prior to the Effective Date by the Creditors' Committee or any other statutory committee and their Professionals.  The Reorganized Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to the Creditors' Committee or any other statutory committee after the Effective Date.

**DDD.    Final Order.**

156.    This Confirmation Order is a final order, and the period in which an appeal must be filed shall commence upon the entry hereof.

**Dated: December 23rd, 2020**
**Wilmington, Delaware**

**CHRISTOPHER S. SONTCHI**
**UNITED STATES BANKRUPTCY JUDGE**

KE 71096341